# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

## FIRST DAY MOTION FOR EMERGENCY DETERMINATION ON DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN OMNI AGENT SOLUTIONS, INC. AS NOTICE, CLAIMS AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE

Newport Overlook Association, Inc. ("Debtor" or "Association") files this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing Debtor to employ and retain Omni Agent Solutions, Inc. ("Omni") as notice, claims, and solicitation agent in connection with Debtor's chapter 11 case. In support of this Application, Debtor submits the *Declaration of Paul H. Deutch in Support of Debtor's Motion for Emergency Determination on Debtor's Application for Entry of an Order Authorizing Employment and Retention of Omni Agent Solutions, Inc. as Notice, Claims, and Solicitation Agent* (the "Deutch Declaration"), which is attached hereto as **Exhibit B** and the *Declaration of Amy Houle Caruso in Support of Debtor's Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"),[2] which has been filed with the Court on or about the date hereof. In further support of this Application, Debtor respectfully states as follows:

---

[1] The last four digits of Debtor's tax identification number are 6560. Debtor's corporate headquarters is located at 150 Bay View Drive, Jamestown, RI 02835.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

NEWPORT OVERLOOK ASSOCIATION, INC.                    Case No.: 1:25-bk-11000
Chapter 11

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein is 28 U.S.C. § 156(c), as supplemented by Bankruptcy Rule 2002(f), and Local Rules 2002-1 and 9013-2.

## PROCEDURAL BACKGROUND

4.      On December 17, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5.      Debtor is a not-for-profit corporation organized under the laws of the State of Rhode Island pursuant to the Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 25, 2019 as filing number 201991094030, as amended pursuant to Restated Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 26, 2019 as filing number 201991196680 (collectively, the "Articles of Incorporation"). Pursuant to the Articles of Incorporation, the purposes of the Association are "*[t]o own the common areas and operate the timeshare resort known as Newport Overlook, 150 Bay View Dr., Jamestown, RI and any other purpose lawful under RI general laws.*"

6.      Debtor was originally formed pursuant to a Declaration, dated April 1, 1982, and recorded on June 16, 1982 (as amended from time to time, the "Declaration"), in Volume 78, at Page 84 et seq., in the Land Evidence Records of the Town of Jamestown, Rhode Island (the "Land Records Office"). The Declaration established a condominium form of ownership for the property owned thereby, which was then submitted to an interval or timeshare form of ownership pursuant to that certain Interval Ownership Plan Declaration of Covenants and Restrictions, dated and

2

recorded March 21, 1983, in Volume 79 at Page 677 in the Land Records Office (as amended, the "Interval Declaration").

7.    The By-laws of the Association (the "By-laws") provide that the Association was formed to generally promote the welfare of its members; to provide a forum for the exchange of ideas relative to policies; to promote and operate in accordance with the plan of Interval Ownership (defined below) as set forth in the Interval Declaration; and to do all acts and things necessary or appropriate to the ordinary and necessary operation and maintenance of the property governed by the Association (the "Property").

8.    The Property governed by the Association is located at 150 Bay Drive, Jamestown, Rhode Island and is commonly known as *Newport Overlook*. The Property consists of 3 buildings containing a total of 19 two-bedroom units (the "Units") and their concomitant common areas, including a pool. Each Unit consists of 52 interval weeks ("Intervals"), so there is a total of 988 Intervals at the Property. Owners of Interval are members in the Association (the "Association Members"). Pursuant to the Interval Declaration, the Association Members own each of their Intervals (as well as a concomitant share of the common areas) as tenants in common with all other Association Members.

9.    Debtor owns 19 Intervals at the Property and a concomitant share of the common elements at the Property (the "Association Interest"). The Association Interest comprises 1.92% of the total Intervals at the Property. Debtor is a tenant in common with all other interval owners.

10.    PTVO Owners Association, Inc. ("PTVO") owns 241 Intervals at the Property, which is 24.39% of the total Intervals. WorldMark by Wyndham owns 231 Intervals at the Property, which is approximately 23.38% of the total Interval. Wyndham Vacation Resorts, Inc. ("WVR") owns 104 Intervals at the Property, which is 10.33% of the total Intervals. The remaining

NEWPORT OVERLOOK ASSOCIATION, INC                                    Case No.: 1:25-bk-11000
                                                                                                 Chapter 11

395 intervals (39.98% of the total Intervals) are owned by parties to corresponding contracts ("Interval Owners"), with each interval having its own separate corresponding contract.

11.    Vacation Resort Management, Inc. f/k/a Wyndham Vacation Management, Inc. (the "Property Manager") provides management services to the Property for Debtor, pursuant to that certain Amended & Restated Management Agreement between the Property Manager and Debtor and Taylors Point Condominium Association, dated as of June 10, 2016 (the "Management Agreement"). Upon information and belief, Property Manager and WVR, an Association Member, are affiliates.

12.    The Debtor is operating its business and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.    For a detailed description of Debtor and its operations, Debtor respectfully refers the Court and parties in interest to its First Day Declaration.

## RELIEF REQUESTED

14.    Debtor seeks to retain and employ Omni subject to that certain Engagement Agreement, dated as of November 3, 2025, by and between Omni and Debtor (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Engagement Agreement"), a copy of which is attached hereto and incorporated herein by references as **Exhibit C.**

15.    Pursuant to Local Rule 9013-2(d)(2), Debtor requests that the Court grant the relief requested in this Motion on an emergency basis for the reasons set forth and given the urgent nature of the consideration of this Motion with other First Day motions.

NEWPORT OVERLOOK ASSOCIATION, INC                                    Case No.: 1:25-bk-11000
Chapter 11

## OMNI'S QUALIFICATIONS

16.     Debtor has over 700 potential creditors and interested parties in this Chapter 11
Case. Although the office of the Clerk of the United States Bankruptcy Court for the District of
Rhode Island (the "Clerk's Office") ordinarily would serve notices on Debtor's creditors and other
parties in interest and administer claims against Debtor, the Clerk's Office may not have the
resources to undertake such tasks, especially in light of the magnitude of Debtor's body of
interested parties and the tight timelines that frequently arise in chapter 11 cases.

17.     To relieve the Clerk's Office of these burdens, Debtor seeks to engage Omni to act
as Debtor's notice, claims, and solicitation agent. This retention is the most effective and efficient
manner of noticing the creditors and parties in interest of the filing of the Chapter 11 Case and
other developments herein. In that capacity, Omni will transmit, receive, docket, and maintain
proofs of claim filed in connection with this case.

