## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,[1]<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

### DEBTOR'S FIRST DAY MOTION FOR EMERGENCY DETERMINATION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO PAY PREPETITION SALES, USE, TRUST FUND, PROPERTY, AND OTHER TAXES AND SIMILAR OBLIGATIONS

Newport Overlook Association, Inc. ("Debtor" or "Association") files this motion (the "Motion"), seeking the entry of an order authorizing, but not directing, Debtor to pay prepetition sales, use, trust fund, property, and other taxes and similar obligations, as detailed herein, in the ordinary course of Debtor's business. In addition, Debtor requests that (i) to the extent Debtor has paid certain taxes which should not have been paid, the Court authorize Debtor to seek a refund of such taxes, and (ii) to the extent that Debtor disputes any such prepetition tax, the Court authorize Debtor to set aside, in a segregated account, funds to pay the subject tax until a final determination is made as to whether Debtor is obligated to pay the subject tax. In support of this Motion, Debtor relies upon the *Declaration of Amy Houle Caruso in Support of Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration"),[2] which has been filed with the Court on or about the date hereof and is incorporated herein and respectfully represents as follows:

---

[1] The last four digits of Debtor's tax identification number are 6560. Debtor's corporate headquarters is located at 150 Bay View Drive, Jamestown, RI 02835.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

NEWPORT OVERLOOK ASSOCIATION, INC                                    Case No.: 1:25-bk-11000
Chapter 11

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(8), 541, 1107(a) and 1108 of chapter 11 of title 11 of the United States Code[3] (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-2 of the Local Rules of the United States Bankruptcy Court for the District of Rhode Island.

### BACKGROUND

4.     On December 17, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5.     Debtor is a not-for-profit corporation organized under the laws of the State of Rhode Island pursuant to the Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 25, 2019 as filing number 201991094030, as amended pursuant to Restated Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 26, 2019 as filing number 201991196680 (collectively, the "Articles of Incorporation"). Pursuant to the Articles of Incorporation, the purposes of the Association are "*[t]o own the common areas and operate the timeshare resort known as Newport Overlook, 150 Bay View Dr., Jamestown, RI and any other purpose lawful under RI general laws.*"

6.     Debtor was originally formed pursuant to a Declaration, dated April 1, 1982, and recorded on June 16, 1982 (as amended from time to time, the "Declaration"), in Volume 78, at

---

[3] All references to the "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1532.

NEWPORT OVERLOOK ASSOCIATION, INC                          Case No.: 1:25-bk-11000
                                                                                    Chapter 11

Page 84 et seq., in the Land Evidence Records of the Town of Jamestown, Rhode Island (the "Land Records Office"). The Declaration established a condominium form of ownership for the property owned thereby, which was then submitted to an interval or timeshare form of ownership pursuant to that certain Interval Ownership Plan Declaration of Covenants and Restrictions, dated and recorded March 21, 1983, in Volume 79 at Page 677 in the Land Records Office (as amended, the "Interval Declaration").

7.      The By-laws of the Association (the "By-laws") provide that the Association was formed to generally promote the welfare of its members; to provide a forum for the exchange of ideas relative to policies; to promote and operate in accordance with the plan of Interval Ownership (defined below) as set forth in the Interval Declaration; and to do all acts and things necessary or appropriate to the ordinary and necessary operation and maintenance of the property governed by the Association (the "Property").

8.      The Property governed by the Association is located at 150 Bay Drive, Jamestown, Rhode Island and is commonly known as *Newport Overlook*. The Property consists of 3 buildings containing a total of 19 two-bedroom units (the "Units") and their concomitant common areas, including a pool. Each Unit consists of 52 interval weeks ("Intervals"), so there is a total of 988 Intervals at the Property. Owners of Interval are members in the Association (the "Association Members"). Pursuant to the Interval Declaration, the Association Members own each of their Intervals (as well as a concomitant share of the common areas) as tenants in common with all other Association Members.

9.      Debtor owns 19 Intervals at the Property and a concomitant share of the common elements at the Property (the "Association Interest").  The Association Interest comprises 1.92% of the total Intervals at the Property. Debtor is a tenant in common with all other interval owners.

10.     PTVO Owners Association, Inc. ("PTVO") owns 241 Intervals at the Property,

which is 24.39% of the total Intervals. WorldMark, the Club owns 231 Intervals at the Property,

which is approximately 23.38% of the total Interval. Eastern Resorts Company, LLC owns 102

Intervals at the Property, which is 10.32% of the total Intervals. The remaining 395 intervals

(39.98% of the total Intervals) are owned by parties to corresponding contracts ("Interval

Owners"), with each interval having its own separate corresponding contract.

11.     Vacation Resort Management, Inc. f/k/a Wyndham Vacation Management, Inc.

(the "Property Manager") provides management services to the Property for Debtor, pursuant to

that certain Amended & Restated Management Agreement between the Property Manager and

Debtor and Taylors Point Condominium Association, dated as of June 10, 2016 (the "Management

Agreement").

12.     The Debtor is operating its business and managing its affairs as debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.     For a detailed description of Debtor and its operations, Debtor respectfully refers

the Court and parties in interest to its First Day Declaration.

