## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,[1]<br><br>           Debtor. | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

### DEBTOR'S FIRST DAY MOTION FOR EMERGENCY DETERMINATION FOR AUTHORITY TO (I) CONTINUE TO ADMINISTER INSURANCE POLICIES AND RELATED AGREEMENTS; (II) HONOR CERTAIN OBLIGATIONS IN RESPECT THEREOF; AND (III) FOR RELATED RELIEF

Newport Overlook Association, Inc. ("Debtor" or "Association") files *Debtor's Motion for Emergency Determination for Authority to (I) Continue to Administer Insurance Policies and Related Agreements; (II) Honor Certain Obligations in Respect Thereof; and (III) for Related Relief* (the "Motion"). The Motion seeks entry of an order, substantially in the form attached as **Exhibit A**, authorizing Debtor to continue administering insurance policies and agreements relating thereto, and pay certain claims, in Debtor's discretion, to the extent they become due and payable during the pendency of Debtor's Chapter 11 Case. In support of this Motion, Debtor relies upon the *Declaration of Amy Houle Caruso in Support of Debtor's Chapter 11 Petition and First Day Relief* (the "First Day Declaration"),[2] which has been filed with the Court on or about the date hereof and is incorporated herein, and respectfully represent as follows:

---

[1] The last four digits of Debtor's tax identification number are 6560. Debtor's corporate headquarters is located at 150 Bay View Drive, Jamestown, RI 02835.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

NEWPORT OVERLOOK ASSOCIATION, INC.                                    Case No. 1:25-bk-11000
                                                                                   Chapter 11

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105(a), 363, 507(a)(5), 1107 and 1108 of chapter 11 of title 11 of the United States Code[3] (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-2(d).

### BACKGROUND

4.      On December 17, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5.      Debtor is a not-for-profit corporation organized under the laws of the State of Rhode Island pursuant to the Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 25, 2019 as filing number 201991094030, as amended pursuant to Restated Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 26, 2019 as filing number 201991196680 (collectively, the "Articles of Incorporation"). Pursuant to the Articles of Incorporation, the purposes of the Association are "*[t]o own the common areas and operate the timeshare resort known as Newport Overlook, 150 Bay View Dr., Jamestown, RI and any other purpose lawful under RI general laws.*"

6.      Debtor was originally formed pursuant to a Declaration, dated April 1, 1982, and recorded on June 16, 1982 (as amended from time to time, the "Declaration"), in Volume 78, at Page 84 et seq., in the Land Evidence Records of the Town of Jamestown, Rhode Island (the "Land

---

[3] All references to the "Bankruptcy Code" refer to 11 U.S.C. §§101-1532.

Records Office"). The Declaration established a condominium form of ownership for the property

owned thereby, which was then submitted to an interval or timeshare form of ownership pursuant

to that certain Interval Ownership Plan Declaration of Covenants and Restrictions, dated and

recorded March 21, 1983, in Volume 79 at Page 677 in the Land Records Office (as amended,

the "Interval Declaration").

7.      The By-laws of the Association (the "By-laws") provide that the Association was

formed to generally promote the welfare of its members; to provide a forum for the exchange of

ideas relative to policies; to promote and operate in accordance with the plan of Interval Ownership

(defined below) as set forth in the Interval Declaration; and to do all acts and things necessary or

appropriate to the ordinary and necessary operation and maintenance of the property governed by

the Association (the "Property").

8.      The Property governed by the Association is located at 150 Bay Drive, Jamestown,

Rhode Island and is commonly known as *Newport Overlook*. The Property consists of 3 buildings

containing a total of 19 two-bedroom units (the "Units") and their concomitant common areas,

including a pool. Each Unit consists of 52 interval weeks ("Intervals"), so there is a total of

988 Intervals at the Property. Owners of Interval are members in the Association (the "Association

Members"). Pursuant to the Interval Declaration, the Association Members own each of their

Intervals (as well as a concomitant share of the common areas) as tenants in common with all other

Association Members.