18.     Omni is comprised of leading industry professionals with significant experience in
the administrative aspects of large, complex chapter 11 cases. Omni's professionals have
experience in noticing, claims administration, solicitation, balloting, and facilitating other
administrative aspects of chapter 11 cases and experience in matters of this size and complexity.
Omni has served as claims and noticing agent and/or administrative agent in many bankruptcy
cases in districts nationwide, including the following: *In re Lugano Diamonds & Jewelry, Inc.,*
No. 25-12055 (BLS) (Bankr. D. Del. Nov. 16, 2025); *In re Claire's Holdings LLC*, No. 25-11454
(BLS) (Bankr. D. Del. Aug. 6, 2025); *In re Cinemex Holdings USA, Inc.*, No. 25-17559 (LMI)
(Bankr. S.D. Fla. June 30, 2025); *In re Zen JV, LLC*, No. 25-11195 (JKS) (Bankr. D. Del. June 24,
2025); *In re At Home Group Inc.,* No. 25-11120 (JKS) (Bankr. D. Del. June 16, 2025); *In re
Boundless Broadband, LLC,* No. 25-10948 (BLS) (Bankr. D. Del. May 29, 2025); *In re
Consolidated Burger Holdings, LLC*, No. 25-40162 (KKS) (Bankr. N.D. Fla. Apr. 14, 2025); *382*

*Channel Drive LLC aka Publishers Clearing House LLC*, No. 25-10694 (MG) (Bankr. S.D.N.Y. Apr. 9, 2025); *In re Solid Fin. Tech., Inc.*, No. 25-10669 (BLS) (Bankr. D. Del. Apr. 7, 2025); *In re Go Lab, Inc.*, No. 25-10557 (KBO) (Bankr. D. Del. Mar. 25, 2025); *In re Wynne Transp. Holdings, LLC*, No. 25-10027 (KBO) (Bankr. D. Del. Jan. 10, 2025); *In re Ligado Networks, LLC*, No. 25-10006 (TMH) (Bankr. D. Del. Jan. 5, 2025); *In re First Mode, Holdings, Inc.*, No. 24-12794 (KBO) (Bankr. D. Del. Dec. 15, 2024); *In re True Value Co., L.L.C.*, No. 24-12337 (KBO) (Bankr. D. Del. Oct. 14, 2024); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Oct. 11, 2024); *In re Edgio, Inc.*, No. 24-11985 (KBO) (Bankr. D. Del. Sept. 9, 2024); *In re Vyaire Med. Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 11, 2024); *In re Never Slip Holdings, Inc.*, No. 24-10663 (LSS) (Bankr. D. Del. Apr. 1, 2024).  Omni will follow procedures that conform to applicable guidelines promulgated by the Clerk and the Judicial Conference, and as may be entered by the Court's order.

### SERVICES TO BE PROVIDED

19.     Pursuant to the Engagement Agreement, Debtor seeks to retain Omni to provide certain noticing, claims processing, and balloting administration services, including, without limitation:

    a.     Preparing and serving required notices in the Chapter 11 Case, including:

        i.     notice of the commencement of the chapter 11 case and the initial meeting of creditors under Bankruptcy Code § 341(a);

        ii.     a notice of the claims bar date;

        iii.     notices of objections to claims and objections to transfers of claims;

        iv.     notices of hearings on motions filed by the Office of the United States Trustee (the "U.S. Trustee");

        v.     notices of transfers of claims;

vi.     notices of any hearing on confirmation of the Debtor's plan of reorganization;

vii.    notice of the effective date of any plan; and

viii.   such other miscellaneous notices as Debtor or the Court may deem necessary or appropriate for an orderly administration of the case.

b.      Maintaining an official copy of Debtor's schedules of assets and liabilities and statement of financial affairs (collectively the "Schedules"), listing Debtor's known creditors and the amounts owed thereto.

c.      Maintaining a: (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and updating said lists and making said lists available upon request by a party-in-interest or the Clerk.

d.      Furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and, if asked, notifying such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors.

e.      Maintaining a post office box or address for the purpose of receiving claims and returned mail, and process all mail received.

f.      Within three (3) days after the entry of a particular notice or order, preparing for filing with the Clerk's Office a certificate or affidavit of service that includes (i) a copy of the notice or order served, (ii) an alphabetical list of persons on whom notice was served, along with their addresses, and (iii) the date and manner of service.

g.      Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the Chapter 11 Case.

h.      Maintaining the official claims register in the Chapter 11 Case by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

i.      the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

ii.     the date the proof of claim or proof of interest was received by Omni and/or the Court;

iii.     the claim number assigned to the proof of claim or proof of interest; and

iv.     the asserted amount and classification of the claim.

i.     Implementing necessary security measures to ensure the completeness and integrity of the claims register.

j.     Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e).

k.     Revising the creditor matrix after the objection period expires.

l.     Monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists.

m.     Identifying and correcting any incomplete or incorrect addresses in any mailing or service lists.

n.     Recording any order entered by the Court which may affect a claim by making a notation on the claims register.

o.     Monitoring the Court's docket for any claims related pleading filed and making necessary notations on the claims register.

p.     Filing quarterly an updated claims register with the Court in alphabetical and numerical order.  If there was no claims activity, a certification of no claim activity may be filed.

q.     Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours).

r.     Providing access to the public for examination of claims and the claims register at no charge.

s.     Establishing and maintaining a case website with case information, including key dates, service lists, and free access to the case docket.

t.     Forwarding all claims, updated claims register, and updated mailing lists to the Court within 10 days of entry of an order converting a case or within 30 days of entry of a final decree.  The claims register and mailing lists will be provided in both paper and on disc and in alphabetical and numerical order.  The mailing list disc will be in .txt format.

u.      Assisting with, among other things, the preparation of Debtor's schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs.

v.      Assisting with, among other things, solicitation, balloting, tabulation, and calculation of votes, as well as preparing any appropriate reports required in furtherance of confirmation of any chapter 11 plan.

w.      Generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results for any chapter 11 plan(s) in the Chapter 11 Case.

x.      Generating stipulated orders soliciting Interval Owners' consent to a sale of the Property under section 363(h) of the Bankruptcy Code, collecting and tabulating the same, and, if necessary, testifying in support of the results.

y.      Manage and coordinate any distributions pursuant to a chapter 11 plan.

z.      Generating, providing, and assisting with claims objections, exhibits, claims reconciliation, and related matters.

aa.     Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements.

bb.     Providing temporary employees to process claims as necessary.

cc.     Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

dd.     Providing such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtor.

20.     In addition to the foregoing, Omni will assist with, among other things: (a) maintaining and updating the Master Service List;[3] (b) tracking and administration of claims; and (c) performing other administrative tasks pertaining to the administration of the Chapter 11 Case, as may be requested by Debtor or the Clerk's Office.  Omni will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's orders.

---

[3] As such term is defined in the *Debtor's Motion for Emergency Determination on Entry of an Order (I) Authorizing Debtor to Suppress Certain Personally Identifiable Information for Individual Creditors, Interval Owners, and Parties in Interest and (II) Limiting Debtor's Noticing Obligations*, filed contemporaneously herewith.