## RELIEF REQUESTED

14.     Debtor requests entry of an order, (a) authorizing, but not directing Debtor to pay,

in Debtor's sole discretion, sales, use, trust fund, property, and other taxes and similar obligations,

as detailed herein, in the ordinary course of Debtor's business, without regard to whether such

obligations accrued or arose before or after the Petition Date; (b) authorizing, but not directing,

Debtor: (i) to seek a refund of any taxes that have been already paid by Debtor that Debtor

determines, in the exercise of its business judgment, should not have been paid and (ii) to set aside,

in a segregated account, funds to pay any unpaid taxes that Debtor disputes, until a final

determination is made as to whether Debtor is obligated to pay such tax; (c) authorizing Debtor's

financial institutions (collectively, the "<u>Banks</u>") to receive, process, honor, and pay all related checks and electronic payment requests, solely to the extent Debtor has sufficient funds with Banks as directed by Debtor; and (d) granting related relief

15.     Pursuant to Local Rule 9013-2(d)(2), Debtor respectfully requests that the Court grant the relief requested in this Motion on an emergency basis for the reasons set forth and given the urgent nature of the consideration of this Motion with other First Day motions.  To avoid substantial disruption to Debtor's business operations and the irreparable harm attendant thereto, Debtor is seeking immediate relief.

### **DEBTOR'S TAX OBLIGATIONS**

16.     In the ordinary course of operating its business, Debtor (a) incurs certain sales, use, trust fund, property, and other taxes (collectively, the "<u>Taxes</u>"), and (b) is charged amounts for fees and other similar charges and assessments by various licensing authorities (collectively, the "<u>Fees</u>").  Debtor remits the Taxes and Fees to various federal, state, and local taxing, licensing, and other governmental authorities (collectively, the "<u>Taxing Authorities</u>") on a periodic basis (whether monthly, quarterly, or annually, as established for each particular Tax or Fee) via checks and electronic funds transfers that are processed through its Banks.

17.     As of the Petition Date, Debtor estimates that it owes no taxes to the various Taxing Authorities described in detail on **<u>Exhibit A</u>**.[4]  Through this Motion, Debtor seeks only authorization but not direction, to pay the Taxing Authorities the amounts described herein, when they become due in the ordinary course. The following table describes the various categories of Taxes and Fees incurred by Debtor in the ordinary course of business and includes good faith

---

[4] As explained in the First Day Declaration, the Debtor has no direct employees, so it incurs no payroll or other employment-related taxes.

estimates of such Taxes that have accrued as of the Petition Date based on Debtor's books and

records and remain subject to potential audits and other adjustments:

| Type of Taxes and Fees | Approximate Amount Accrued and Unpaid as of the Petition Date (inclusive of interim relief) | Interim Relief Requested (due within 30 days of Petition Date) |
|---|---|---|
| Sales and Use Taxes[5] | $0.00 | $0.00 |
| Income Taxes | $0.00 | $0.00 |
| Real and Personal Property Taxes | $0.00 | $0.00 |
| Other Taxes and Fees | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

## A.    Sales and Use Taxes

18.    Historically, Debtor has incurred and collected from customers a limited amount of

state and local sales taxes, gross receipts taxes, and similar obligations in connection with sales in

Debtor's operations (collectively, the "Sales Taxes"). Sales Taxes are essentially general

consumption taxes charged at the point of purchase for certain goods or services, which are usually

established by the applicable Taxing Authority as a percentage of the price of the good or service

purchased.

19.    Historically, Debtor also incurred use taxes from purchasing a limited amount of

inventory, supplies, or other goods utilized by Debtor in the ordinary course of business

(collectively, the "Use Taxes," and together with Sales Taxes, the "Sales and Use Taxes"). Though

limited in nature, Debtor's liability for Use Taxes has arisen when Debtor purchased fixtures,

capital assets, supplies, or other goods used by Debtor in the ordinary course of business for use

---

[5] Though not discussed in depth in this Motion, Debtor has historically generated a *de minimis* amount of sales and use taxes from *ad hoc* transactions at the Property

in a jurisdiction where the acquisition of such personal property is taxable, but Debtor does not pay sales tax. Purchases without sales taxes generally occur when personal property is purchased from a vendor for use in a state in which the vendor has no business operation. Without such a nexus, the vendor may not be obligated to charge or remit sales taxes within the state. Nevertheless, the purchaser, such as Debtor, is obligated to self-assess and pay the Use Taxes, when applicable, to the state in which the Debtor operates. In the case of Debtor's operations, the majority of its Use Taxes have historically arisen for purchases of supplies and inventory items used at the Property such as kitchenware or toiletries provided to customers by the Debtor.

20. In calendar year 2024, Debtor paid, in aggregate, approximately $42.18 on account of Sales and Use Taxes, and, to date in 2025, Debtor does not believe it has generated any Sales and Use Taxes to date. Nevertheless, because Debtor has historically generated a limited amount of Sales and Use Taxes, it requests authority to continue paying them in the ordinary course of business out of an abundance of caution. Accordingly, Debtor requests authority, but not direction, to satisfy any amounts owed on account of such Sales and Use Taxes that may become due and owing in the ordinary course of business during the Chapter 11 Case.