9.      Debtor owns 19 Intervals at the Property and a concomitant share of the common

elements at the Property (the "Association Interest").  The Association Interest comprises 1.92%

of the total Intervals at the Property. Debtor is a tenant in common with all other interval owners.

NEWPORT OVERLOOK ASSOCIATION, INC.                    Case No. 1:25-bk-11000
                                                      Chapter 11

10.     PTVO Owners Association, Inc. ("PTVO") owns 241 Intervals at the Property, which is 24.39% of the total Intervals. WorldMark, the Club owns 231 Intervals at the Property, which is approximately 23.38% of the total Interval. Eastern Resorts Company, LLC owns 102 Intervals at the Property, which is 10.32% of the total Intervals. The remaining 395 intervals (39.98% of the total Intervals) are owned by parties to corresponding contracts ("Interval Owners"), with each interval having its own separate corresponding contract.

11.     Vacation Resort Management, Inc. f/k/a Wyndham Vacation Management, Inc. (the "Property Manager") provides management services to the Property for Debtor, pursuant to that certain Amended & Restated Management Agreement between the Property Manager and Debtor and Taylors Point Condominium Association, dated as of June 10, 2016 (the "Management Agreement").

12.     The Debtor is operating its business and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.     For a detailed description of Debtor and its operations, Debtor respectfully refers the Court and parties in interest to its First Day Declaration.

**RELIEF REQUESTED**

14.     Pursuant to Sections 105(a), 363(b), and 503(b) of the Bankruptcy Code, Debtor requests (a) authority, but not direction, to (i) maintain, renew, revise, extend, rollover, modify, supplement, increase, purchase or replace, in its sole discretion, its Insurance Policies and Programs (as defined below) in the ordinary course of business, and/or procure tail coverage, and (ii) honor its Insurance Obligations (as defined below), including by paying any prepetition Insurance Obligations in the ordinary course of business during the Chapter 11 Case; and (b) related relief.

15.     Pursuant to Local Rule 9013-2(d)(2), Debtor respectfully requests that the Court grant the relief requested in this Motion on an emergency basis for the reasons set forth and given the urgent nature of the consideration of this Motion with other First Day motions.  To avoid substantial disruption to Debtor's business operations and the irreparable harm attendant thereto, Debtor is seeking immediate relief.

## DEBTOR'S INSURANCE POLICIES AND PROGRAMS

16.     In connection with the operation of Debtor's business and the management of the Property, Debtor maintains certain insurance policies (collectively, the "Insurance Policies and Programs" and, all premiums, Deductibles (as defined below), and other obligations related thereto, broker or advisor fees, assessments, and taxes or other fees, are the "Insurance Obligations"),[4] including, but not limited to, the Insurance Policies and Programs listed on **Exhibit B**, through several different insurance carriers (collectively, the "Insurance Carriers").

17.     Certain Insurance Policies and Programs are required by the various regulations, laws, and contracts that govern Debtor's commercial activities.  Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Furthermore, the *Operating Guidelines and Reporting Requirements for Chapter 11 Cases (Effective 2/1/23)* (the "Guidelines"), adopted by the Office of the United States Trustee for Region I (Maine, Massachusetts, New Hampshire, and Rhode Island), require debtors to maintain insurance coverage throughout their chapter 11 cases. Debtor  requests authority, but not direction, to maintain, renew, revise, extend, rollover, modify, supplement,

---

[4] For the avoidance of doubt, the term "Insurance Obligations" includes Debtor's obligations directly to its Insurance Carriers (as defined below) as well as its reimbursement of costs and expenses related to the Umbrella Policy (as defined below) and the Environmental Policy (as defined below).

increase, purchase or replace, as applicable, its Insurance Policies and Programs and to honor its Insurance Obligations as they come due, in the ordinary course of business during the Chapter 11 Case, as well as authority to procure tail coverage, if it determines in its business judgment that such action(s) is necessary or appropriate.