## PROFESSIONAL COMPENSATION

21.      The fees to be charged by Omni in connection with the Chapter 11 Case are set forth in the Engagement Agreement.  Prior to the Petition Date, Debtor provided Omni with a retainer in the amount of $10,000.00.  Omni seeks first to apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the case as security for the payment of fees and expenses incurred under the Engagement Agreement.

22.      Debtor proposes that the cost of Omni's services be paid from Debtor's estate as provided by 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A). Debtor respectfully submits that Omni's rates for its services in connection with the notice, claims processing, and solicitation services are competitive and comparable to the rates charged by its competitors for similar services.

23.      Furthermore, Debtor respectfully submits that the fees and expenses incurred by Omni are administrative in nature and, therefore, should not be subject to the standard fee application procedures for professionals. Specifically, Debtor requests authorization to compensate Omni in accordance with the terms and conditions set forth in the Engagement Agreement, upon Omni's submission to Debtor of invoices summarizing in reasonable detail the services rendered and expenses incurred in connection with services provided by Omni to Debtor.

## OMNI'S DISINTERESTEDNESS

24.      Omni has reviewed its database to determine whether it has any relationships with Debtor's creditors and parties-in-interest. To the best of Omni's knowledge, and except as set forth in the Deutch Declaration, Omni neither holds nor represents an interest materially adverse to the Debtor's estate nor has a connection to Debtor, its creditors, or related parties with respect to any matter for which Omni will be employed. Omni may have relationships with certain of Debtor's

NEWPORT OVERLOOK ASSOCIATION, INC                                    Case No.: 1:25-bk-11000
                                                                                  Chapter 11

creditors as vendors or in connection with cases in which Omni serves or has served in a neutral

capacity as claims and noticing agent for another chapter 11 debtor.

25.     To the best of Debtor's knowledge and except as disclosed in the Deutch

Declaration, Omni neither holds nor represents any interest materially adverse to Debtor's estate

in connection with any matter on which it would be employed and that it is a "disinterested person"

within the meaning of section 101(14) of the Bankruptcy Code, as referred to in section 327(a)

thereof.

26.     Omni represents, among other things, that:

a.      it will not consider itself employed by the United States government in connection
        with the Chapter 11 Case and shall not seek any compensation from the United
        States government in its capacity as notice, claims, and solicitation agent;

b.      by accepting employment in this bankruptcy case, Omni waives any right to receive
        compensation from the United States government in its capacity as notice, claims,
        and solicitation agent;

c.      in its capacity as notice, claims, and solicitation agent, Omni will not be an agent
        of the United States and will not act on behalf of the United States; and

d.      Omni will not employ any past or present employees of Debtor in connection with
        its work as notice, claims, and solicitation agent.

27.     Should Omni discover any new relevant facts or relationships bearing on the

matters described herein during the period of its retention, Omni will use reasonable efforts to file

promptly a supplemental affidavit.

## **AUTHORITY FOR RELIEF**

28.     Section 156(c) of title 28 of the United States Code, which governs the staffing and

expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the

Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's
> premises, which pertain to the provision of notices, dockets, calendars, and
> other administrative information to parties in cases filed under the

> provisions of title 11, United States Code, where the costs of such facilities
> or services are paid for out of the assets of the estate and are not charged to
> the United States. The utilization of such facilities or services shall be
> subject to such conditions and limitations as the pertinent circuit council
> may prescribe.

28 U.S.C. § 156(c).

29.     Accordingly, § 156(c) of title 28 of the United States Code empowers the Court to

utilize outside agents and facilities for notice and claims purposes, provided the debtor's estate

pays the cost of such services. Based on the foregoing, Debtor believes that the retention of Omni

as the notice and claims agent in the Chapter 11 Case is in the best interests of Debtor, its estate,

and its creditors. Furthermore, Debtor respectfully submits that the fees and expenses that would

be incurred by Omni under the proposed engagement would be administrative in nature and,

therefore, should not be subject to standard fee application procedures of professionals.

30.     Courts in this and other jurisdictions have approved similar relief in other

chapter 11 cases. *See, e.g., In re Bird Global, Inc., et al.,* No. 23-20514 (CLC (Bankr. S.D. Fla.

Dec, 26, 2023); *In re Delphi Behavioral Health Group, LLC, et al.,* No. 23-10945 (PDR) (Bankr.

S.D. Fla. Feb. 10, 2023); *In re AeroTech Miami Inc. d/b/a iAero Tech, et al.,* Case No. 23-17503-

RAM (Bankr. S.D. Fla. Sept. 22, 2023); *In re Vital Pharmaceuticals, Inc., et al.,* Case No. 22-

17842-PDR (Bankr. S.D. Fla. Oct. 14, 2022); *In re Liberty Power Holdings, LLC,* Case No. 21-

13797-SMG (Bankr. S.D. Fla. May 25, 2021); *In re American Purchasing Services, LLC, et al.,*

Case No. 20-23495-SMG (Bankr. S.D. Fla. 2021); *In re Tamarac 10200, LLC, et al.,* Case No. 20-

23346-PDR (Bankr. S.D. Fla. 2020); *In re Stein Mart Inc.,* Case No. 20-02387 (JAF) (Bankr. M.D.

Fla. Aug. 14, 2020); *In re Magnum Construction Management, LLC,* Case No. 19-12821-AJC

(Bankr. S.D. Fla. 2019); *In re Radioshack Corporation, et al.,* Case No. 15-10197 (Bankr. D. Del.

2015); *In re dELiA*s, Inc., et al.,* Case No. 14-23678 (Bankr. S.D.N.Y. 2014); *In re Maguire

Group Holdings, Inc.,* Case No. 11-39347-RAM (Bankr. S.D. Fla. 2011); *In re Ruden McClosky,*

*P.A.,* Case No. 11-40603-RBR (Bankr. S.D. Fla. 2011); *In re Robb & Stucky Limited LLLP,* No.

11¬02801 (CED) (Bankr. M.D. Fla. Feb. 24, 2011); *In re Gulfstream International Group, Inc., et*

*al.,* Case No. 10-44131-JKO (Bankr. S.D. Fla. 2011); *In re HearUSA, Inc.,* Case No. 11-23341-

EPK (Bankr. S.D. Fla. 2011); *In re Fontainebleau Las Vegas Holdings, LLC, et al.,* Case No. 09-

21481-AJC (Bankr. S.D. Fla. 2009); *In re Mercedes Homes, Inc., et al.,* Case No. 09-11191-PGH

(Bankr. S.D. Fla. 2009); *In re TOUSA, Inc.,* Case No. 08-10928-JKO (Bankr. S.D. Fla. 2008); *In*

*re Levitt and Sons, LLC,* No. 07-19845-RBR (Bankr. S.D. Fla. Nov. 14, 2007).