**B.    Income Taxes**

21. Debtor incurs and is required to pay federal and state income taxes (the "Income Taxes"). Income Taxes are generally calculated as a percentage of net income (*i.e.*, the difference between gross receipts and expenses, after accounting for additional write-offs). Debtor generally estimates and remits Income Taxes on a quarterly basis—making payments on April 15, June 15, September 15, and December 15 of each year, with a final "true up" payment due on October 15 of the subsequent year. In fiscal year 2024, Debtor remitted $15,603.00 in Income Taxes to the applicable Taxing Authorities, including $12,901.00 and $2,702.00 on account of federal and state Income Taxes, accordingly.

22.     Debtor estimates that it will owe approximately $14,195.00 on account of Income Taxes for fiscal year 2025, including approximately $12,482.00 in federal Income Taxes and approximately $1,713.00 in state Income Taxes. To date, Debtor has paid $14,509.00 in estimated Income Taxes, satisfying all of Debtor's anticipated Income taxes for the year.[6] As such, as of the Petition Date, Debtor does not believe any Income Taxes have accrued and are owing to the relevant Taxing Authorities—and, in fact, it is due back approximately $314.00 on account of an overpayment in Debtor's state Income Taxes. Within thirty (30) days from the Petition Date, Debtor does not expect any amount to come due.

23.     Additionally, in connection with the Income Taxes, Debtor utilizes the services of Myers, Brettholtz & Co (the "Accountant"), who assists in developing the quarterly estimates as well as any other general income tax issues or questions that may arise (including assisting related to any Audits (as defined below)) (such services, the "Accountant Services").  Debtor pays the Accountant $6,050.00 in a lump sum annually in May of each year.  As such, as of the Petition Date, the Debtor does not owe the Accountant any outstanding balance for the Accountant Services, and no such amounts will come due within 30 days hereafter. Debtor requests authority to continue using the Accountant and paying for the Accountant Services in the ordinary course of business during the pendency of this Chapter 11 Case to the extent deemed necessary.

C.     **Real and Property Taxes**

24.     State and local laws where Debtor operates generally grant the applicable Taxing Authorities the power to levy property taxes against Debtor's real and tangible personal property (collectively, the "Property Taxes").  To avoid the imposition of statutory liens on its real and

---

[6] Though Debtor has historically paid quarterly estimates for its federal Income Taxes, it had not done so for fiscal year 2025, as its auditor did not provide an estimate for its federal Income Tax burden.  To ensure its complete and timely payment of its Income Taxes, Debtor made its entire year estimated federal Income Tax payment on or about December 1, 2025.

personal property, the Debtor typically pays Property Taxes in the ordinary course of business on an annual basis. In the ordinary course of business, Debtor pays its Property Taxes on a quarterly basis on March 12, June 12, September 12, and December 12, paid two quarters in arrears. Debtor generally pays Property Taxes directly to the Taxing Authorities. By operation of this Motion, Debtor seeks authorization to pay its Property Taxes.

25.      In calendar year 2024, Debtor paid approximately $42,634.65 in Property Taxes to the applicable Taxing Authorities, including approximately $314.16 on account of its personal Property Taxes and $42,320.49 on account of its real Property Taxes. For 2025, Debtor estimates that it will owe approximately $35,146.08 in Property Taxes, including approximately $34,831.98 in real Property Taxes and $314.10 in personal Property Taxes. As of the Petition Date, Debtor believes that it owes nothing on account of its Property Taxes,[7] and it does not anticipate any amounts coming due within 30 days of the Petition Date either. Nevertheless, Debtor requests authority, but not direction, to satisfy any amounts owed on account of such Property Taxes that may become due and owing in the ordinary course of business during the Chapter 11 Case.

**D.      Other Taxes and Fees**

26.      Applicable federal, state, and local laws and regulations require Debtor to pay taxes and fees for a wide range of annual reports, import taxes, business licenses, and permits. Debtor also incurs certain obligations in connection with the importation or transportation of inventory or other goods used by Debtor in the operation of its businesses, as well as certain annual tax reporting, privilege fees, and filing related fees (collectively, the "Other Taxes and Fees"). The

---

[7] Debtor does not believe that it has any accrued any Property Taxes, as it inadvertently paid its real Property Taxes twice during November 2025 (totaling $17,415.98), meaning it has already paid the estimated Property Taxes due in December 2025 as well as in March 2026.

NEWPORT OVERLOOK ASSOCIATION, INC                    Case No.: 1:25-bk-11000
                                                                        Chapter 11

method for calculating Other Taxes and Fees and the deadlines for paying such amounts varies by

particular permit and certification.