## A.     Insurance Policies and Audits

### (i)     _Insurance Policies_[5]

18.     The Debtor maintains several forms of insurance as procured for Debtor by the Property Manager pursuant to the Management Agreement, as well as an additional policy procured and maintained directly by Debtor. The Insurance Policies and Programs provide coverage related to, among other things, commercial real property coverage, general liability, excess liability, umbrella, directors' and officers' liability, and property liability (collectively, and as described more fully below, the "Insurance Policies").  The Debtor maintains the Insurance Policies to help manage and limit the various risks associated with operating its business, which is essential to the preservation of the value of Debtor's estate.

19.     The Debtor, as an additional named insured, maintains several forms of insurance coverage by operation of an umbrella/general liability coverage policy (the "Umbrella Policy") purchased by Travel + Leisure Resort Development, Inc. ("T+L").  This policy includes, among other things, commercial real property coverage, as well as commercial general liability and umbrella liability coverages.  The Umbrella Policy expires on May 1, 2026.  The Debtor pays for

---

[5] There is also an additional insurance policy covering the Property with respect to environmental pollution risks (the "Environmental Policy"). This policy is provided by Travel + Leisure, Co. to cover risks to the Property Manager with respect to all of the properties it manages (including the Property), and, therefore, the Debtor is not a named insured or beneficiary under the policy. The Property Manager passes the charges for this policy through to Debtor under the Management Agreement, with Debtor having paid approximately $184.53 for the policy in 2025. This policy expires at the end of calendar year 2025, at which time Debtor will pay the Property Manager again for its share of the policy on January 1, 2026.

NEWPORT OVERLOOK ASSOCIATION, INC.                                    Case No. 1:25-bk-11000
                                                                                        Chapter 11

its portion of the coverage thereunder in two installments—generally, in April and June of each

year.  With respect to the Umbrella Policy, Debtor paid approximately $53,844.53 for its share of

the premiums over the twelve (12) months prior to the Petition Date.  Over the prior year, Debtor

has not made any claims against the Umbrella Policy.

20.     The Debtor has also purchased an Insurance Policy to provide coverage for its

directors' and officers' liability through HDI Global Specialty SE (the "D&O Policy").  The D&O

Policy provides coverage in the aggregate up to $5 million and is set to expire on January 10, 2026.

The annual premium is $9,500.00 with fees of $100 and a tax of $380, which Debtor pays in a

single annual installment through the Insurance Broker (as defined below).  Over the prior year,

Debtor has not made any claims against the D&O Policy.

21.     In total, during the twelve (12) months preceding the Petition Date, Debtor paid

approximately $63,344.53 in premiums under the Insurance Policies (collectively, the "Insurance

Premiums").  The Debtor does not expect any Insurance Premiums will become due and owing

during the thirty days following the Petition Date.

22.     Certain of the Insurance Policies require Debtor to pay a per-incident deductible

(collectively, the "Deductibles"). Generally, if a claim is made against Debtor's Insurance Policies,

Debtor will pay the Deductible/Self Insured Retention ("SIR") to the applicable Insurance Carriers,

and the Insurance Carriers will administer the claim and make any payments in connection

therewith.  As noted above, during the twelve (12) months preceding the Petition Date, Debtor

paid approximately $0 in Deductibles.

23.     The Debtor requests authority to continue honoring its Insurance Obligations to the

Insurance Policies in the ordinary course, including authority to pay any amount that may be due

and owing prior to the Petition Date or that come due and owing under any of the Insurance

NEWPORT OVERLOOK ASSOCIATION, INC.                                    Case No. 1:25-bk-11000
                                                                                        Chapter 11

Policies.  In addition, Debtor requests authority, but not direction, to maintain, renew, revise,

extend, rollover, modify, supplement, increase, purchase or replace, as applicable, its Insurance

Policies and Programs in the ordinary course of business during the Chapter 11 Case, as well as

authority to procure tail coverage, if it determines in its business judgment that such action(s) is

necessary or appropriate.