31.     No prior application for the relief requested herein has been made to this or any

other court.

**WHEREFORE**, for the reasons set forth herein and in the First Day Declaration and in

the Deutch Declaration, Debtor respectfully requests that the Court enter an order, substantially in

the form attached hereto as **Exhibit A** (a) authorizing Debtor to employ and retain Omni as its

notice, claims, and solicitation agent effective as of the Petition Date, (b) approving the terms of

the Engagement Agreement, and (c) granting such other and further relief as is appropriate.

NEWPORT OVERLOOK ASSOCIATION, INC                    Case No.: 1:25-bk-11000

Chapter 11

Dated:        December 17, 2025

*/s/ Richard J. Land*
Richard J. Land (5592)
Andre S. Digou (8711)
**CHACE RUTTENBERG & FREEDMAN, LLP**
One Park Row, Suite 300
Providence, RI 02903
Telephone: (401) 453-6400
Email:  rland@crfllp.com
            adigou@crfllp.com

- and -

Daniel M. Eliades (*pro hac vice* pending)
Peter J. D'Auria (*pro hac vice* pending)
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Email:  daniel.eliades@klgates.com
            peter.dauria@klgates.com

- and -

Keith J. McCarthy
**K&L GATES LLP**
1 Congress St. Suite 2900
Boston, MA 02114
Telephone: (617) 261-3100
Email:  keith.mccarthy@klgates.com

- and –

Jonathan N. Edel (*pro hac vice* pending)
**K&L GATES LLP**
300 South Tryon St., Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400

*Proposed Counsel to Debtor*
*and Debtor in Possession*

NEWPORT OVERLOOK ASSOCIATION, INC                    Case No.: 1:25-bk-11000

Chapter 11

## **NOTICE**

Within fourteen (14) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within document was filed electronically with the above-captioned Court, and notices of electronic filing were sent to the following persons on December 17, 2025 through the electronic filing system.

Office of the United States Trustee
5 Post Office Square, Suite 1000
Boston, Massachusetts 02109-3934
USTP.Region01@ust.doj.gov
Sandra.Nicholls@usdoj.gov

Internal Revenue Service
Insolvency Unit – 4th Floor
380 Westminster Street
Providence, RI 02903

RI Division of Taxation
Bankruptcy Unit – Collection Section
One Capitol Hill
Providence, RI 02908

Department of Treasury Internal Revenue
Service
Ogden, UT 84201-0012

Town of Jamestown
Tax Collector
Jean M Gabriele
93 Narragansett Avenue,
P.O. Box 377
Jamestown, RI 02835

NEWPORT OVERLOOK ASSOCIATION, INC                     Case No.: 1:25-bk-11000
                                                                      Chapter 11

Dated:        December 17, 2025

                              */s/ Richard J. Land*
                              Richard J. Land
                              Andre S. Digou
                              **CHACE RUTTENBERG & FREEDMAN, LLP**
                              One Park Row, Suite 300
                              Providence, RI 02903
                              Telephone: (401) 453-6400
                              Email:  rland@crfllp.com
                                      adigou@crfllp.com

                              - and -

                              Daniel M. Eliades (*pro hac vice* pending)
                              Peter J. D'Auria (*pro hac vice* pending)
                              **K&L GATES LLP**
                              One Newark Center, Tenth Floor
                              Newark, NJ 07102
                              Telephone: (973) 848-4000
                              Email: daniel.eliades@klgates.com
                                      peter.dauria@klgates.com

                              - and -

                              Keith J. McCarthy
                              **K&L GATES LLP**
                              1 Congress St. Suite 2900
                              Boston, MA 02114
                              Telephone: (617) 261-3100
                              Email:  keith.mccarthy@klgates.com

                              - and -

                              Jonathan N. Edel (*pro hac vice* pending)
                              **K&L GATES LLP**
                              300 South Tryon St., Suite 1000
                              Charlotte, NC 28202
                              Telephone: (704) 331-7400

                              *Proposed Counsel to Debtor*
                              *and Debtor in Possession*

NEWPORT OVERLOOK ASSOCIATION, INC    Case No.: 1:25-bk-11000
Chapter 11

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

**ORDER GRANTING MOTION FOR EMERGENCY DETERMINATION ON DEBTOR'S APPLICATION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO EMPLOY AND RETAIN OMNI AGENT SOLUTIONS, INC., AS NOTICE, CLAIMS, AND SOLICITATION AGENT EFFECTIVE AS OF THE PETITION DATE**

**THIS MATTER** came before the Court for hearing on _____,   (the

"Hearing") upon the *Debtor's Motion Emergency Determination on Debtor's Application for*

*Entry of Order Authorizing Debtor to Employ and Retain Omni as Notice, Claims, and Solicitation*

*Agent Effective as of the Petition Date* (Doc. No. __) (the "Application")[1] filed by Debtor Newport

Overlook Association, Inc. ("Debtor") for entry of an order authorizing the employment of Omni

Agent Solutions, Inc. ("Omni") as Debtor's notice, claims, and solicitation agent, as more fully set

forth in the Application.

Having considered the Application, together with the representations made in the First Day

Declaration and the Deutch Declaration, and having considered the representations of the parties

at the Hearing, and for the reasons stated on the record at the Hearing, the Court finds that:

(a) notice of the Application and the Hearing thereon was sufficient under the circumstances and

no other or further notice need be provided; (b) the relief requested in the Application is in the best

interests of Debtor, its estate, its creditors and other parties in interest; (c) Omni does not hold or

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

represent an interest adverse to Debtor's estate and therefore good and sufficient cause exists to grant the relief in the Application.  Accordingly, it is

**ORDERED:**

1.　　The Application (Doc. No. __) is **APPROVED**.

2.　　Debtor is authorized to employ and retain Omni as its notice, claims, and solicitation agent in accordance with the terms and conditions set forth in the Application and the Engagement Agreement, effective as of the commencement of the Chapter 11 Case.