27.     Debtor does not believe any amounts remain due and owing with respect to its

Other Taxes and Fees, as it believes it is current on all such obligations.   Nevertheless, Debtor

requests authority, but not direction, to satisfy any amounts owed on account of such Other Taxes

and Fees that may become due and owing in the ordinary course of business during the Chapter

11 Case.

**E.     Audits**

28.     As of the filing of this Motion, Debtor is unaware of any pending or threatened

audits. However, it is possible that certain Taxing Authorities may initiate audit investigations of

prior-year tax returns (any such investigations, the "Audits") during the pendency of the Chapter

11 Case.  These Audits may result in additional prepetition Taxes being assessed against Debtor

(such additional Taxes, "Audit Amounts"), though Debtor will use its best efforts to avoid any

such additional liability. Debtor seeks authority, but not direction, to satisfy any such Audit

Amounts in the ordinary course of business.[8]

29.     As set forth below, if the Taxes and Fees are not paid, it is possible that some, if

not all, of the Taxing Authorities may, pursuant to section 362(b)(9) of the Bankruptcy Code, cause

Debtor to be audited and subjected to various administrative proceedings. Such Audits and

administrative proceedings and the accompanying disruption in business activities would

materially and adversely affect Debtor's restructuring effort and unnecessarily divert Debtor's

---

[8] Nothing contained herein or in the order approving the Motion constitutes or should be construed as an admission
of liability by the Debtor with respect to any Audit or Audit Amount.  The Debtor expressly reserves all rights with
respect to any Audit.  Furthermore, the Debtor reserves the right to contest the Audit Amounts, if any, claimed to be
due as a result of an Audit.

attention away from the Chapter 11 Case. To avoid any such disruption, Debtor needs the authority

of this Court to pay, if necessary, the various Taxes and Fees, including any Audit Amounts.

## **AUTHORITY FOR RELIEF**

30.     Ample cause exists to authorize the payment of the Taxes and Fees, including that

(a) certain of the Taxes and Fees may not be property of Debtor's estate; (b) the failure to pay the

Taxes and Fees may interfere with Debtor's continued operations; (c) the failure to pay prepetition

Property Taxes may increase the scope of secured and priority claims held by the applicable Taxing

Authorities against Debtor's estate; (d) the payment of Taxes and Fees generally affects only the

timing of payments, because most, if not all, of the Taxes and Fees are afforded priority status

under the Bankruptcy Code; and (e) the Court has authority to grant the requested relief under

sections 363 and 105(a) of the Bankruptcy Code.

**A.      Certain Prepetition Taxes and Fees May Not Be Property of Debtor's Estate**

31.     Certain Taxes and Fees may not be property of Debtor's estate, as they have been

collected from third parties and held in trust for payment to various Taxing Authorities.

Section 541(d) of the Bankruptcy Code provides, in relevant part:

> Property in which the debtor holds, as of the commencement of the
> case, only legal title and not an equitable interest … becomes
> property of the estate … only to the extent of the debtor's legal title
> to such property, but not to the extent of any equitable interest in
> such property that the debtor does not hold.

11 U.S.C. § 541(d).

32.     Certain of the Taxes and Fees constitute "trust fund" taxes, which Debtor is

required to collect from third parties and hold in trust for payment to the Taxing Authorities. As a

result, courts have held that such taxes are not part of a debtor's estate. *See, e.g., Begier v. I.R.S.*,

496 U.S. 53, 57–60 (1990) (holding that a prepetition payment of trust fund taxes does not

constitute a transfer that is subject to avoidance because such funds are not the debtor's property);

NEWPORT OVERLOOK ASSOCIATION, INC                                   Case No.: 1:25-bk-11000
                                                                    Chapter 11

*In re Scanlon*, 239 F.3d 1195, 1197 (11th Cir. 2001) (quoting *T&B Scottdale Contractors, Inc. v.*
*United States*, 866 F.2d 1372, 1376 (11th Cir 1989)) ("A debtor's estate in bankruptcy consists of
'all legal and equitable interests of the debtor in property as of the commencement of the case.");
*Official Comm. of Unsecured Creditors v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*,
997 F.2d 1039, 1056–60 (3d Cir. 1993) (indicating that even if a statute does not establish an
express trust, a constructive trust may be found);[9] *Al Copeland Enters., Inc. v. Texas*, 991 F.2d
233, 235 (5th Cir. 1993) (finding that debtors' prepetition collection of sales taxes and interest
thereon held subject to trust and not property of estate); *Tex. Comptroller of Pub. Accounts v.*
*Megafoods Stores (In re Megafoods Stores, Inc.)*, 163 F.3d 1063, 1067–69 (9th Cir. 1989) (holding
that, under applicable state law, state sales taxes collected created statutory trust fund, if traceable,
and were not property of the estate); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr.
S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund
claims."); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that
funds held in trust for federal excise and withholding taxes are not property of the debtor's estate).

33.     As such, with respect to certain Taxes and Fees, Debtor generally does not have an
equitable interest in such funds, which Debtor holds in trust for the applicable Taxing Authority.
Thus, such funds should not be considered property of Debtor's estate, and Debtor should be
permitted to pay such funds to the applicable Taxing Authority in the ordinary course of business
as the relevant Taxes and Fees become due.