     *(ii)*    *Audits*

    24.    Certain of the Insurance Policies provided by T+L are subject to quarterly premium

audits to ensure sufficient coverage is in place ("Audits").  These Audits may result in additional

prepetition Insurance Premiums being due and payable by Debtor during the pendency of this

Chapter 11 Case (such additional Insurance Premiums, "Audit Amounts").  As of the Petition Date,

Debtor does not anticipate owing any additional Audit Amounts.  Nevertheless, by this Motion,

Debtor seeks authority, but not direction, to satisfy all such Audit Amounts in the ordinary course

of business to the extent any may arise.

**B.**    **Insurance Broker**

    25.    In connection with the Insurance Policies and Programs, Stephens Insurance, LLC

(the "Insurance Broker") is utilized to assist with the procurement and negotiation of certain

Insurance Policies and Programs.  The Insurance Broker also remits certain premium payments to

the Insurance Carriers on behalf of Debtor for the current policy periods.  Finally, the Insurance

Broker assists Debtor with identifying and reviewing claims before they are reported to the

Insurance Carriers. Though the Insurance Broker works primarily with the Property Manager

and/or T+L (and contracts directly with T+L rather than Debtor), Debtor also utilizes the Insurance

Broker's services directly with respect to the obtaining the D&O Policy.

NEWPORT OVERLOOK ASSOCIATION, INC.    Case No. 1:25-bk-11000
Chapter 11

26.    In exchange for its services, the Insurance Broker is paid certain fees (collectively, the "Broker's Fees")[6] on a commission basis, which are earned by the Insurance Broker upon inception of the applicable policy term and are typically included in the cost of the premium for such Insurance Policies and Program.    In general, T+L pays the Broker's Fees and certain Insurance Premiums and passes the costs along to Debtor for reimbursement through the Property Manager; however, with respect to the D&O Policy, Debtor pays the Insurance Broker the Broker's Fees directly, which totaled $887.00 last year.    As of the Petition Date, Debtor is not aware of any outstanding prepetition amounts owed to the Insurance Broker (or to T+L for reimbursement) on account of the Broker's Fees.    However, because of the Insurance Broker's integral role in connection with the maintenance and administration of Debtor's Insurance Policies and Programs, Debtor requests authority, but not direction, to continue utilizing its services and to pay any Broker's Fees that may become due and payable in the ordinary course of Debtor's business.

## AUTHORITY FOR RELIEF

**A.    Maintenance of Insurance Policies and Programs and Payment of Insurance Obligations is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity**

27.    A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to 11 U.S.C. § 363(b)(1). Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." To approve the use of assets outside the ordinary course of business

---

[6] For the avoidance of doubt, the term "Broker's Fees" includes all amounts Debtor pays directly to the Insurance Broker as well as Debtor's obligations to reimburse for its portion of the fees due to the Insurance Broker on account of the Umbrella Policy.

NEWPORT OVERLOOK ASSOCIATION, INC.                                          Case No. 1:25-bk-11000
                                                                                             Chapter 11

pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that

a sound business purpose justifies such actions."[7]

28.      In addition, the Court has the authority, pursuant to its equitable powers under

section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief

is necessary for Debtor to comply with the requirements of the Bankruptcy Code and Guidelines.

Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy

courts have invoked the equitable power of Section 105 to authorize the postpetition payment of

prepetition claims where such payment is necessary to preserve the value of the debtor's estate.[8]

The purpose of section 105 of the Bankruptcy Code is to ensure that the bankruptcy court has the

power "to take whatever action is appropriate or necessary in aid of the exercise of [its]

jurisdiction.[9]

29.      Under this "doctrine of necessity" (or the "necessity of payment" doctrine),

the Court may authorize the payment of prepetition claims when such payment is essential to the

continued operation of a debtor's business.[10] In a long line of well-established cases, courts

consistently have utilized this authority to permit the payment of prepetition obligations where

---

[7] *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999), *accord In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

[8] *See, e.g.*, *Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

[9] 2 COLLIER ON BANKRUPTCY ¶ 105.01 (16th ed. 2024).

[10] *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity, particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a plan of reorganization).