3.　　The terms of the Engagement Agreement are approved as provided herein subject to the terms of this Order.

4.　　Pursuant to 28 U.S.C. § 156(c), Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(B), Omni is authorized to provide noticing, claims processing, and balloting services as set forth in the Application and the Engagement Agreement, including, among others, as requested:

a.　　Preparing and serving required notices in the Chapter 11 Case, including:

i.　　notice of the commencement of the Chapter 11 Case and the initial meeting of creditors under Bankruptcy Code § 341(a);

ii.　　a notice of the claims bar date;

iii.　　notices of objections to claims and objections to transfers of claims;

iv.　　notices of hearings on motions filed by the Office of the United States Trustee (the "U.S. Trustee");

v.　　notices of transfers of claims;

vi.　　notices of any hearing on confirmation of the Debtor's plan of reorganization;

vii.　　notice of the effective date of any plan; and

viii.　　such other miscellaneous notices as Debtor or Court may deem necessary or appropriate for an orderly administration of the case.

b.      Maintaining an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively the "<u>Schedules</u>"), listing the Debtor's known creditors and the amounts owed thereto.

c.      Maintaining a: (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and updating said lists and making said lists available upon request by a party-in-interest or the Clerk.

d.      Furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and, if asked, notifying such potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors.

e.      Maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received.

f.      Within three (3) days after the entry of a particular notice or order, preparing for filing with the Clerk's Office a certificate or affidavit of service that includes (i) a copy of the notice or order served, (ii) an alphabetical list of persons on whom notice was served, along with their addresses, and (iii) the date and manner of service.

g.      Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the Chapter 11 Case.

h.      Maintaining the official claims register in the Chapter 11 Case by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

    i.      the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

    ii.     the date the proof of claim or proof of interest was received by Omni and/or the Court;

    iii.    the claim number assigned to the proof of claim or proof of interest; and

    iv.     the asserted amount and classification of the claim.

i.      Implementing necessary security measures to ensure the completeness and integrity of the claims register.

j.      Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e).

k.      Revising the creditor matrix after the objection period expires.

l.      Monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists.

m.      Identifying and correcting any incomplete or incorrect addresses in any mailing or service lists.

n.      Recording any order entered by the Court which may affect a claim by making a notation on the claims register.

o.      Monitoring the Court's docket for any claims related pleading filed and making necessary notations on the claims register.

p.      Filing quarterly an updated claims register with the Court in alphabetical and numerical order.  If there was no claims activity, a certification of no claim activity may be filed.

q.      Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the cases and providing such list to the Court or any interested party upon request (within 48 hours).

r.      Providing access to the public for examination of claims and the claims registers at no charge.

s.      Establishing and maintaining a case website with case information, including key dates, service lists, and free access to the case docket.

t.      Forwarding all claims, updated claims register, and updated mailing lists to the Court within 10 days of entry of an order converting a case or within 30 days of entry of a final decree.  The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order.  The mailing list disc will be in .txt format.

u.      Assisting with, among other things, the preparation of the Debtor's schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statement of financial affairs.

v.      Assisting with, among other things, solicitation, balloting, tabulation and calculation of votes, as well as preparing any appropriate reports required in furtherance of confirmation of any chapter 11 plan.

w.      Generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results for any chapter 11 plan(s) in the Chapter 11 Case.

x.      Generating stipulated orders soliciting Interval Owners' consent to a sale of the Property under section 363(h) of the Bankruptcy Code, collecting and tabulating the same, and, if necessary, testifying in support of the results.

y.      Manage and coordinate any distributions pursuant to a chapter 11 plan.

z.      Generating, providing, and assisting with claims objections, exhibits, claims reconciliation, and related matters.

aa.     Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements.

bb.     Providing temporary employees to process claims as necessary.

cc.     Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

dd.     Providing such other claims processing, noticing, and administrative services as may be requested from time to time by Debtor.

5.      In addition to the services set forth in the Application and the Engagement Agreement, Omni is authorized to provide other noticing, claims processing, solicitation and administrative services Debtor may request from time to time, including, but not limited to: (a) maintaining and updating the Master Service List; (b) tracking and administration of claims; and (c) performing other administrative tasks pertaining to the administration of the Chapter 11 Case, as may be requested by the Debtor or the Clerk of this Court (the "Clerk's Office").

6.      Omni is appointed as agent for the Clerk's Office and, as such, is designated as the authorized repository for all proofs of claims filed in the Chapter 11 Case and is authorized and directed to maintain the official claims register for the Debtor and to provide the Clerk's Office with a certified duplicate thereof as the Clerk's Office may direct.  To the extent any government or non-government claimant files a proof of claim with the Court via CM/ECF or manually with the Clerk of the Court, as opposed to with Omni, such filings will be deemed timely if filed by the applicable bar date set by the Court.

7.      Without further order of the Court, the Debtor is authorized to compensate Omni in accordance with the terms and conditions of the Engagement Agreement. Omni shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor's estate (if any), and any party-in-interest who specifically requests service of the monthly invoices.

8.      Omni shall not cease providing claims processing services during the Chapter 11 Case for any reason without prior order of this Court authorizing Omni to do so; *provided, however*, that Omni may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtor, the Office of the United States Trustee, and any official committee of creditors appointed in this case (if any) by facsimile or overnight delivery; *provided further*, that except as expressly provided herein, the Debtor and Omni may otherwise terminate or suspend other services as provided under the Engagement Agreement.

9.      The Court and Omni will implement an Internet link on the Court's website that can direct parties in interest to the website maintained by Omni for the Chapter 11 Case.

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Omni incurred pursuant to the Engagement Agreement shall be an administrative expense of the Debtor's estate.

11.     Omni seeks to first apply its retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount and, thereafter, to hold the retainer under the Engagement Agreement during the case as security for the payment of fees and expenses incurred under the Engagement Agreement.

12.     Nothing herein obligates a successor chapter 7 trustee or chapter 11 trustee to employ Omni.

13.     Debtor and Omni are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

14.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

15.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern and control.

NEWPORT OVERLOOK ASSOCIATION, INC                    Case No.: 1:25-bk-11000
                                                                    Chapter 11

# **EXHIBIT B**

**Deutch Declaration**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:

NEWPORT OVERLOOK ASSOCIATION, INC.,

                    Debtor.

Chapter 11

Case No.: 1:25-bk-11000

### DECLARATION OF PAUL H. DEUTCH IN SUPPORT
### OF DEBTOR'S EMERGENCY APPLICATION FOR
### ENTRY OF ORDER AUTHORIZING DEBTOR TO EMPLOY AND
### RETAIN OMNI AGENT SOLUTIONS, INC., AS NOTICE, CLAIMS,
### AND SOLICITATION AGENT, EFFECTIVE AS OF THE PETITION DATE

I, Paul H. Deutch, being duly sworn, deposes and states:

1.      I am an Executive Vice President at Omni Agent Solutions, Inc. ("Omni"), with offices at 1120 Avenue of the Americas, 4th Floor, New York, NY 10036.  I am authorized to make and submit this declaration on behalf of Omni (the "Declaration").  The statements contained herein are based upon personal knowledge.  Omni submits this Declaration in support of the application (the "Application")[1] of the above-captioned debtor and debtor-in-possession (the "Debtor") for entry of an order authorizing the employment and retention of Omni as the Debtor's notice, claims, and solicitation agent in the above-captioned chapter 11 case (the "Chapter 11 Case") effective as of the Petition Date pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and to approve the Engagement Agreement, dated as of November 3, 2025 (the "Engagement Agreement").  The Engagement Agreement is attached to the Application as **Exhibit C.**