---

[9] Additionally, a constructive trust may be imposed on collected taxes where there exists a reasonable nexus between
the funds and the taxes in question.  *See In re Integrated Health Servs., Inc.*, 344 B.R. 262, 270 (Bankr. D. Del. 2006).
Debtor, therefore, may not have a legally cognizable interest in funds held on account of such "trust fund" taxes and,
accordingly, such taxes, which generally consist of sales taxes, would not constitute "property of the [Debtor's] estate"
as such term is defined in section 541 of the Bankruptcy Code.

NEWPORT OVERLOOK ASSOCIATION, INC                                    Case No.: 1:25-bk-11000
                                                                                                Chapter 11

**B.      Failure to Pay Prepetition Taxes and Fees May Increase the Scope of Secured and Priority Claims Held By the Taxing Authorities**

34.      Payment of prepetition Taxes and Fees is also warranted, because Debtor's non-payment of certain of the Taxes and Fees may give rise to tax liens or increase the amount of secured claims held by the Taxing Authorities against Debtor's estate.  Specifically, the Taxing Authorities may assert liens against any personal property for which the Taxes and Fees are due and owing.  Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(b)(3).  In fact, the creation and perfection of such a lien may not violate the automatic stay—even if the lien arises under applicable law for taxes due after the Petition Date.  *See* 11 U.S.C. § 362(b)(18) (providing that the automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition"); *see also In re Gifaldi*, 207 B.R. 54, 56 n.1 (Bankr. W.D.N.Y. 1997) (noting that section 362(b)(18) of the Bankruptcy Code abrogated case law that had held that the creation of a statutory lien against *ad valorem* property taxes violated the automatic stay).

35.      Furthermore, to the extent the Taxing Authorities hold oversecured claims, postpetition interest, fees, penalties, and other charges may accrue where prepetition Taxes and Fees are not paid.  11 U.S.C. § 506(b); *see United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (holding that nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code).  Even if such Taxes and Fees are not treated as secured claims, the Taxes and Fees may be entitled to priority treatment in the Chapter 11 Case.  *See* 11 U.S.C. § 507(a)(8).  Any attendant penalties assessed by the applicable Taxing Authority

on delinquent taxes owed by the Debtor may be entitled to similar treatment.  As such, the Debtor's

failure to pay prepetition Taxes and Fees may increase the amount of priority claims held by the

Taxing Authorities against the Debtor's estate.  Indeed, if the Debtor is required to pay interest on

such tax claims, section 511 of the Bankruptcy Code provides that "the rate of interest shall be the

rate determined under applicable nonbankruptcy law," which may exceed prevailing market

interest rates.  *See* 11 U.S.C. § 511(a).

36.     Accordingly, prompt payment of the Taxes and Fees may avoid the potential

imposition of liens, prevent the accrual of interest charges and unnecessary fees and penalties on

such claims, and eliminate claims for interest at potentially above-market rates for any resulting

secured claims.  Avoiding such negative outcomes by the timely payment of the prepetition Taxes

and Fees, thereby, preserves the value of the Debtor's estate and maximizes the distribution

available for creditors in the Chapter 11 Case.

**C.    Many of the Taxes and Fees are Priority Claims, the Payment of Which Will Affect
        Only the Timing of Payments**

37.     Most, if not all, of the Taxes and Fees described in the Motion may be afforded

priority status pursuant to section 507(a)(8) of the Bankruptcy Code and, thus, payment of such

Taxes and Fees would give the Taxing Authorities no more than that to which they otherwise

would be entitled under a chapter 11 plan.  As such, the only practical effect of authorizing Debtor

to pay the Taxes and Fees in the ordinary course of business is that such payment will save Debtor

potential interest expense, legal expense, and penalties that otherwise might accrue on, or be

incurred in connection with, the late payment thereof.

38.     Section 507(a)(8) of the Bankruptcy Code provides that claims entitled to priority

status include unsecured claims of governmental units for (a) taxes on or measured by income or

gross receipts for a taxable year ending on or before the Petition Date, for which a return,

NEWPORT OVERLOOK ASSOCIATION, INC

if required, is last due after three years prior to the Petition Date, and which is assessed within 240 days before the Petition Date (*see* 11 U.S.C. § 507(a)(8)(A)); (b) property taxes incurred before the Petition Date and last payable without penalty after one year before the Petition Date (*see* 11 U.S.C. § 507(a)(8)(B)); and (c) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity. *See* 11 U.S.C. § 507(a)(8)(C). Moreover, to the extent that the Taxes and Fees are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the governmental unit may attempt to assess penalties that may also be accorded priority status. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to "a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

39.    Courts frequently authorize early payment of priority claims when such early payment is intended to prevent some harm to—or to procure some benefit for—the estate. *See, e.g., In re CEI Roofing, Inc.*, 315 B.R. 50, 60–61 (Bankr. N.D. Tex. 2004) (finding that authorization of early payment of priority claims does not upset the Code's priority scheme or trigger concerns of unfair discrimination); *In re CoServ, L.L.C.*, 273 B.R. 487, 493 (Bankr. N.D. Tex. 2002) (implying that bankruptcy court may authorize early payment of prepetition priority claims in instances where nonpayment could impair debtor's ability to operate); *Equalnet Commc'ns*, 258 B.R. at 370 (stating that court may authorize pre-plan payment of priority claims, including certain tax claims, because "the need to pay these claims in an ordinary course of business time frame is simple common sense").