NEWPORT OVERLOOK ASSOCIATION, INC.                           Case No. 1:25-bk-11000
                                                                        Chapter 11

such payment is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.[11]

30.     Continued payment of all Insurance Obligations is justified by Debtor's business judgment as well as being a necessary cost of preserving Debtor's estate.  First and foremost, maintenance of the insurance policies simply makes good sense.  As noted in the First Day Declaration, Debtor has commenced this Chapter 11 Case to pursue a sale of the Property. As such, the Property is the most important asset in the estate and to the Association Members. If Debtor's insurance coverage with respect to the Property were to lapse, a single calamity could result in a loss of the vast majority of the value of Debtor's estate to the detriment of the Association Members and other stakeholders.  As such, it is imperative that Debtor continue the coverage provided by the Insurance Policies and Programs during the course of this Chapter 11 Case.

31.     Moreover, Debtor must maintain the Insurance Policies and Programs in order to comply with Section 1112(b)(4)(C) of the Bankruptcy Code, the Guidelines promulgated by the U.S. Trustee, as well as certain state law. *See*, *e.g.*, 28 U.S.C. § 959(b) (obligating chapter 11 debtors under federal law to operate their business and manage their property according to the laws of the states where such business and property is located).  Thus, any lapse in coverage would not only be unwise, but it would be illegal.

---

[11] *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (holding that payment of a pre-receivership claim prior to reorganization was permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the … [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving a lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

NEWPORT OVERLOOK ASSOCIATION, INC.                                    Case No. 1:25-bk-11000

Chapter 11

32.     Even where coverage is not expressly required by law, Debtor nevertheless is compelled by sound business practices to maintain essential insurance policies.  Any interruption to such coverage could expose Debtor to a variety of risks, including: (a) the possible incurrence of direct liabilities for the payment of claims that otherwise would have been covered by the Insurance Policies; (b) the possible inability to obtain similar insurance coverage; and (c) the possible incurrence of higher costs for re-establishing such coverage after it lapses. In short, the continuance and maintenance of the Insurance Policies and Programs is a sound exercise of Debtor's business judgment and fully supported by the facts and circumstances of these cases.  *See* 11 U.S.C. § 1107(a).

33.     Authority to continue maintaining the Insurance Policies and Programs and to pay all Insurance Obligations, including any unpaid Insurance Obligations arising prior to the commencement of this Chapter 11 Case, is critical to Debtor's ability to preserve the value of the estate, which will inure to the benefit of all parties in interest.  The relief requested by this Motion represents a sound exercise of Debtor's business judgment, is necessary to avoid immediate and irreparable harm to Debtor's estate and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.  Accordingly, authorizing Debtor to pay prepetition amounts related to the Insurance Obligations is in the best interests of Debtor, its estate, and its economic stakeholders.

**B.     Section 363(c)(1) of the Bankruptcy Code Authorizes Debtor to Continue Its Insurance Policies and Program During the Pendency of the Chapter 11 Case**

34.     The Bankruptcy Code authorizes Debtor to maintain its Insurance Policies and Programs and to continue usage of the Insurance Broker and to renew such arrangements, as necessary.  Under section 363(c)(1) of the Bankruptcy Code, a debtor in possession may "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of

NEWPORT OVERLOOK ASSOCIATION, INC.                    Case No. 1:25-bk-11000
                                                                  Chapter 11

business without notice or a hearing." 11 U.S.C. § 363(c)(1). The Debtor routinely maintains,

supplements, amends, extends, renews, revises, rolls-over, and/or replaces its Insurance Policies

in the ordinary course of business, meaning such actions fall squarely within the parameters of

section 363(c)(1).

35.    Moreover, as further described above, Debtor has compelling reasons to continue

all of its Insurance Policies and Programs, as without them, the estate would be immediately

exposed to potentially devastating liabilities. Further, attempting to replace the policies after they

lapse may prove costly or be unavailable to Debtor.