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

2.      Omni is comprised of leading industry professionals with significant experience in the administrative aspects of large, complex chapter 11 cases.   Omni's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.   Omni has served as claims and noticing agent and/or administrative agent in many bankruptcy cases in districts nationwide, including the following: *In re Lugano Diamonds & Jewelry, Inc.,* No. 25-12055 (BLS) (Bankr. D. Del. Nov. 16, 2025); *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Aug. 6, 2025); *In re Cinemex Holdings USA, Inc.*, No. 25-17559 (LMI) (Bankr. S.D. Fla. June 30, 2025); *In re Zen JV, LLC*, No. 25-11195 (JKS) (Bankr. D. Del. June 24, 2025); *In re At Home Group Inc.,* No. 25-11120 (JKS) (Bankr. D. Del. June 16, 2025); *In re Boundless Broadband, LLC,* No. 25-10948 (BLS) (Bankr. D. Del. May 29, 2025); *In re Consolidated Burger Holdings, LLC*, No. 25-40162 (KKS) (Bankr. N.D. Fla. Apr. 14, 2025); *382 Channel Drive LLC aka* Publishers Clearing House LLC, No. 25-10694 (MG) (Bankr. Apr. 9, 2025); *In re Solid Fin. Tech., Inc.*, No. 25-10669 (BLS) (Bankr. D. Del. Apr. 7, 2025); *In re Go Lab, Inc.*, No. 25-10557 (KBO) (Bankr. D. Del. Mar. 25, 2025); *In re Wynne Transp. Holdings, LLC*, No.  25-10027 (KBO) (Bankr. D. Del. Jan. 10, 2025); *In re Ligado Networks, LLC*, No. 25-10006 (TMH) (Bankr. D. Del. Jan. 5, 2025); *In re First Mode, Holdings, Inc.*, No. 24-12794 (KBO) (Bankr. D. Del. Dec. 15, 2024); *In re True Value Co., L.L.C.*, No. 24-12337 (KBO) (Bankr. D. Del. Oct. 14, 2024); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Oct. 11, 2024); *In re Edgio, Inc.*, No. 24-11985 (KBO) (Bankr. D. Del. Sept. 9, 2024); *In re Vyaire Med. Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 11, 2024); *In re Never Slip Holdings, Inc.*, No. 24-10663 (LSS) (Bankr. D. Del. Apr. 1, 2024).   Omni will follow procedures that conform to applicable

guidelines promulgated by the Clerk and the Judicial Conference, and as may be entered by the Court's order.

3.      The Debtor selected Omni to serve as the notice, claims, and solicitation agent as set forth in more detail in the Application.  To the best of my knowledge, neither Omni nor any of its professional personnel have any relationship with the Debtor that would impair Omni's ability to serve in this capacity.

4.      Omni may have or may have had relationships with some of the Debtor's creditors and may provide or may have provided professional services to entities or persons that may be creditors or parties in interest in the Chapter 11 Case.  These relationships and the services provided are, however, in matters completely unrelated to this case.

5.      Omni has working relationships with certain of the professionals retained by the Debtor and other parties herein, but such relationships are completely unrelated to the Chapter 11 Case.  Omni has represented, and will continue to represent, clients in matters unrelated to the Chapter 11 Case, and has had, and will continue to have, relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to the Chapter 11 Case.

6.      In addition, Omni personnel may have relationships with some of the Debtor's creditors; however, such relationships are completely unrelated to the Chapter 11 Case.

7.      Omni is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), in that Omni and its professional personnel:

     (a)      are not creditors, equity security holders, or insiders of the Debtor;

     (b)      are not, and were not, within two years before the date of the filing of the Chapter 11 Case, directors, officers, or employees of the Debtor; and

     (c)     do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

8.     Omni has reviewed the list of potential parties in interest in this Chapter 11 case. At this time, Omni is not aware of any relationship which would present a disqualifying conflict of interest.  Should Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental declaration.  Omni will also comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

9.     Omni has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, the Chapter 11 Case.  If Omni's proposed retention is approved by this Court, Omni will not accept any engagement or perform any service for any entity or person other than the Debtor in the Chapter 11 Case.

10.     Omni represents, among other things, that:

     (a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as notice, claims, and solicitation agent;

     (b)     by accepting employment in the Chapter 11 Case, Omni waives any right to receive compensation from the United States government;

     (c)     in its capacity as notice, claims and solicitation agent, Omni will not be an agent of the United States and will not act on behalf of the United States; and

     (d)     Omni will not employ any past or present employees of the Debtor in connection with its work as notice, claims, and solicitation agent.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: December 17, 2025
New York, New York

_____

Paul H. Deutch
Executive Vice President
Omni Agent Solutions, Inc.

# EXHIBIT C

**Engagement Agreement**

Omni 10/3/25 (PHD)

## STANDARD SERVICES AGREEMENT

This Agreement is entered into as of November 3, 2025, between Omni Agent Solutions, Inc ("**Omni**"), and Newport Overlook Association, Inc. (the "**Company**").[1] The parties agree as follows:

## Terms and Conditions

I.   SERVICES

(a)   Upon request by the Company or as may be necessary for Omni to comply with applicable law, governmental regulation, court order or court rule, Omni shall provide the Company with consulting and administrative services ("**Services**") in connection with the Company's potential filing of a chapter 11 petition under the Bankruptcy Code (the "**Code**") and, *if applicable*, during any chapter 11 case which the Company may initiate. Without limitation, the Services *may* include any or all of the following: Assisting in the preparation of the Company's bankruptcy schedules and statements of financial affairs ("**Schedules and SOFA**"), noticing, communication related services, claims management and reconciliation, plan solicitation, balloting and tabulation, contract review, securities, claims analysis, providing confidential online workspaces or data rooms (the publication of which shall not violate the confidentiality provisions of this Agreement), account management, disbursements, automation, and any other service which may be agreed upon by the parties.

(b)   The Company understands that to assist or enable Omni to provide the Services, Omni will engage in communications with various persons acting on the Company's behalf (each, a "**Company Party**").[2] The Company represents to Omni and agrees that any and all requests, advice, information or direction which a Company Party provides to or makes of Omni is expressly authorized by the Company, that Omni may rely upon the accuracy and completeness of the information provided without any obligation to further verify it, and that the Company shall be bound by any and all requests, advice, information or direction made.

(c)   The Company understands that Omni is not being retained to provide any legal or financial advice and that none of Omni's communications with a Company Party or any other party constitutes legal or financial advice.

II.   RATES

(a)   The Company agrees to pay Omni for all fees, charges and costs for Services provided on its behalf in the amounts set forth in the schedule attached hereto as **Exhibit "A"** (the "**Rate Schedule**"). *In addition, Omni will provide the Company with a ten (10) percent discount on Omni's standard hourly rates*. Omni reserves the right from time to time to amend the Rate

---

[1] The term "**Compan**y" shall mean and include the Company, in its individual capacity as debtor and debtor in possession, together with any affiliated entities whose chapter 11 cases are jointly administered with the Company. Each affiliated entity shall be jointly and severally liable for all of the Company's fees and costs.