40.    To the extent that the prepetition Taxes and Fees are priority claims, they must be paid in full before any of Debtor's general unsecured obligations may be satisfied according to the waterfall established by Congress in the Bankruptcy Code. Based on the foregoing, payment of

the Taxes and Fees effectively amounts to only an issue of timing, and early payment may save

Debtor potential interest expense, legal expense, and penalties that otherwise might accrue with

respect to such Taxes and Fees.

**D.      Payment of Taxes and Accountant Services and Fees Is Warranted Under Sections 363 and 105(a) of the Bankruptcy Code**

41.     Finally, the doctrine of necessity justifies the immediate payment of the Taxes and

Fees and related services. Section 363(b) of the Bankruptcy Code provides, in relevant part, that

"[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate." 11 U.S.C. § 363(b)(1); *see In re Ionosphere Clubs, Inc.*, 98

B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming bankruptcy court decision to authorize payment

of prepetition claims under section 363(b)).  To approve the use of assets outside the ordinary

course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the

debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward

Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted).  Moreover, if "the

debtor articulates a reasonable basis for its business decisions (as distinct from a decision made

arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60

B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d

229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment

rule on the merits is a near-Herculean task").

42.     In addition, the Court has the authority, pursuant to its equitable powers under

section 105(a) of the Bankruptcy Code, to authorize the relief requested herein.  Section 105(a) of

the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that

is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105; *see Ionosphere*

*Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs, Inc.*, at 175.  Under section 105(a), a court can permit the pre-plan payment of a prepetition obligation when it is essential to the continued operation of the debtor.  *See In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr. M.D. Fla. 2005) (noting that "[b]ankruptcy courts recognize that section 363 is a source for authority to make vendor payments, and section 105 is used to fill in the blanks").  Several courts across the country have authorized such payments of prepetition claims under the "doctrine of necessity" (or "necessity of payment doctrine") when such payment is essential to the continued operation of a debtor's business.  *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

43.     Here, Debtor's requested payment of the Taxes and Fees (to the extent such funds constitute property of the estate) is necessary not only because of the aforementioned risks associated with non-payment, but also because it is necessary for Debtor to comply with its fiduciary duties. Specifically, section 1107(a) of the Bankruptcy Code "contains an implied duty

of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management … was burdened with the duties and responsibilities of a bankruptcy trustee."). Courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the … [business] during reorganization, payment may be authorized even if it is made out of [the] corpus").

44.    Debtor's timely payment of the Taxes and Fees represents a sound exercise of Debtor's business judgment and will maximize value by avoiding potential distractions in the form of Audits as well as the potential dilution of recovery to other creditors of the estate. First, if Debtor fails to pay the Taxes and Fees in a timely manner, the Taxing Authorities may assert that Debtor's directors and officers are personally liable for payment of certain Taxes and Fees. *United States v. A&B Heating & Air Conditioning, Inc. (In re A&B Heating & Air Conditioning)*, 861 F.2d 1538, 1539 n.2 (11th Cir. 1988) ("The Internal Revenue Code imposes personal liability on responsible corporate officers who fail to remit trust fund taxes to the government.") This assertion may be made even where the failure to pay the Taxes and Fees was not a result of malfeasance on the directors' and officers' behalf. Any claims or litigation related to the failure to pay the Taxes and Fees would be distracting for Debtor, its directors and officers, as well as the

Court, which may be asked to entertain various motions by Taxing Authorities seeking relief.

Second, the Taxing Authorities may seek to assert monetary penalties or—worse yet—liens on

estate assets or seek to lift the automatic stay to pursue Debtor for payment, needlessly

complicating the case and costing Debtor additional legal fees.  As such, it is in the best interest

of Debtor's estate to eliminate the possibility of these distractions or unnecessary costs and to

enable the Debtor to continue its business without interruption and to focus on its restructuring

efforts.

45.     Moreover, in order to ensure the certain of the Taxes and Fees are paid in a timely

manner (*i.e.*, the Income Taxes), the Debtor requires the services of the Accountant.  Failure to

pay the Accountant for the Accountant Services in the ordinary course of business may cause a

delay in the Debtor paying its Income Taxes, resulting in penalties, levies, or other fines.  As such,

continued payment for the Accountant Services is justified by the Debtor's business judgment and

should be approved.

### BANKS SHOULD BE AUTHORIZED TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS AND ELECTRONIC FUNDS TRANSFERS

46.     Debtor has sufficient funds to pay any amounts related to the Taxes and Fees in the

ordinary course of business.  Under Debtor's existing cash management system, Debtor is prepared

to readily identify checks or wire transfer requests relating to the Taxes and Fees, as applicable.