36.    Finally, the services provided by the Insurance Broker are critical to ensuring that

Debtor obtains the necessary coverage on advantageous terms at competitive rates, and such

services could not be replaced expeditiously. The Insurance Broker is intimately familiar with

Debtor's Insurance Policies and Programs and Insurance Obligations. Losing the services provided

by the Insurance Broker would result in a costly disruption to Debtor's business and would detract

from efficient administration of this Chapter 11 Case.

37.    For the foregoing reasons, Debtor requests authority, but not direction, to maintain,

renew, revise extend, rollover, modify, supplement, increase, purchase or replace, as applicable,

its Insurance Policies and Programs and to honor its Insurance Obligations (including Broker's

Fees) as they come due, in the ordinary course of business during the Chapter 11 Case, as well as

authority to procure tail coverage, if it determines in its business judgment that such action(s) is

necessary or appropriate, without further Court Approval.

### BANKS SHOULD BE AUTHORIZED TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS AND ELECTRONIC FUNDS TRANSFERS

38.    The Debtor anticipates having sufficient funds to pay the amounts described herein

in the ordinary course of business using expected cash flows from ongoing business operations

and/or unencumbered cash reserves.  In addition, under Debtor's existing cash management system, Debtor can readily identify whether checks or wire transfer requests are payments authorized by the relief requested in this Motion.  Accordingly, Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be inadvertently made. Thus, Debtor requests that the Court authorize all applicable financial institutions (collectively, the "Banks"), when requested by Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein, to the extent Debtor has sufficient funds on deposit in their accounts with such Banks, and such Banks may rely on the representations of Debtor without any duty of further inquiry and without liability for following Debtor's instructions.

## SATISFACTION OF BANKRUPTCY RULE 6003(B)

39.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to … use, sell, or lease property of the estate, including a motion to pay all or part of a claim that arose before the petition was filed[]" before 21 days after filing of the petition. Fed. R. Bankr. P. 6003(a). As described above and in the First Day Declaration, authorizing Debtor to use estate funds to pay the Insurance Obligations and the Broker's Fees in the ordinary course of business is in the best interests of Debtor and its estate.  Accordingly, Debtor believes that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

40.    To implement the foregoing successfully, Debtor requests that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy

NEWPORT OVERLOOK ASSOCIATION, INC.                                    Case No. 1:25-bk-11000
                                                                                                    Chapter 11

Rule 6004(h).  As described above and in the First Day Declaration, the relief requested herein is

necessary to avoid immediate and irreparable harm to Debtor.  Accordingly, ample cause exists to

find that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant

a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice

requirements and such stay apply.

## **<u>RESERVATION OF RIGHTS</u>**

41.      Nothing contained herein is intended to be or shall be deemed as (a) an implication

or admission as to the validity of any claim against Debtor; (b) a waiver or limitation of Debtor's

or any party in interest's rights to dispute the amount of, basis for, or validity of any claim; (c) a

waiver of Debtor's or any other party in interest's rights under the Bankruptcy Code or any other

applicable nonbankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof

of claim; (e) an agreement or obligation to pay any claims; (f) a waiver of any claims or causes of

action which may exist against any creditor or interest holder; (g) an admission as to the validity

of any liens satisfied pursuant to this Motion; or (h) an approval, assumption, adoption, or rejection

of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's

order is not intended to be and should not be construed as an admission to the validity of any claim

or a waiver of Debtor's or any other party in interest's rights to dispute such claim subsequently.

**WHEREFORE**, Debtor respectfully requests that the Court hear this Motion on an

emergency basis and enter an order substantially in the form attached hereto as **<u>Exhibit A</u>** (i)

granting the relief requested in this Motion, and (ii) granting such other relief as the Court deems

just and proper.