[2] Unless otherwise agreed upon, a Company Party includes a Company's managers, general partners, officers, directors, employees, agents, representatives, counsel, consultants and/or any other party with whom the Company authorizes to engage in a Communication with Omni.

Schedule by increasing its hourly rates, unit prices, and any other charges, fees and costs therein during the term of this Agreement and that upon so doing, the parties agree that the rates, prices, and other charges shall be effective immediately and constitute the operative Rate Schedule.

(b)    Omni may invoice the Company monthly for the Services it provided during the preceding calendar month consistent with the applicable Rate Schedule. All invoices are due and payable upon receipt. Notwithstanding anything herein to the contrary, any payment made to Omni will be in accordance with applicable bankruptcy law and orders of the bankruptcy court.

(c)    If any amount is unpaid to Omni thirty (30) days from the date of the Company's receipt of an invoice the Company agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute of any portion of an invoice, the Company shall give written notice to Omni within ten (10) days of receipt of the invoice as to the charges disputed and the basis thereof. The undisputed portion of the invoice will remain due and payable immediately upon receipt, but late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. At its sole discretion, Omni may first apply any payment received against the cumulative sum of the late charges then due before it applies any remaining balance to the outstanding principal balance

(d)    Omni may require an advance or direct payment from the Company of an individual expense, or a group of related expenses, which are expected to exceed $7,500 (*e.g.*, publication notice).

(e)    The Company shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of the Company, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(f)    The Company shall pay to Omni all actual charges (including fees, costs and expenses as set forth in the then effective Rate Structure) related to, arising out of, or resulting from, any error or omission made by the Company including, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses.

(g)    Upon execution of this Agreement, the Company shall pay Omni a retainer of $10,000 (the "Retainer"). Omni may use the Retainer against all reasonable and documented prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by the Company to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "Final Invoice"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to the Company of the application of some or all of the Retainer, the Company shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(h)    Payments to Omni for services rendered under the terms of this Agreement may be remitted using either or both of the following methods:

(i)    **Wire Transmission**

(Omni's wire information will be included on each monthly invoice)

(ii)    **Check**
Omni Agent Solutions
c/o Accounts Receivable
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367

## III.    RETENTION

(a)    This Agreement is effective immediately upon its execution by the parties; *provided*, however, that it shall be subject to, if and when applicable, the terms of any order entered approving the engagement of Omni by the Company in the Company's chapter 11 proceeding.

(b)    If and when applicable, no later than thirty (30) days after commencement of the Company's chapter 11 proceeding, the Company agrees to and shall take all necessary actions to obtain bankruptcy court approval to retain Omni as its claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, if necessary, as its administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).[3] The form and substance of any application concerning Omni's retention and any order setting forth its terms are subject to Omni's approval which shall not be unreasonably withheld. Notwithstanding any other provision of this Agreement, if the bankruptcy court does not enter an order approving Omni's retention pursuant to 28 U.S.C. § 156(c) or section 327 of the Code, then the Agreement will be terminated effective immediately.

## IV.    TERM

(a)    Except as provided herein, the Agreement will remain in effect until terminated: (a) on a mutually agreed upon date as set forth in a writing executed by both parties; (b) on a date of no less than sixty (60) days from the date written notice is provided by one party to the other; (c) by the Company for cause ("**Cause**") which, for purposes of this Agreement, shall mean that Omni has acted in bad faith, with gross negligence, or engaged in willful misconduct that results in material harm to the Company's effort and ability to restructure in its chapter 11 case; or (d) by Omni upon the Company's material breach of any term herein. If Omni's engagement has been already approved by the bankruptcy court, then Omni shall continue to perform the Services until the entry of an order by the bankruptcy court, in a form and substance satisfactory to Omni, whose

---

[3] The Company and Omni further agree that this section shall also apply to Omni's retention if the Company commences a chapter 11 in a jurisdiction which generally authorizes the retention of administrative services companies such as Omni as a hybrid of both claims and noticing agent and administrative agent (*e.g.*, Claims, Noticing, and Solicitation Agent).

consent will not be unreasonably withheld, providing for the terms and conditions of its discharge, including date of termination.

(b)      Upon its termination, Omni shall provide the Company with all materials Omni is required to return to it under the terms of this Agreement as well as all in-process deliverables in their then-current state of completion for Services which Omni provided prior to the effective date of the termination promptly after it has received payment in full of all sums attributable to such Services, including for any Services which have then not yet been invoiced. Omni shall coordinate with the Company and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, shall provide the necessary staff and assistance required for an orderly transfer, and the Company agrees to pay all sums which may become due in connection therewith. Without limiting the foregoing, upon the Company's written request made at any time during the term of this Agreement, Omni shall deliver to the Company and/or the Company's retained professionals at the Company's sole expense any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by the Company.

## V.      CONFIDENTIALITY

Omni and the Company, on behalf of themselves and on behalf of each and all of their respective Company Parties, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement ("**Confidential Information**"), except if any of such information: (a) is then or thereafter becomes publicly available, other than by breach by the receiving party; (b) is already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; (c) was independently developed; (d) is lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party; or (e) is subject to production or revelation pursuant to an order of any court, governmental agency or other regulatory body, arbitrator or subpoena, it may, upon not less than ten (10) calendar days written notice to the other party, release the required information.

## VI.      OMNI'S PROPERTY RIGHTS

(a)      Subject to Section VIII below, the parties understand and agree that any and all software programs or other materials furnished by Omni pursuant to this Agreement or used by Omni to provide the Services during the term of this Agreement ("**Omni's Property**") are Omni's sole and exclusive property. Without limiting the foregoing, Omni's Property includes data processing programs, specifications, applications, routines, documentation, ideas, concepts, know-how or techniques relating to data processing or Omni's performance of Services. Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's potential bankruptcy cases.

(b)      Subject to Section VIII below, the Company acknowledges and agrees that regardless of any sums it has been charged or has paid to Omni, it obtains no rights or ownership whatsoever in any of Omni's Property and that their use by the Company is limited to enabling Omni to provide the Services hereunder.

## VII.   BANK ACCOUNTS

At the request of a Company Party, Omni is authorized to establish account(s) with financial institutions in the name of and/or as agent for the Company and to manage such account(s), including to facilitate distributions pursuant to a chapter 11 plan or otherwise.