Debtor believes there is minimal risk that checks or wire transfer requests that the Court has not

authorized will be inadvertently made. Thus, Debtor requests that the Court authorize the Banks

to receive, process, honor, and pay any and all checks or wire transfer requests as directed by

Debtor in respect of the Taxes and Fees, to the extent Debtor has sufficient funds on deposit in its

accounts with such Banks, whether such checks or wire transfers are dated before, on, or after the

Petition Date, and such Banks may rely on the representations of Debtor without any duty of further inquiry and without liability for following Debtor's instructions.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

47.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "[u]nless relief is needed to avoid immediate and irreparable harm[.]"   For reasons discussed above, authorizing Debtor, in its sole discretion, to pay the Taxes and Fees accrued prior to the Petition Date and granting the other relief requested herein is integral to Debtor's ability to transition its operations into Chapter 11 Case. Failure to receive such authorization and other relief during the first 21 days of the Chapter 11 Case would severely disrupt Debtor's operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary for Debtor to operate its businesses in the ordinary course, preserve the ongoing value of Debtor's operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

48.     To implement the foregoing successfully, Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).  As noted above and in the First Day Declaration, the relief requested is necessary to avoid immediate and irreparable harm to Debtor.  Accordingly, ample cause exists to justify waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay under Bankruptcy Rule 6004(h) to the extent such provisions apply.

NEWPORT OVERLOOK ASSOCIATION, INC    Case No.: 1:25-bk-11000

Chapter 11

## RESERVATION OF RIGHTS

49.    Nothing contained herein is intended or should be construed as an admission as to the validity of any Tax or Fee against Debtor, a waiver of Debtor's right to dispute any Tax or Fee, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code. Debtor expressly reserves its rights to contest any claim related to the Taxes and Fees under applicable non-bankruptcy law. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of Debtor's right to dispute such claim subsequently.

**WHEREFORE**, Debtor respectfully requests the Court enter an order, substantially in the form attached hereto as **Exhibit B**, (i) granting the relief requested herein on an interim basis, and after a final hearing, on a final basis, (ii) authorizing, but not directing, Debtor to remit and pay the Taxes and Fees as Debtor, in its sole discretion, deems necessary, (iii) authorizing the Banks to receive, process, honor, and pay all checks issued and electronic payment requests made relating to the foregoing, and (iv) granting such other and further relief as the Court deems appropriate.

*[Remainder of Page Intentionally Left Blank]*

NEWPORT OVERLOOK ASSOCIATION, INC    Case No.: 1:25-bk-11000

Chapter 11

Dated:    December 17, 2025

*/s/Richard J. Land*

Richard J. Land (5592)
Andre S. Digou (8711)
**CHACE RUTTENBERG & FREEDMAN, LLP**
One Park Row, Suite 300
Providence, RI 02903
Telephone: (401) 453-6400
Email:  rland@crfllp.com
          adigou@crfllp.com

*Proposed Counsel to Debtor and Debtor in Possession*

- and -

Daniel M. Eliades (*pro hac vice* pending)
Peter J. D'Auria (*pro hac vice* pending)
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Email:  daniel.eliades@klgates.com
          peter.dauria@klgates.com

- and -

Keith J. McCarthy
**K&L GATES LLP**
1 Congress St. Suite 2900
Boston, MA 02114
Telephone: (617) 261-3100
Email:  keith.mccarthy@klgates.com

- and -

Jonathan N. Edel (*pro hac vice* pending)
**K&L GATES LLP**
300 South Tryon St., Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400

*Proposed Special Counsel to Debtor
and Debtor in Possession*

NEWPORT OVERLOOK ASSOCIATION, INC                              Case No.: 1:25-bk-11000
                                                                              Chapter 11

## NOTICE

Within fourteen (14) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within document was filed electronically with the above-captioned Court, and notices of electronic filing were sent to the following persons on December 17, 2025 through the electronic filing system.

Office of the United States Trustee
5 Post Office Square, Suite 1000
Boston, Massachusetts 02109-3934
USTP.Region01@ust.doj.gov
Sandra.Nicholls@usdoj.gov

Internal Revenue Service
Insolvency Unit – 4th Floor
380 Westminster Street    Providence, RI 02903

RI Division of Taxation
Bankruptcy Unit – Collection Section
One Capitol Hill
Providence, RI 02908

Department of Treasury Internal Revenue Service
Ogden, UT 84201-0012

Town of Jamestown
Tax Collector
Jean M Gabriele
93 Narragansett Avenue,
P.O. Box 377
Jamestown, RI 02835

NEWPORT OVERLOOK ASSOCIATION, INC  Case No.: 1:25-bk-11000

Chapter 11

Dated:      December 17, 2025

*/s/ Richard J. Land* _____
Richard J. Land (5592)
Andre S. Digou (8711)
**CHACE RUTTENBERG & FREEDMAN, LLP**
One Park Row, Suite 300
Providence, RI 02903
Telephone: (401) 453-6400
Email:  rland@crfllp.com
            adigou@crfllp.com

*Proposed Counsel to Debtor and Debtor in Possession*

- and -

Daniel M. Eliades (*pro hac vice* pending)
Peter J. D'Auria (*pro hac vice* pending)
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Email:  daniel.eliades@klgates.com
            peter.dauria@klgates.com

- and -

Keith J. McCarthy
**K&L GATES LLP**
1 Congress St. Suite 2900
Boston, MA 02114
Telephone: (617) 261-3100
Email:  keith.mccarthy@klgates.com