*[Remainder of Page Intentionally Left Blank]*

NEWPORT OVERLOOK ASSOCIATION, INC.                                   Case No. 1:25-bk-11000
                                                                              Chapter 11

Dated:        December 17, 2025

                                          */s/Richard J. Land*_____
                                          Richard J. Land (5592)
                                          Andre S. Digou (8711)
                                          **CHACE RUTTENBERG & FREEDMAN, LLP**
                                          One Park Row, Suite 300
                                          Providence, RI 02903
                                          Telephone: (401) 453-6400
                                          Email:  rland@crfllp.com
                                                   adigou@crfllp.com

                                          *Proposed Counsel to Debtor and Debtor in Possession*

                                          - and -

                                          Daniel M. Eliades (*pro hac vice* pending)
                                          Peter J. D'Auria (*pro hac vice* pending)
                                          **K&L GATES LLP**
                                          One Newark Center, Tenth Floor
                                          Newark, NJ 07102
                                          Telephone: (973) 848-4000
                                          Email: daniel.eliades@klgates.com
                                                   peter.dauria@klgates.com

                                          - and -

                                          Keith J. McCarthy
                                          **K&L GATES LLP**
                                          1 Congress St. Suite 2900
                                          Boston, MA 02114
                                          Telephone: (617) 261-3100
                                          Email:  keith.mccarthy@klgates.com

                                          - and -

                                          Jonathan N. Edel (*pro hac vice* pending)
                                          **K&L GATES LLP**
                                          300 South Tryon St., Suite 1000
                                          Charlotte, NC 28202
                                          Telephone: (704) 331-7400


                                          *Proposed Special Counsel to Debtor*
                                          *and Debtor in Possession*

NEWPORT OVERLOOK ASSOCIATION, INC.                    Case No. 1:25-bk-11000
                                                              Chapter 11

## **NOTICE**

Within fourteen (14) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:

NEWPORT OVERLOOK ASSOCIATION, INC.,

                          Debtor.

Chapter 11

Case No.: 1:25-bk-11000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within document was filed electronically with the above-captioned Court, and notices of electronic filing were sent to the following persons on December 17, 2025 through the electronic filing system.

Office of the United States Trustee
5 Post Office Square, Suite 1000
Boston, Massachusetts 02109-3934
USTP.Region01@ust.doj.gov
Sandra.Nicholls@usdoj.gov

Internal Revenue Service
Insolvency Unit – 4th Floor
380 Westminster Street    Providence, RI 02903

RI Division of Taxation
Bankruptcy Unit – Collection Section
One Capitol Hill
Providence, RI 02908

Department of Treasury Internal Revenue Service
Ogden, UT 84201-0012

Town of Jamestown
Tax Collector
Jean M Gabriele
93 Narragansett Avenue,
P.O. Box 377
Jamestown, RI 02835

NEWPORT OVERLOOK ASSOCIATION, INC.                                Case No. 1:25-bk-11000
                                                                              Chapter 11

Dated:        December 17, 2025

*/s/Richard J. Land*
Richard J. Land (5592)
Andre S. Digou (8711)
**CHACE RUTTENBERG & FREEDMAN, LLP**
One Park Row, Suite 300
Providence, RI 02903
Telephone: (401) 453-6400
Email:  rland@crfllp.com
            adigou@crfllp.com

*Proposed Counsel to Debtor and Debtor in Possession*

- and -

Daniel M. Eliades (*pro hac vice* pending)
Peter J. D'Auria (*pro hac vice* pending)
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Email: daniel.eliades@klgates.com
            peter.dauria@klgates.com

- and -

Keith J. McCarthy
**K&L GATES LLP**
1 Congress St. Suite 2900
Boston, MA 02114
Telephone: (617) 261-3100
Email:  keith.mccarthy@klgates.com

- and -

Jonathan N. Edel (*pro hac vice* pending)
**K&L GATES LLP**
300 South Tryon St., Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400

*Proposed Special Counsel to Debtor*
*and Debtor in Possession*

NEWPORT OVERLOOK ASSOCIATION, INC.                    Case No. 1:25-bk-11000
                                                                        Chapter 11

## **EXHIBIT A**

**(Proposed Order)**

1604175989.3

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,<br><br>              Debtor. | Chapter 11<br><br>Case No.: 1:25-bk-11000 |