## VIII.   COMPANY DATA

(a)      Without limiting any other provision of this Agreement, the Company represents and warrants to Omni that when a Company Party provides information to Omni (a) the Company has all necessary authority to disclose it to Omni and that Omni is fully authorized to use it in connection with its performance of the Services; (b) that the information is materially accurate and complete to the best of the Company's knowledge at the time of the Communication; and (c) that Omni has no responsibility whatsoever to verify or otherwise independently confirm the accuracy or completeness of any information, programs, data or instructions it is provided including, without limitation, data it receives in connection with the preparation of the Company's Schedules and SOFAs. The Company agrees that it shall be deemed to have reviewed and approved any and all Schedules and SOFAs which are filed on its behalf.

(b)      Without limiting any other provision of this Agreement, the Company understands and agrees that all data, storage media, programs or other materials which are furnished to Omni on its behalf (the "**Company's Data**") may be retained by Omni until full payment has been made to Omni for all of its Services and that it shall remain liable to Omni for all fees and expenses thereafter charged by Omni for maintaining, storing or disposing of any or all of it.  Omni agrees that it will dispose of the Company's Data in a manner requested by or acceptable to the Company; provided, however, that if Omni has not provided Services to the Company for a period of ninety (90) days and provides no less than thirty (30) days written notice, Omni may dispose of any or all of the Company's Data in any commercially reasonable at the Company's sole expense. The Company agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information which is provided on its behalf to Omni.

(c)      If Omni is retained pursuant to bankruptcy court order, disposal of any of the Company's Data shall comply with any applicable court orders and rules or clerk's office instructions.

## IX.   NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above

disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting its enforceability to the maximum extent compatible with applicable law.

X.      INDEMNIFICATION

(a)      To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "**Indemnified Party**," and collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Omni's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)      Omni and the Company shall provide notice to the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)      The Company's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)      The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

XI.      LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to the Company for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.      GENERAL

(a)      Each party acknowledges that authorized person(s) on its behalf have read Agreement, understands it, and agrees to be bound by its terms. Each party further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b)      If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)      This Agreement may be modified only by a writing duly executed by a Company

Party on behalf of the Company and an officer of Omni.

(d)     This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)     This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)     Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g)     The Company will use its best efforts to cooperate with Omni at the Company's facilities if any portion of the Services require Omni's physical presence.

(h)     Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)     The Company and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture, or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)     The language used in this Agreement will be deemed to be the language chosen by the Company and Omni to express their mutual intent, and no rule of strict construction will be applied against either party.

(k)     In the event that any arbitration legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree that the prevailing party is entitled to be paid all of its reasonable attorneys' fees, court costs, and any other expense reasonably related thereto in the amount which may be set by

the court or by an arbitrator, whether in the same action or in a separate action brought for the purpose of establishing such amount, in addition to any other relief to which the prevailing party may be entitled.

(l)    The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(m)    Any dispute arising out of or relating to this Agreement, or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of the Company, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

(n)    Omni reserves the right to make changes in operating procedures, operating systems, programming languages, general purpose library programs, application programs, time periods of accessibility, types of terminals and other equipment, and the Omni database serving the Company, so long as any such changes do not materially interfere with ongoing Services provided to the Company in connection with the Company's pending bankruptcy case(s).

(o)    All headings used in this Agreement are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

XIII.    NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:        Omni Agent Solutions, Inc.
                   5955 De Soto Avenue
                   Suite 100
                   Woodland Hills, CA 91367
                   Tel: (818) 906-8300
                   Attn: Brian K. Osborne, Pres. & CEO
                   Email: Bosborne@omniagnt.com

If to the Company:  Newport Overlook Association, Inc.
                   150 Bay View Drive
                   Jamestown, RI 02835
                   Attn: Board of Directors

Omni 10/3/25 (PHD)

With a copy to:        K&L Gates LLP
                       One Newark Center - 10th Floor
                       Newark, New Jersey 07102
                       Attn: Daniel M. Eliades, Esq.
                       Phone: 973 848 4018
                       Fax: 973 848 4001
                       Email: Daniel.Eliades@klgates.com

Or to such other address as the Party to receive the notice or request so designates by written notice to the other.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the date first above written.

**OMNI AGENT SOLUTIONS, INC.**

By: _____
Name:  Paul Deutch
Title:   Executive Vice President

Agreed and accepted this  _11_  day of November 2025

**NEWPORT OVERLOOK ASSOCIATION, INC.**

_____
Name:     Amy Houle Caruso
Title:     President, Owner Assoc

Omni 10/3/25 (PHD)

# EXHIBIT

## "A"

# 2025 Rate Sheet



| Hourly Rates for Standard and Custom Services* | RATE / COST |
| --- | --- |
| Office Services | $50 - $75.00 per hour |
| Case Administration Services | $80 - $275 per hour |
| Claims Management | $80 - $275 per hour |
| Noticing Services | $80 - $275 per hour |
| Schedules and SOFA Services | $80 - $275 per hour |
| Solicitation Services | $80 - $295 per hour |
| Disbursement/Treasury Services | $150 - $295 per hour |
| Communications Services – Call Center | $75 - $175 per hour |
| Quality Control/Oversight Management | $150 - $275 per hour |
| Senior Management/Consulting Services | $225 - $275 per hour |
| Programming and IT Customization | $95 - $175 per hour |

| Claims Management | RATE / COST |
| --- | --- |
| Inputting Proofs of Claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No charge |
| Access | No charge |

| Schedules / SoFA | RATE / COST |
| --- | --- |
| Preparation and updating of schedules and SoFAs | $80.00 - $275.00 per hour |

| Informational Website | RATE / COST |
| --- | --- |
| Creation, Configuration and Initial Setup | No charge |
| Data Entry / Information Updates | Standard hourly rates apply |
| Programming and Customization | $95 - $175 per hour |
| Debtor Website Hosting | No charge |
| Committee Website Hosting | No charge |
| Shareholder Website Hosting | No charge |
| Scanning | $0.10 per image |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
| --- | --- |
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
| --- | --- |
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Solicitation and Tabulation | RATE / COST |
| --- | --- |
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

*Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

# 2025 Rate Sheet



| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No charge |
| Labels/Envelope printing | $.035 each |
| MSL E-mail noticing | No charge |
| High Volume or Certified E-mail Noticing | TBD per volume |
| Facsímile Noticing | $.10 per image |
| Postage/Overnight Service | Prevailing rates as required (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | $50.00 per Month |
| Usage | $.10 per Minute |
| Call center personnel | Standard Hourly Rates |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Electronic Services, Storage & Security | RATE / COST |
|---|---|
| License Fee and System Maintenance | .10 per Record |
| Per image storage | No charge |
| Monthly Encryption Bandwidth and Security Compliance Charges** | .15 per MB |
| Automated Services | .20 per process |

| Virtual Data Rooms | Quote upon request |
|---|---|

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $50.00 per copy |

** Charges relate to secure, bidirectional encryption of web-based documents and telephony, as well as secure storage of case records, documents and related files based on volume