- and -

Jonathan N. Edel (*pro hac vice* pending)
**K&L GATES LLP**
300 South Tryon St., Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400

*Proposed Special Counsel to Debtor
and Debtor in Possession*

NEWPORT OVERLOOK ASSOCIATION, INC                    Case No.: 1:25-bk-11000
                                                                                     Chapter 11

## **EXHIBIT A**

**(Taxes and Fees)**

NEWPORT OVERLOOK ASSOCIATION, INC                                    Case No.: 1:25-bk-11000
                                                                                    Chapter 11

| **TAXING AUTHORITY NAME** | **TYPE OF TAX** | **ADDRESS** |
|---|---|---|
| State of Rhode Island Department of Revenue | Sales and Use | RI Division of Taxation One Capitol Hill Providence, RI 02908 |
| US Department of Treasury, Internal Revenue Service | Income | Department of Treasury Internal Revenue Service Ogden, UT 84201-0012 |
| Jamestown Tax Collector | Real and Personal Property | Town of Jamestown Tax Collector Jean M Gabriele 93 Narragansett Avenue, P.O. Box 377 Jamestown, RI 02835 |
| Internal Revenue Service Providence Field Office | Income | Internal Revenue Service Insolvency Unit – 4th Floor 380 Westminster Street Providence, RI 02903 |
| Rhode Island Division of Taxation Bankruptcy Unit – Collection Section | Income | RI Division of Taxation One Capitol Hill Providence, RI 02908 |

## EXHIBIT B

**(Proposed Interim Order)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,<br><br><p align="center">Debtor.</p> | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

**INTERIM ORDER GRANTING DEBTOR'S**
**MOTION FOR EMERGENCY DETERMINATION FOR INTERIM AND FINAL**
**ORDERS AUTHORIZING DEBTOR TO PAY PREPETITION SALES, USE,**
**TRUST FUND, PROPERTY, AND OTHER TAXES AND SIMILAR OBLIGATIONS**

**THIS MATTER** came before the Court on _____, for a hearing (the "Hearing"),[1] upon *Debtor's Motion for Emergency Determination for Interim and Final Orders Authorizing Debtor to Pay Prepetition Sales, Use, Trust Fund, Property, and Other Taxes and Similar Obligations* [Doc. No. __] (the "Motion"). The Motion seeks entry of interim and final orders authorizing, but not directing, Debtor to pay prepetition sales, use, trust fund, property, and similar taxes, and related fees. The Court, having considered the Motion finds (i) notice of the Motion and the Hearing thereon was sufficient under the circumstances and no other or further notice need be provided; (ii) the legal and factual bases set forth in the Motion, the First Day Declaration, together with the representations of the parties present at the Hearing establish just cause for the relief granted herein; and (iii) the relief requested in the Motion is in the best interests of Debtor, its estate, its creditors, and all parties in interest. Accordingly, it is **ORDERED**:

1.      The Motion (Doc. No. __) is **GRANTED** on an interim basis.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.      Debtor is authorized, but not directed, in its sole discretion, to pay prepetition Taxes and Fees that will become due within thirty (30) days after the Petition Date in the approximate amounts set forth in the Motion, including Sales and Use Taxes, Income Taxes, Property Taxes, and Other Taxes and Fees, to the applicable Taxing Authorities.

3.      To the extent Debtor has paid Taxes which should not have been paid, Debtor is authorized to seek a refund of such Taxes.  Likewise, to the extent Debtor disputes any pre-petition Taxes, Debtor is authorized to set aside, in a segregated account, funds to pay such Taxes until a final determination is made as to whether Debtor is obligated to pay such Taxes.

4.      The Debtor is authorized, but not directed, in its sole discretion, to continue utilizing the Accountant's services and paying for the Accountant Services in the ordinary course of business.

5.      Each of the Banks at which Debtor maintains its accounts are authorized to (a) receive, process, honor, and pay all checks presented for payment and electronic payment requests as directed by the Debtor on account of the relief granted herein, to the extent sufficient funds on deposit in those accounts, whether such checks were presented or electronic requests were submitted before, on, or after the Petition Date; and (b) accept and rely on Debtor's designation of any particular check or electronic payment request as appropriate pursuant to the Motion without any duty of further inquiry and without liability for following Debtor's instructions.

6.      Nothing in this Interim Order precludes Debtor from (a) contesting, in its sole discretion, the validity and amount of any Taxes and Fees under applicable bankruptcy or non-bankruptcy law, or (b) seeking or not seeking approval or assumption of any agreement, contract, or lease under 11 U.S.C. § 365.

7.      All depositories on which checks were drawn in payment of prepetition amounts to the Taxing Authorities shall honor such checks as and when presented for payment.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9.      The notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

11.     Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

12.     **The final hearing on the Motion shall be held on _____, at _____ (Eastern Time) at the United States Bankruptcy Court, The Federal Center, 380 Westminster Street, 6th Floor, Providence, RI 02903.  Any objections or responses to entry of a final order on the Motion shall be filed on or before _____ p.m. (Eastern Time), on _____.**

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Interim Order.

# # #