## ORDER GRANTING DEBTOR'S MOTION FOR EMERGENCY DETERMINATION FOR AUTHORITY TO (I) CONTINUE TO ADMINISTER INSURANCE POLICIES AND RELATED AGREEMENTS; (II) HONOR CERTAIN OBLIGATIONS IN RESPECT THEREOF; AND (III) FOR RELATED RELIEF

**THIS MATTER** came before the Court for hearing (the "Hearing") on _____, upon Debtor's *Motion for Emergency Determination for Authority to (I) Continue to Administer Insurance Policies and Related Agreements; (II) Honor Certain Obligations in Respect Thereof; and (III) for Related Relief* (Doc. No. __) (the "Motion")[1] filed by Newport Overlook Association, Inc. ("Debtor"). Having considered the Motion and the representations in the First Day Declaration, together with the representations of the parties in interest at the Hearing, and for the reasons stated in open court at the Hearing, the Court finds good cause exists to grant the relief sought in the Motion. Accordingly, it is

**ORDERED:**

1. The Motion (Doc. No. ___) is **GRANTED**.

2. Debtor is authorized, but not directed, to pay, in the ordinary course of business as such obligations become due, all Insurance Obligations (including amounts owed to the Insurance Broker) arising under or relating to the Insurance Policies and Programs, including any new

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

3.      Insurance Policies and Programs, without regard to whether such Insurance Policies and Programs are listed in **Exhibit B** to the Motion, and without regard to whether accruing or relating to the period before or after the Petition Date.

4.      Debtor is further authorized, but not directed, to maintain its Insurance Policies and Programs in accordance with practices and procedures that were in effect before the commencement of the Chapter 11 Case.

5.      Debtor is further authorized, but not directed, to maintain, renew, revise, extend, rollover, modify, supplement, increase, purchase or replace, or obtain new Insurance Policies, and to take any and all similar appropriate actions in connection therewith, in the ordinary course of business, and to procure tail coverage, in furtherance of protecting the property of Debtor's estate.

6.      Each of the Banks at which Debtor maintains its accounts are authorized to (a) receive, process, honor, and pay all checks presented for payment and all fund transfer requests as directed by Debtor on account of the relief granted herein, to the extent that sufficient funds are on deposit in those accounts, whether such checks were presented or fund transfers were submitted before, on or after the Petition Date, and (b) accept and rely on Debtor's designation of any particular check or electronic payment request as appropriate pursuant to the Motion without any duty of further inquiry and without liability for following Debtor's instructions.

7.      Debtor is authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Insurance Obligations, as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Chapter 11 Case.

8.      Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be deemed as (a) an implication or

9.      admission as to the validity of any claim against Debtor; (b) a waiver of Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of any claim; (c) a waiver of  Debtor's or any party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) an agreement or obligation to pay any claims; (f) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (g) an admission as to the validity of any liens satisfied pursuant to the Motion; or (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

10.      Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

11.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

12.      Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

13.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.      Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

15.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# # #

Counsel is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this Order.

NEWPORT OVERLOOK ASSOCIATION, INC.

Case No. 1:25-bk-11000
Chapter 11

## EXHIBIT B

## (Insurance Policies and Programs)[1]

| TYPE OF POLICY COVERAGE | INSURANCE CARRIER(S) | POLICY NUMBER | POLICY TERM |
|---|---|---|---|
| Commercial Property, General Liability, Umbrella Liability[2] | Starr Indemnity& Liability Company<br><br>Starr Surplus Lines Insurance Company<br><br>Lloyds of London<br><br>AIG Specialty Insurance Company | 1000100131251<br>1000100145251<br>1000198193251<br>1000198194251<br>1000699969251<br>B1230AP56189A25 | 5/1/2025 – 5/1/2026 |
| Non-Profit Organization Management Liability Policy | HDI Global Specialty SE | FRL-H-P-ML-00011522-02 | 01/10/2025 – 01/10/2026 |
|  |  |  | *POLICY END DATES MAY INCLUDE EXTENSIONS |

---

[1] This table does not include the Environmental Policy, as Debtor is not a named party under the policy.

[2] Provided through T+L.