## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:

NEWPORT OVERLOOK ASSOCIATION, INC.,[1],

Debtor.

Chapter 11

Case No. 1:25-BK-11000

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF K&L GATES LLP AS BANKRUPTCY CO-COUNSEL TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE

Newport Overlook Association, Inc. ("Debtor" or "Association") hereby submits this

*Debtor's Application for Entry of an Order Authorizing and Approving the Employment and Retention of K&L Gates LLP as Bankruptcy Co-Counsel to the Debtor Effective as of the Petition Date* (this "Application"), seeking entry of an order approving the employment of the law firm K&L Gates LLP ("K&L Gates" or the "Firm"), effective as of the Petition Date (defined below), to represent Debtor as co-counsel in the above captioned bankruptcy proceeding (the "Chapter 11 Case"). In support of this Application, Debtor relies upon (i) the *Declaration of Daniel M. Eliades in Support of Debtor's Application for Entry of an Order Authorizing and Approving the Employment and Retention of K&L Gates LLP as Bankruptcy Co-Counsel to the Debtor Effective as of the Petition Date*, attached hereto as **Exhibit A** (the "Eliades Declaration"), and (ii) the *Disclosure of Compensation of Attorney for Debtor*, attached hereto as **Exhibit B** (the "Eliades 2016(b) Statement"). Also attached hereto as **Exhibit C** is a proposed form of order (the "Proposed

---

[1] The last four digits of Debtor's tax identification number are 6560. Debtor's primary place of business is 150 Bay View Drive, Jamestown, RI 02835.

Order") granting and approving this Application. In further support of this Application, Debtor respectfully states as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATES

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue of this proceeding and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Sections 327, 328, and 329 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Rhode Island (the "Local Rules").

## BACKGROUND

4.      On December 17, 2025 (the "Petition Date"), Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      For a detailed description of Debtor and its operations, Debtor respectfully refers the Court and parties in interest to the *Declaration of Amy Houle Caruso in Support of Debtor's Chapter 11 Petition and Applications for First Day Relief* [Doc. No. 11] (the "First Day Declaration").[2]

6.      Debtor is a non-profit corporation organized under the laws of the State of Rhode Island pursuant to the Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 25, 2019 as filing number 201991094030, as amended pursuant

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

to Restated Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 26, 2019 as filing number 201991196680 (collectively, the "Articles of Incorporation"). Pursuant to the Articles of Incorporation, the purposes of the Association are "*[t]o own the common areas and operate the timeshare resort known as Newport Overlook, 150 Bay View Dr., Jamestown, RI and any other purpose lawful under RI general laws.*" (First Day Declaration, ECF No. 11, ¶ 6).

7.      Debtor was originally formed pursuant to a Declaration, dated April 1, 1982, and recorded on June 16, 1982 (as amended from time to time, the "Declaration"), in Volume 78, at Page 84 et seq., in the Land Evidence Records of the Town of Jamestown, Rhode Island (the "Land Records Office"). (First Day Declaration, ECF No. 11, ¶ 10). The Declaration established a condominium form of ownership for the property owned thereby, which was then submitted to an interval or timeshare form of ownership pursuant to that certain Interval Ownership Plan Declaration of Covenants and Restrictions, dated and recorded March 21, 1983, in Volume 79 at Page 677 in the Land Records Office (as amended, the "Interval Declaration"). (First Day Declaration, ECF No. 11, ¶ 12).

8.      The By-laws of the Association (the "By-laws") provide that the Association was formed to generally promote the welfare of its members; to provide a forum for the exchange of ideas relative to policies; to promote and operate in accordance with the plan of Interval Ownership (defined below) as set forth in the Interval Declaration; and to do all acts and things necessary or appropriate to the ordinary and necessary operation and maintenance of the property governed by the Association (the "Property"). (First Day Declaration, ECF No. 11, ¶ 7).

9.      The Property governed by the Association is located at 150 Bay Drive, Jamestown, Rhode Island and is commonly known as *Newport Overlook*. The Property consists of 3 buildings

containing a total of 19 two-bedroom units (the "Units") and their concomitant common areas, including a pool. (First Day Declaration, ECF No. 11, ¶ 17). Each Unit consists of 52 interval weeks (each an "Interval" and collectively the "Intervals"), so there is a total of 988 Intervals at the Property. Owners of Interval are members in the Association (the "Association Members"). (First Day Declaration, ECF No. 11, ¶¶ 17, 22). Pursuant to the Interval Declaration, the Association Members own each of their Intervals (as well as a concomitant share of the common areas) as tenants in common with all other Association Members. (First Day Declaration, ECF No. 11, ¶ 13).

10.    Debtor owns 19 Intervals at the Property and a concomitant share of the common elements at the Property (the "Association Interest"). The Association Interest comprises 1.92% of the total Intervals at the Property. Debtor is a tenant in common with all other interval owners. (First Day Declaration, ECF No. 11, ¶ 25).

11.    PTVO Owners Association, Inc. ("PTVO") owns 241 Intervals at the Property, which is 24.39% of the total Intervals. WorldMark, the Club owns 231 Intervals at the Property, which is approximately 23.38% of the total Intervals. Eastern Resorts Company, LLC ("ERC") owns 102 Intervals at the Property, which is 10.32% of the total Intervals. (First Day Declaration, ECF No. 11, ¶¶ 26-28). The remaining 395 intervals (39.98% of the total Intervals) are owned by parties to corresponding contracts ("Interval Owners"), with each interval having its own separate corresponding contract. (First Day Declaration, ECF No. 11, ¶ 29).

12.    Vacation Resort Management, Inc. f/k/a Wyndham Vacation Management, Inc. (the "Property Manager") provides management services to the Property for Debtor, pursuant to that certain Amended & Restated Management Agreement between the Property Manager and

Debtor and Taylors Point Condominium Association, dated as of June 10, 2016 (the "Management Agreement"). (First Day Declaration, ECF No. 11, ¶ ¶ 40-41).[3]

13.     The Debtor is operating its business and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## RELIEF REQUESTED

14.     By this Application, Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit C**, pursuant to Section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, authorizing Debtor to employ and retain K&L Gates as co-counsel in connection with filing and prosecution of this Chapter 11 Case. The Debtor seeks to retain K&L Gates, effective as of December 17, 2025, because K&L Gates began providing services to the Debtor in the Chapter 11 Case as of such date.

15.     Debtor believes that it is in the best interest of its estate to retain K&L Gates as co-counsel in this Chapter 11 Case. Debtor understands that the attorneys at K&L Gates engaged in this matter are authorized to practice in this Court, have or will seek admission pro hac vice, and are qualified to advise Debtor on its relations with, and responsibilities to, the creditors and other interested parties in the Chapter 11 Case.

## K&L GATES'S QUALIFICATIONS

16.     Debtor seeks to retain K&L Gates as its co-counsel in light of the Firm's extensive knowledge, expertise, and experience in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. K&L Gates is well qualified to serve as Debtor's co-counsel in this Chapter 11 Case. K&L Gates is a global law firm with a national and international practice and has substantial experience in virtually all aspects of the law that may

---

[3] Upon information and belief, the Property Manager is an affiliate of WVR (defined below) and ERC.

potentially arise in connection with the Chapter 11 Case, including bankruptcy, not-for-profit

corporations, finance, litigation, real estate, and transactional matters (including mergers and

acquisitions). In addition, K&L Gates professionals have significant experience in representing

developers, associations, and other parties in restructuring and/or the sale of timeshare resorts,

including in bankruptcy cases.[4] K&L Gates's restructuring and insolvency practice group consists

of dozens of attorneys practicing in offices throughout the United States and overseas.

17.    Prior to the Petition Date, K&L Gates represented the Association regarding

litigations and other matters related to a certain Inventory Foreclosure Agreement. Specifically,

Wyndham Vacation Resorts, Inc. ("WVR")[5] and the Association are parties to an Inventory

Foreclosure Agreement dated December 2, 2010, which was amended by a First Amendment to

Inventory Foreclosure Agreement effective April 17, 2015 (the "IFA"). (First Day Declaration,

ECF No. 11, ¶ ¶ 35-38). The IFA reflects an agreement between the Association and WVR

regarding foreclosure proceedings against "Delinquent Owners" (as defined in the IFA). K&L

Gates represented the Association as plaintiff in judicial foreclosures against Delinquent Owners

as contemplated under the IFA. The IFA provides for the assignment by the Association and

---

[4] Upon information and belief, apart from this matter, K&L Gates is proposed or approved counsel for associations that govern timeshare properties in the following pending chapter 11 cases: (i) *Orlando International Resort Club Condominium Association, Inc.*, Case No. 25-06813 (GER) (Bankr. M.D. Fla.); (ii) *Star Island Vacation Ownership Association, Inc.*, Case No. 25-07207 (GER) (Bankr. M.D. Fla.); (iii) *Association of Apartment Owners of Kauai Beach Villas*, Case No. 25-01103 (RJF) (Bankr. Haw.); (iv) *Maple Ridge Property Owners Association, Inc.*, Case No. 25-40271 (AAE) (Bankr. W.D.N.C.); (v) *The Fairfield Williamsburg Property Owners Association, Inc.*, Case No. 25-51179 (SCS) (Bankr. E.D. Va.); (vi) *Skyline Tower Resort Vacation Condominium Association, Inc,* Case No 25-22156 (ABA) (Bankr. D.N.J.); and (vii) *The Falls Condominium Property Owners Association, Inc.*, Case No. 25-60870 (BTF) (Bankr. W.D. Mo.). The Debtor is not an affiliate of any of the debtors in the foregoing matters, as defined in Section 101(2) of the Bankruptcy Code.

[5] Upon information and belief, WVR is an affiliate of ERC and the Property Manager. Upon information and belief, WVR, ERC and the Property Manager are indirect subsidiaries of Travel + Leisure Co.

purchase by WVR of "Delinquent Inventory" (as defined in the IFA) by way of foreclosure proceedings, deed in lieu of foreclosures and similar take-back proceedings. Pursuant to the IFA, WVR paid the legal fees and the costs of such foreclosures, deeds in lieu of foreclosures and similar take-back proceedings. In exchange, title to the Delinquent Inventory was conveyed to WVR or its designee, ERC – which became obligated to pay going forward maintenance fees and special assessments to the Association on the subject Intervals. The Association retained the right to collect the outstanding maintenance fees and special assessments which accrued prior to the foreclosure of the subject Intervals from the Delinquent Owners. Such receivables are property of the bankruptcy estate. K&L Gates represented the Association in connection with the assignment of Delinquent Inventory to WVR (or its designee ERC) pursuant to the IFA, including recording deeds to Delinquent Inventory in the name of ERC. K&L Gates last provided such services in August of 2024. The Association has discontinued foreclosures, deeds in lieu of foreclosures and similar take-back proceeding.[6]

18.    K&L Gates was further engaged to represent the Association in September 2025 and as bankruptcy counsel in December 2025. In connection with such representation, K&L Gates has gained significant knowledge about the Association, its history, capital structure, governance, business operations, financial condition, the Property, and related matters. K&L Gates's professionals have worked closely with Debtor's Board of Directors, management and other professionals regarding, among other things, governance and financial matters, a pre-petition request to the Board for a special membership meeting of Association Members, the notice of a

---

[6] "In light of the bankruptcy filing, the Association intends to defer instituting new foreclosure actions, without prejudice to the right of the Association to continue or commence collection and/or foreclosure action against Delinquent Owners and without waiver of any rights or remedies of the Association" First Day Declaration at ¶38.

special meeting issued to all Association Members, and the special membership meeting (which K&L Gates attended and provided a presentation to Association Members). Due to the prior work performed by K&L Gates on behalf of Debtor as well as in preparing for the Chapter 11 Case, K&L Gates has become familiar with Debtor's business and affairs and many of the potential legal issues that may arise in the context of the Chapter 11 Case. K&L Gates's knowledge regarding Debtor and its management team will result in effective and efficient services in the Chapter 11 Case.

19.     It is the business judgment of the Debtor that continued employment of K&L Gates is in the best interests of Debtor and its estate. Debtor's business judgment is supported by a vote of a majority of the Association Members. As noted in the First Day Declaration, a special meeting of Association Members occurred on October 13, 2025 (the "Membership Meeting"). (First Day Declaration, ECF No. 11, ¶¶48-49). Among other things, the notice of the Membership Meeting sent to all Association Members advised that the Association had retained K&L Gates and disclosed K&L Gates connections to the Association and Travel + Leisure Co. and certain of its subsidiaries including WVR. At the Membership Meeting, with 988 voting interests available and 690 (or 69.84%) of the voting interests represented in person or by proxy, 95.80% of the voting interests present at the Membership Meeting, in person or by proxy, authorized the Debtor's Board of Directors to employ K&L Gates as bankruptcy counsel for the Debtor.

20.     Debtor has reviewed the Firm's hourly rates and has determined that K&L Gates's rates are reasonable. K&L Gates further informed Debtor that the Firm operates in both national and regional marketplaces for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialty, the Firm's expertise, performance, and reputation, the nature of the work involved, as well as other factors. The hourly rates K&L Gates

charged Debtor prior to the Petition Date are the same as the rates K&L Gates has indicated it will

charge Debtor post-petition. K&L Gates has informed Debtor (and discloses herein) that the Firm's

hourly rates are subject to periodic adjustments to reflect economic and other conditions.

21.     Debtor supervises all legal fees and expenses in order to reasonably manage costs.

Debtor recognizes that it is its responsibility to closely monitor the billing practices of its counsel

to ensure that the fees and expenses paid by Debtor's estate remain consistent with Debtor's

expectations and the exigencies of the Chapter 11 Case. As it did pre-petition, Debtor will continue

to review and monitor professional fees and expense reimbursement requests for reasonableness.

22.     In sum, Debtor believes that K&L Gates is both well-qualified and uniquely able

to represent it in an efficient and timely manner, and that the services of K&L Gates are necessary

and essential to Debtor's performance of its duties as debtor in possession.

## SERVICES TO BE PROVIDED

23.     Debtor seeks to retain K&L Gates to render general legal services as its bankruptcy

co-counsel throughout its Chapter 11 Case. Among other things, K&L Gates has and would

provide services to the Debtor and its estate including, but not limited to, services in connection

with (i) governance of the Association; (ii) the marketing, bidding and sale procedures for the

Property, and matters relating thereto; (iii) efforts to obtain judgment(s) against Association

Members (by consent or otherwise) authorizing the sale of Debtor's undivided interest in the

Property, jointly with the sale of the interests of the Association Members, pursuant to 11 U.S.C.

§363(h) and/or other applicable provisions of the Bankruptcy Code, and matters relating thereto;

(iv) seeking Bankruptcy Court authorization to sell the Property free and clear of the interests of

all Association Members, liens and encumbrances, with such interests to attach to the proceeds of

sale, subject to distribution by Bankruptcy Court order in accordance with 11 U.S.C. §§363(b), (f),

(h), (i), and (j) and/or other applicable provisions of the Bankruptcy Code, and matters relating thereto; (v) closing the sale of the Property, and matters relating thereto, including but not limited to termination or amendment of the timeshare plan for the Property effective at or prior to closing of the sale; (vi) the process to obtain Bankruptcy Court authorization to distribute net sale proceeds (after costs of administration and sale) as well as all remaining property, cash and reserves of the Association; (vii) consulting with the Board and other professionals retained by the Debtor regarding preparation and prosecution of a plan of liquidation for the Debtor, preparation of a plan, and pursuit of confirmation thereof; (viii) dissolution of the Association following sale and distribution pursuant to a confirmed plan of liquidation or other Bankruptcy Court order; and/or (ix) communicating with the Bankruptcy Court, United States Trustee, sub-chapter V trustee, professional engaged by Debtor, the Board, Association Members, and other parties in interest regarding all or some of the above.

24.    K&L Gates will also provide the following services to Debtor in the Chapter 11 Case, which list is not exhaustive:

> (i)    advising Debtor with respect to its rights, powers, and duties as debtor-in-possession in the continued management and operation of its business and assets, as well as management of the Property;

> (ii)    advising the Debtor with respect to the conduct of the Chapter 11 Case, including all legal and administrative requirements imposed by the Bankruptcy Code and Bankruptcy Rules;

> (iii)    taking all necessary actions to protect and preserve Debtor's estate, including the prosecution of actions on Debtor's behalf, the defense of any actions commenced against Debtor, the negotiation of disputes in which Debtor is involved,

and the preparation of objections to claims filed against Debtor's estate;

(iv)     preparing on behalf of Debtor all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of Debtor's estate;

(v)     taking all necessary actions in connection with any chapter 11 plan and related disclosure statement and all related documents, and such further actions as may be required in connection with the administration of Debtor's estate;

(vi)     appearing before the Court and any other courts to represent the interests of Debtor's estate;

(vii)     attending meetings and representing Debtor in negotiations with representatives of creditors and other parties-in-interest;

(viii)     negotiating and preparing documents and pleadings relating to the disposition of assets as requested by Debtor, including in connection with the marketing and sale of Debtor's interest in the Property together with the interests of all Association Members in the Property;

(ix)     advising Debtor on transactions and matters relating to any sale of Debtor's assets, including the Association Interest together with the interests of all Association Members in the Property; and

(x)     performing such other legal services for Debtor as may be necessary and appropriate in the administration of these Chapter 11 Case, including: (i) analyzing Debtor's leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against Debtor's assets; and (iii) advising Debtors on corporate matters and governance issues.

25.     By separate applications, Debtor has asked or intends to ask the Court to approve the retention of (a) Omni Agent Solutions, Inc ("Omni"). as its notice, claims and solicitation agent, (b) Hilco Real Estate, LLC ("Hilco") as its real estate broker and adviser, and (c) Chace Ruttenberg & Freedman, LLC ("Chace Ruttenberg") as co-counsel and conflicts counsel to Debtor. Debtor may also file motions or applications to employ additional professionals in the future and may also seek authority to retain certain ordinary course professionals as well.

26.     Each of the firms listed above works, and will continue to work, under the direction of the Board of Directors of the Debor and its management company. Debtor's directors and management are committed to minimizing duplication of services to reduce professional costs. Debtor understands that K&L Gates and its other professionals will coordinate with Debtor and each other to ensure that there is no unnecessary duplication of effort or cost.

## PROFESSIONAL COMPENSATION

27.     Debtor understands that, subject to the Court's approval, K&L Gates will be compensated at its proposed hourly rates, which are based on the professionals' level of experience. Debtor further understands that K&L Gates will seek Court approval of its compensation and reimbursement of its actual, necessary, and reasonable expenses, and other charges incurred by the Firm in connection with the Chapter 11 Case, upon the filing of appropriate applications for interim and final compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The principal attorneys and paralegals presently designated to represent Debtor, and their current hourly rates in the Chapter 11 Case, are:

| Name | Title | Hourly Rate |
|---|---|---|
| Daniel M. Eliades | Partner | $765.00 |
| Brandy Sargent | Partner | $670.00 |
| William Waldman | Partner | $760.00 |

| Name | Title | Hourly Rate |
|---|---|---|
| Emily Steele | Partner | $760.00 |
| Peter J. D'Auria | Counsel | $760.00 |
| Jennifer Mazawey | Partner | $715.00 |
| Jonathan N. Edel | Partner | $685.00 |
| Keith McCarthy | Associate | $695.00 |
| Carly Everhardt | Associate | $635.00 |
| Peter Galati | Associate | $500.00 |
| Ryan W. DeSimone | Associate | $485.00 |
| Eileen Welsh | Paralegal | $360.00 |
| Joy M. VanDerWeert | Paralegal | $360.00 |
| Kyra Swinney-Darby | Paralegal | $360.00 |

28.     The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.[7] It is Debtor's understanding that these rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

29.     Other attorneys and paralegals from K&L Gates may from time to time also serve Debtor in connection with the matters described herein. Debtor understands that K&L Gates will apprise and consult with Debtor regarding the identity and hourly rates of additional K&L Gates professionals who may provide services in the Chapter 11 Case.

30.     It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients, including Debtor, include, among other things, (a) copies, (b) outside printing, (c) telephone, (d) facsimile, (e) online research, (f) delivery services/couriers, (g) postage, (h) local travel, (i) out-of-town travel (including subcategories for transportation, hotel, meals, and ground transportation),(j) working meals (local), (k) court fees, (l) subpoena fees, (m) witness fees, (n) deposition transcripts, (o) trial transcripts, (p) trial exhibits, (q) litigation support vendors,

---

[7] Generally, the Firm implements rate increases in January of each year.

(r) experts, (s) investigators, and (t) arbitrators/mediators. The Firm will charge Debtor for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. It is Debtor's understanding that the Firm believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

31.     It is Debtor's understanding that K&L Gates will submit detailed statements to the Court setting forth the services rendered and seeking compensation and reimbursement of expenses (including, when appropriate, authority to apply the Retainer (defined below)).

32.     As set forth in the Eliades Declaration, K&L Gates has not shared nor agreed to share any of its compensation from Debtor with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## **PRE-PETITION COMPENSATION RECEIVED FROM DEBTOR**

33.     K&L Gates was retained by Debtor to provide pre-petition services pursuant to an engagement letter dated September 4, 2025. K&L Gates was subsequently retained by Debtor to provide pre-petition and post-petition services related to the Chapter 11 Case pursuant to an engagement letter dated December 8, 2025 (the "Engagement Letter"), a copy of which is attached as **Exhibit A** to the Eliades Declaration.

34.     Prior to the commencement of the Chapter 11 Case, Debtor paid the Firm $139,820.66, $139,817.93 of which was applied to pre-petition fees and expenses. [8] Specifically, Debtor has made the following payments to K&L Gates:

---

[8] A formal disclosure pursuant to Bankruptcy Rule 2016 and Section 329 of the Bankruptcy Code is attached hereto as Exhibit B.

| Payment Date | Amount |
|---|---|
| October 16, 2025 | (14,078.50) (Payment of Invoice) |
| October 14, 2025 | $50,000.00 (Retainer) |
| December 2, 2025 | ($38,520.50) (Deducted from Retainer) |
| December 12, 2025 | $45,742.16 (Additional Retainer) |
| December 12, 2025 | $30,000.00 (Additional Retainer) |
| December 15, 2025 | ($57,221.66) (Deducted from Retainers) |
| December 17, 2025 | ($29,997.27) (Deducted from Retainers) |
| TOTAL PAID | $139,820.66 |
| TOTAL RECEIVED | $139,817.93 |
| REMAINING RETAINER | $2.73 |

35.     As noted, K&L Gates continues to hold a retainer in the amount of $2.73 (the "Retainer"), which will constitute a retainer for post-petition services and expenses in the Chapter 11 Case.

## DISINTERESTEDNESS OF PROFESSIONALS

36.     To the best of Debtor's knowledge, K&L Gates does not hold or represent an interest adverse to Debtor's estate.

37.     To the best of Debtor's knowledge, in reliance upon the disclosures made in the Eliades Declaration (which is incorporated herein by reference), K&L Gates is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm, its partners, counsel, and associates:

a.     are not creditors, equity security holders, or insiders of Debtor;

b.     are not, and were not within two years of the Petition Date, directors, officers, or employees of Debtor; and

c.     do not have an interest materially adverse to the interests of Debtor's estate or of any class of Debtor's creditors or equity security holders, by reason of any

direct or indirect relationship to, connection with, or interest in, Debtor, or for any other reason.

38.    The Eliades Declaration describes the relationships that K&L Gates has or had with creditors of Debtor and other interested parties. To the best of Debtor's knowledge, and except as disclosed herein and in the Eliades Declaration, K&L Gates has not represented Debtor, its creditors, or any other parties in-interest, or their respective attorneys, in any matter relating to Debtor or its estate.

39.    As disclosed to Debtor in each engagement letter with K&L Gates, and in the Eliades Declaration, K&L Gates has in the past represented, currently represents, and likely in the future will represent, certain parties-in-interest in the Chapter 11 Case. All such representations are or were in connection with matters unrelated to Debtor and the Chapter 11 Case.

40.    Debtor consents to concurrent representation by K&L Gates of its Current Clients (as identified in the Eliades Declaration) and of Debtor on matters that are unrelated. As noted above, Debtor is also proposing to retain Chace Ruttenberg as co-counsel and as conflicts counsel. In the event any litigation, arbitration, or other adversarial proceedings arises between Debtor and a Current Client resulting in an actual conflict of interest for K&L Gates, K&L Gates will not represent either party in any such dispute, which would be handled by Chace Ruttenberg on behalf of Debtor and independent counsel (other than K&L Gates) on behalf of the Current Client.

41.    K&L Gates has informed Debtor that the Firm will continue conducting a review of its files to ensure that no disqualifying circumstances arise. If any new relevant facts or relationships are discovered, K&L Gates will supplement its disclosure to the Court.

42.    For the above reasons, Debtor submits that K&L Gates's employment is necessary and in the best interests of Debtor and its estate.

## **AUTHORITY FOR RELIEF**

43.    Section 327(a) of the Bankruptcy Code authorizes a debtor in possession, with the

court's approval, to "employ one or more attorneys, accountants, appraisers, auctioneers, or other

professional persons, that do not hold or represent an interest adverse to the estate, and that are

disinterested persons, to represent or assist the [debtor in possession] in carrying out the [debtor in

possession's] duties under this title."  11 U.S.C. § 327(a).  Moreover, section 1107(b) elaborates

upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 by explaining

that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by

a debtor in possession solely because of such person's employment by or representation of the

debtor before the commencement of the case."  11 U.S.C. § 1107(b).

44.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> Specific facts showing the necessity for the employment, the name
> of the [firm] to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the [firm's] connections with the debtor, creditors, any other party
> in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014(a).

45.    Debtor requests approval of the employment of K&L Gates effective as of the

Petition Date. Such relief is warranted by the circumstances presented by this Chapter 11 Case.

Debtor's selection of K&L Gates as its bankruptcy co-counsel necessitated that K&L Gates

immediately commence work on time-sensitive matters and promptly devote resources to Debtor's

case pending submission and approval of this Application.

46.    Debtor submits that, for the reasons stated above, in the Eliades Declaration, and

in the Eliades 2016(b) Statement as well, the retention of K&L Gates as its bankruptcy co-counsel,

as described herein, is warranted.  Accordingly, the retention of K&L Gates as bankruptcy co-counsel to Debtor should be approved.

## NO PRIOR REQUEST

47.    No previous application for the relief requested herein has been made to this or any other court.

## NOTICE

48.    Notice of this Application has been given to the following parties: (a) the office of the United States Trustee for the District of Rhode Island; (b) the Debtor's 20 largest unsecured creditors; (c) the United States Attorney's Office for the District of Rhode Island; (e) the Internal Revenue Service; (f) the U.S. Securities and Exchange Commission; (g) the Office of the Attorneys General for Rhode Island; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, Debtor and K&L Gates respectfully request entry of an order substantially in the form attached hereto as **Exhibit C**, authorizing the Debtor to employ and retain K&L Gates as its bankruptcy co-counsel, effective as of December 17, 2025, and granting such other and further relief as is just and proper.

Dated:  January 12, 2026

Respectfully submitted,

**Newport Overlook Association, Inc.**

DocuSigned by:

*Amy Houle Caruso*

Amy Houle Caruso
President – Board of Directors

## NOTICE

Within fourteen (14) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within document was filed electronically with the above-captioned Court, and notices of electronic filing were sent to the following persons on January 14, 2026 through the electronic filing system.

- Sandra Nicholls
  ustpregion01.pr.ecf@usdoj.gov
  Sandra.Nicholls@usdoj.gov

The within document will also be sent, via first class mail, on January 14, 2026 to the following:

Internal Revenue Service
Insolvency Unit 4th Floor
380 Westminster Street
Providence, RI 02903

RI Division of Taxation
Bankruptcy Unit
Chief Collection Section
One Capitol Hill
Providence, RI 02903

State of RI - Labor and Training
Legal Department
Bldg 72 3rd Floor
1511 Pontiac Avenue
Cranston, RI 02920

## Exhibit A

(to the Application)

**Eliades Declaration**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION,<br>INC.,[1],<br><br>                              Debtor. | Chapter 11<br><br>Case No. 1:25-BK-11000 |

**DECLARATION OF DANIEL M. ELIADES IN SUPPORT OF
DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING AND APPROVING THE EMPLOYMENT AND
RETENTION OF K&L GATES LLP AS BANKRUPTCY CO-COUNSEL
TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

I, Daniel M. Eliades, Esq. pursuant to 28 U.S.C. § 1746, to the best of my knowledge and

belief, and after reasonable inquiry, declares:

      1.      I am an attorney at law and a partner in the firm of K&L Gates LLP ("K&L Gates"

or the "Firm"), with offices located at 1085 Raymond Boulevard, Newark, New Jersey.

      2.      I am duly admitted to practice law in the State of New Jersey and the State of

Washington.[2] This Court has entered an order granting my admission pro hac vice at docket

number 19.

      3.      This Declaration (the "Declaration") is submitted pursuant to sections 327, 329,

and 504 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local

---

[1] The last four digits of Debtor's tax identification number are 6560. Debtor's primary place of business is 150 Bay View Drive, Jamestown, RI 02835.

[2] I am also admitted to the following bars: United States Court of Appeals for the Third Circuit, United States District Court for the Northern District of Florida, United States District Court for the Central District of Illinois, United States District Court for the District of Colorado, United States District Court for the District of New Jersey, United States District Court for the Eastern District of Michigan, United States District Court for the Western District of Michigan, United States District Court for the Western District of Washington, and United States District Court for the Western District of Wisconsin.

Bankruptcy Rules for the United States Bankruptcy Court for the District of Rhode Island (the "Local Rules"), and in support of *Debtor's Application for Entry of an Order Authorizing the Employment and Retention of K&L Gates LLP as Bankruptcy Co-Counsel to the Debtor Effective as of the Petition Date* (the "Application").[3]

4.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge after due and appropriate inquiry, information supplied to me by other K&L Gates professionals or paraprofessionals, and/or my review of relevant documents. To the extent any information disclosed herein requires amendment or modification, as additional information becomes available to me or K&L Gates, I will submit a supplemental declaration to this Court reflecting such additional information.

## K&L GATES'S QUALIFICATIONS

5.     K&L Gates has extensive knowledge, expertise, and experience in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. K&L Gates is well qualified to serve as Debtor's co-counsel in this Chapter 11 Case. K&L Gates is a global law firm with a national and international practice and has substantial experience in virtually all aspects of the law that may potentially arise in connection with the Chapter 11 Case, including bankruptcy, not-for-profit corporations, finance, litigation, real estate, and transactional matters (including mergers and acquisitions). In addition, K&L Gates professionals have significant experience in representing developers, associations, and other parties in restructuring and/or the sale of timeshare resorts, including in bankruptcy cases.[4] K&L Gates's restructuring

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

[4] K&L Gates is proposed or approved counsel for associations that govern timeshare properties in the following pending chapter 11 cases: (i) *Orlando International Resort Club Condominium Association, Inc.*, Case No. 25-06813 (GER) (Bankr. M.D. Fla.); (ii) *Star Island Vacation Ownership Association, Inc.*, Case

and insolvency practice group consists of dozens of attorneys practicing in offices throughout the United States and overseas.

6.      Prior to the Petition Date, K&L Gates represented the Association regarding litigations and other matters related to a certain Inventory Foreclosure Agreement. Specifically, Wyndham Vacation Resorts, Inc. ("WVR")[5] and the Association are parties to an Inventory Foreclosure Agreement dated December 2, 2010, which was amended by a First Amendment to Inventory Foreclosure Agreement effective April 17, 2015 (the "IFA"). (First Day Declaration, ECF No. 11, ¶ ¶ 35-38). The IFA reflects an agreement between the Association and WVR regarding foreclosure proceedings against "Delinquent Owners" (as defined in the IFA). K&L Gates represented the Association as plaintiff in judicial foreclosures against Delinquent Owners as contemplated under the IFA. The IFA provides for the assignment by the Association and purchase by WVR of "Delinquent Inventory" (as defined in the IFA) by way of foreclosure proceedings, deed in lieu of foreclosures and similar take-back proceedings. Pursuant to the IFA, WVR paid the legal fees and the costs of such foreclosures, deeds in lieu of foreclosures and similar take-back proceedings. In exchange, title to the Delinquent Inventory was conveyed to WVR or its designee, ERC – which became obligated to pay going forward maintenance fees and special assessments to the Association on the subject Intervals. The Association retained the right to

---

No. 25-07207 (GER) (Bankr. M.D. Fla.); (iii) *Skyline Tower Resort Vacation Condominium Association, Inc.*, Case No. 25-22156 (ABA) (Bankr. N.J.); (iv) *Maple Ridge Property Owners Association, Inc.*, Case No. 25-40271 (AAE) (Bankr. W.D.N.C.); (v) *Association of Apartment Owners of Kauai Beach Villas*, Case No. 25-01103 (RJF) (Bankr. Haw.); (vi) *The Fairfield Williamsburg Property Owners Association, Inc.*, Case No. 25-51179 (SCS) (Bankr. E.D. Va.); (vii) *Newport Overlook Association, Inc.*, Case No 25-1100 (JAD) (Bankr. R.I.); and (viii) *The Falls Condominium Property Owners Association, Inc.*, Case No. 25-60870 (BTF) (Bankr. W.D. Mo.). The Debtor is not an affiliate of any of the debtors in the foregoing matters, as defined in Section 101(2) of the Bankruptcy Code.

[5] Upon information and belief, WVR is an affiliate of ERC and the Property Manager. Upon information and belief, WVR, ERC and the Property Manager are indirect subsidiaries of Travel + Leisure Co.

collect the outstanding maintenance fees and special assessments which accrued prior to the foreclosure of the subject Intervals from the Delinquent Owners. K&L Gates represented the Association in connection with the assignment of Delinquent Inventory to WVR (or its designee ERC) pursuant to the IFA, including recording deeds to Delinquent Inventory in the name of ERC. K&L Gates last provided such services in August of 2024. The Association has discontinued foreclosures, deeds in lieu of foreclosures and similar take-back proceeding.[6]

7.      K&L Gates was further engaged to represent the Association in September 2025 and as bankruptcy counsel in December 2025. In connection with such representation, K&L Gates has gained additional significant knowledge about the Association, its history, capital structure, governance, business operations, financial condition, and related matters. K&L Gates's professionals have worked closely with Debtor's Board of Directors, management and other professionals. Among other things, K&L Gates has provided guidance to the Association regarding governance matters, a pre-petition request to the Board for a special meeting of Association Members, the notice of a special meeting issued to all Association Members, and the special membership meeting of October 13, 2025 (which K&L Gates attended and provided a presentation to Association Members).

8.      As noted in the First Day Declaration, a special meeting of Association Members occurred on October 13, 2025 (the "Membership Meeting"). (First Day Declaration, ECF No. 11, ¶¶48-49). Among other things, the notice of the Membership Meeting sent to all Association Members advised that the Association had retained K&L Gates and disclosed K&L Gates

---

[6] "In light of the bankruptcy filing, the Association intends to defer instituting new foreclosure actions, without prejudice to the right of the Association to continue or commence collection and/or foreclosure action against Delinquent Owners and without waiver of any rights or remedies of the Association" First Day Declaration at ¶38.

connections to the Association and Travel + Leisure Co. and certain of its subsidiaries including WVR. At the Membership Meeting, with 988 voting interests available and 690 (or 69.84%) of the voting interests represented in person or by proxy, 95.80% of the voting interests present at the Membership Meeting, in person or by proxy, authorized the Debtor's Board of Directors to employ K&L Gates as bankruptcy counsel for the Debtor.

9.      Due to the prior work performed by K&L Gates on behalf of Debtor, as well as in preparing for the Chapter 11 Case, K&L Gates is familiar with Debtor's business and affairs and many of the potential legal issues that may arise in the Chapter 11 Case. K&L Gates's knowledge regarding Debtor and its management team will result in effective and efficient services in the Chapter 11 Case.

10.     In sum, the Firm's combination of relevant experience and expertise, together with its knowledge of Debtor and Debtor's affairs, presents K&L Gates as well-qualified and uniquely situated to represent Debtor in this proceeding in an efficient and timely manner.

## SERVICES TO BE PROVIDED

11.     Debtor seeks to retain K&L Gates to render general legal services as its bankruptcy co-counsel throughout its Chapter 11 Case. Among other things, K&L Gates has and would provide services to the Debtor and its estate including, but not limited to, services in connection with (i) governance of the Association; (ii) the marketing, bidding and sale procedures for the Property, and matters relating thereto; (iii) efforts to obtain judgment(s) against Association Members (by consent or otherwise) authorizing the sale of Debtor's undivided interest in the Property, jointly with the sale of the interests of the Association Members, pursuant to 11 U.S.C. §363(h) and/or other applicable provisions of the Bankruptcy Code, and matters relating thereto; (iv) seeking Bankruptcy Court authorization to sell the Property free and clear of the interests of

all Association Members, liens and encumbrances, with such interests to attach to the proceeds of

sale, subject to distribution by Bankruptcy Court order in accordance with 11 U.S.C. §§363(b), (f),

(h), (i), and (j) and/or other applicable provisions of the Bankruptcy Code, and matters relating

thereto; (v) closing the sale of the Property, and matters relating thereto, including but not limited

to termination or amendment of the timeshare plan for the Property effective at or prior to closing

of the sale; (vi) the process to obtain Bankruptcy Court authorization to distribute net sale proceeds

(after costs of administration and sale) as well as all remaining property, cash and reserves of the

Association; (vii) consulting with the Board and other professionals retained by the Debtor

regarding preparation and prosecution of a plan of liquidation for the Debtor, preparation of a plan,

and pursuit of confirmation thereof; (viii) dissolution of the Association following sale and

distribution pursuant to a confirmed plan of liquidation or other Bankruptcy Court order; and/or

(ix) communicating with the Bankruptcy Court, United States Trustee, sub-chapter V trustee,

professional engaged by Debtor, the Board, Association Members, and other parties in interest

regarding all or some of the above.

12.    K&L Gates will also provide the following services to Debtor in the Chapter 11

Case, which list is not exhaustive:

(i)    advising Debtor with respect to its rights, powers, and duties as debtor-in-possession in the continued management and operation of its business and assets, as well as management of the Property;

(ii)    advising Debtor with respect to the conduct of the Chapter 11 Case, including all legal and administrative requirements imposed by the Bankruptcy Code and Bankruptcy Rules;

(iii)    taking all necessary actions to protect and preserve Debtor's estate, including the prosecution of actions on Debtor's behalf, the defense of any actions commenced against Debtor, the negotiation of disputes in which Debtor is involved, and the preparation of objections to claims filed against Debtor's estate;

(iv)    preparing on behalf of Debtor all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of Debtor's estate;

(v)    taking all necessary actions in connection with any chapter 11 plan and related disclosure statement and all related documents, and such further actions as may be required in connection with the administration of Debtor's estate;

(vi)    appearing before the Court and any other courts to represent the interests of Debtor's estate;

(vii)    attending meetings and representing Debtor in negotiations with representatives of creditors and other parties-in-interest;

(viii)    negotiating and preparing documents and pleadings relating to the disposition of assets as requested by Debtor, including in connection with the marketing and sale of Debtor's interest in the Property together with the interests of all Association Members in the Property;

(ix)    advising Debtor on transactions and matters relating to any sale of Debtor's assets, including the Association Interest together with the interests of all Association Members in the Property; and

(x)    performing such other legal services for Debtor as may be necessary and appropriate in the administration of these Chapter 11 Case, including: (i) analyzing

Debtor's leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against Debtor's assets; and (iii) advising Debtors on corporate matters and governance issues.

13.    By separate applications, Debtor has asked or intends to ask the Court to approve the retention of (a) Omni Agent Solutions, Inc. as its notice, claims and solicitation agent, (b) Hilco Real Estate, LLC as its real estate broker and adviser, and (c) Chace Ruttenberg & Freedman, LLC ("Chance Ruttenberg") as co-counsel and conflicts counsel. Debtor may also file motions or applications to employ additional professionals in the future and may also seek authority to retain certain ordinary course professionals as well.

## PROFESSIONAL COMPENSATION

14.    The Firm's fees for professional services will be based upon the amount of time spent by lawyers, paralegals, and other professionals who perform services on behalf of Debtor and their respective hourly rates as then in effect. Those hourly rates vary across the Firm and take into account the timekeepers' experience in particular areas. The Firm operates in both national and regional marketplaces for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialty, the Firm's expertise, performance, and reputation, the nature of the work involved, as well as other factors. These rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

15.    K&L Gates will seek Court approval of its compensation and reimbursement of its actual, necessary, and reasonable expenses, and other charges incurred by the Firm in connection with the Chapter 11 Case, upon the filing of appropriate applications for interim and final compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules of the Bankruptcy Court. The principal attorneys and paralegals presently designated to represent Debtor, and their current hourly rates in the Chapter 11 Case are:

| Name | Title | Hourly Rate |
|------|-------|-------------|
| Daniel M. Eliades | Partner | $765.00 |
| Brandy Sargent | Partner | $670.00 |
| William Waldman | Partner | $760.00 |
| Emily Steele | Partner | $760.00 |
| Peter J. D'Auria | Counsel | $760.00 |
| Jennifer Mazawey | Partner | $715.00 |
| Jonathan N. Edel | Partner | $685.00 |
| Keith McCarthey | Associate | $695.00 |
| Carly Everhardt | Associate | $635.00 |
| Peter Galati | Associate | $500.00 |
| Ryan W. DeSimone | Associate | $485.00 |
| Eileen Welsh | Paralegal | $360.00 |
| Joy M. VanDerWeert | Paralegal | $360.00 |
| Kyra Swinney-Darby | Paralegal | $360.00 |

16.     The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.[7] Other attorneys and paralegals from K&L Gates may from time to time also serve Debtor in connection with the matters described herein. K&L Gates will apprise and consult with Debtor regarding the identity and hourly rates of additional K&L Gates professionals who may provide services in the Chapter 11 Case.

17.     It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, (a) copies, (b) outside printing, (c) telephone, (d) facsimile, (e) online research, (f) delivery services/couriers, (g) postage, (h) local travel, (i) out-of-town travel (including subcategories for transportation, hotel, meals, and ground transportation), (j) working meals (local), (k) court fees, (l) subpoena fees, (m) witness fees, (n) deposition transcripts, (o) trial

---

[7] Generally, the Firm implements rate increases in January of each year.

transcripts, (p) trial exhibits, (q) litigation support vendors, (r) experts, (s) investigators, and (t) arbitrators/mediators. The Firm will charge Debtor for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. The Firm believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

18.     The Firm will maintain detailed, contemporaneous records of time and any necessary costs and expenses incurred in connection with rendering the legal services described above and that it will be charged for all disbursements and expenses incurred in the rendition of services. K&L Gates will submit detailed statements to the Court setting forth the services rendered and seeking compensation and reimbursement of expenses (including, when appropriate, authority to apply the Retainer (defined below)).

### PRE-PETITION COMPENSATION RECEIVED FROM DEBTOR

19.     K&L Gates was retained by Debtor to provide pre-petition services pursuant to an engagement letter dated September 4, 2025. K&L Gates was subsequently retained by Debtor to provide pre-petition and post-petition services related to the Chapter 11 Case pursuant to an engagement letter dated December 8, 2025 (the "Engagement Letter"), a copy of which is attached as **Exhibit A** hereto.

20.     Prior to the commencement of the Chapter 11 Case, Debtor paid the Firm $139,820.66, $139,817.93 of which was applied to pre-petition fees and expenses. [8] Specifically, Debtor has made the following payments to K&L Gates:

---

[8] A formal disclosure pursuant to Bankruptcy Rule 2016 and Section 329 of the Bankruptcy Code is attached hereto as Exhibit B.

| Payment Date | Amount |
|---|---|
| October 16, 2025 | (14,078.50) (Payment of Invoice) |
| October 14, 2025 | $50,000.00 (Retainer) |
| December 2, 2025 | ($38,520.50) (Deducted from Retainer) |
| December 12, 2025 | $45,742.16 (Additional Retainer) |
| December 12, 2025 | $30,000.00 (Additional Retainer) |
| December 15, 2025 | ($57,221.66) (Deducted from Retainers) |
| December 17, 2025 | ($29,997.27) (Deducted from Retainers) |
| TOTAL PAID | $139,820.66 |
| TOTAL RECEIVED | $139,817.93 |
| REMAINING RETAINER | $2.73 |

21.     As noted, K&L Gates continues to hold a retainer in the amount of $2.73 (the
"Retainer"), which will constitute a retainer for post-petition services and expenses in the Chapter
11 Case.

**DISINTERESTEDNESS OF K&L GATES AND ITS PROFESSIONALS**

22.     Insofar as I have been able to ascertain through diligent inquiry, neither K&L Gates,
nor any partner or professional employee of K&L Gates hold an interest or represent any interest
adverse to the Debtor or its estate in the Chapter 11 Case.

23.     Insofar as I have been able to ascertain through diligent inquiry, except as set forth
in this Declaration, neither I, K&L Gates, nor any partner or professional employee of K&L Gates
have any connection with Debtor, its creditors, any other party-in-interest, its current attorneys or
professionals, the U.S. Trustee or any person employed in the Office of the U.S. Trustee.[9]

---

[9] I note that Peter J. D'Auria joined K&L Gates as Counsel on September 2, 2025, after terminating his
employment as a Trial Attorney in the Newark, New Jersey field office of the United States Trustee Program
on August 31, 2025.

24.     Except as set forth in this Declaration, K&L Gates is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm, its partners and professional employees:

      a.     are not creditors, equity security holders, or insiders of Debtor;

      b.     are not, and were not within two years of the Petition Date, directors, officers, or employees of Debtor; and

      c.     do not have an interest materially adverse to the interests of Debtor's estate or of any class of Debtor's creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, Debtor, or for any other reason.

25.     Neither I, K&L Gates, nor any professional employee of K&L Gates is related professionally to Debtor, its creditors, or any other party-in-interest herein or their respective attorneys or professionals. Notwithstanding the foregoing, as discussed more fully below, K&L Gates currently represents, and in the past has represented certain entities with some relation to Debtor. K&L Gates's current and/or prior representations of these parties have been in matters unrelated to Debtor or the Chapter 11 Case. K&L Gates has not represented, and will not represent, any such parties in connection with any matter in this Chapter 11 Case during the pendency of the case. I do not believe that K&L Gates's current or prior representation of these parties precludes K&L Gates from meeting the disinterestedness standard under the Bankruptcy Code.

26.     In preparing this Declaration, I used a set of procedures developed by K&L Gates to ensure full compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor in possession (the "Retention Procedures"). Pursuant to the Retention Procedures, and under my direction and

supervision, K&L Gates performed a conflict of interest search to identify any actual or potential

conflicts of interest. The Retention Procedures included:

    a.  Through conversations with Debtor, and review of information provided by Debtor to K&L Gates, a list of the following entities was developed: (i) Rhode Island Bankruptcy Judges; (ii) Office of the U.S. Trustee staff; (iii) governmental and taxing authorities, (iv) vendors, creditors, parties to contracts, and other interested parties, (v) property management entities, (vi) professionals, (vii) members of the Debtor's board of directors, and (v) Debtor's owners and Association Members; these parties are listed on the attached **Schedule 1** (collectively, the "Entity List").

    b.  K&L Gates maintains a database of current and former clients and related information (the "Database"). K&L Gates searched the Database for the parties listed on the Entity List and compiled a list of those entities for which K&L Gates attorney fees were billed during the past two years, which is set forth on the attached **Schedule 2** (the "Client List").

    c.  Based on the results of that search and by making general and, when applicable, specific inquiries of K&L Gates personnel, insofar as I have been able to ascertain after diligent inquiry, neither I, nor K&L Gates, nor any partner, counsel, or associate thereof have any connection with, or have an adverse interest to, the parties on the Entity List except as set forth on the Client List or disclosed in this Declaration.

    27.    As outlined in the Application, ERC owns approximately 10.32% of the total

Intervals at the Property and is an Association Member. ERC is not a Current Client of K&L Gates.

    28.    Vacation Resort Management, Inc. f/k/a Wyndham Vacation Management, Inc. is

Debtor's Property Manager. The Property Manager is not a Current Client of K&L Gates.

    29.    K&L Gates provided pre-petition services under the IFA in connection with the

assignment of Delinquent Inventory to WVR, or its designee ERC. Pursuant to the IFA, WVR paid

K&L Gates fees for services to the Association related to foreclosures, deeds in lieu of foreclosures

and similar take-back proceedings. K&L Gates last provided such services in August of 2024.

Upon information and belief, WVR is not a creditor of the Debtor or an Association Member.

WVR is a Current Client of K&L Gates as K&L Gates represents WVR in matters unrelated to

Debtor or the Chapter 11 Case. K&L Gates does not represent and will not represent WVR in matters directly related to Debtor or the Chapter 11 Case. K&L Gates's representation of WVR generated one tenth of one percent (.1%) or less of the Firm's revenue for each of the calendar years 2021, 2022, 2023, and 2024. There was no significant change in 2025.

30.     Upon information and belief, ERC and Property Manager are both affiliates of WVR and are each indirect subsidiaries of Travel + Leisure Co. Travel + Leisure Co. is not a creditor of Debtor or an Association Member. Travel + Leisure Co. and certain of its subsidiaries other than ERC and Property Manager (collectively, "T+L") is a Current Client of K&L Gates. K&L Gates's representation of T+L involves matters unrelated to Debtor or the Chapter 11 Case. K&L Gates does not represent and will not represent T+L in matters directly related to Debtor or the Chapter 11 Case. K&L Gates's representation of T+L (including WVR) generated one tenth of one percent (.1%) or less of the Firm's revenue for each of the calendar years 2021, 2022, 2023, and 2024. There was no significant change in 2025.

31.     K&L Gates has represented, currently represents, and may in the future represent entities on the Client List (or their affiliates) in matters unrelated to Debtor's Chapter 11 Case. The Client List reflects that an entity is a "Current Client" if K&L Gates has any open matters for such entity or a known affiliate of such entity and attorney time charges have been recorded on any such matters within the past two (2) years. The Client List reflects that an entity is a "Former Client" if K&L Gates represented such entity or a known affiliate of such entity within the past two years based on recorded attorney time charges on a matter and such matter has been formally closed.

32.     K&L Gates does not represent and will not represent any entities on the Client List in matters directly related to Debtor or the Chapter 11 Case. K&L Gates's representation of the

parties on the Client List, excluding T+L and the Banks, in the aggregate generated less than one percent (1%) of the Firm's revenue for calendar year 2024.

33.     Debtor has consented to concurrent representation by K&L Gates of its Current Clients (including WVR and T+L) and of Debtor on matters that are unrelated to Debtor or the Chapter 11 Case. Debtor is also proposing to retain Chance Ruttenberg as co-counsel and as conflicts counsel in the Chapter 11 Case. In the event any litigation, arbitration, or other adversarial proceedings arise between Debtor and a Current Client (including WVR and T+L) resulting in an actual conflict of interest for K&L Gates, K&L Gates will not represent either party in any such dispute, which would be handled by Chance Ruttenberg on behalf of Debtor and independent counsel (other than K&L Gates) on behalf of the Current Client.

34.     Despite the efforts described above to identify and disclose K&L Gates's connections with the Entity List, because Debtor has numerous relationships, K&L Gates is unable to state with certainty that every client representation or other connection has been disclosed. If K&L Gates discovers additional information that requires disclosure, K&L Gates will file supplemental disclosure(s) with the Court as promptly as possible. To be clear, K&L Gates's review of its connection with the Entity List is ongoing and K&L Gates intends to supplement this Declaration as needed.

35.     To the best of my knowledge, K&L Gates has not been retained to assist any entity or person other than Debtor on matters relating to, or in connection with, this case. If this Court approves the proposed employment of K&L Gates as co-counsel to Debtor, K&L Gates will not accept any engagement or perform any services in this case for any entity or person other than Debtor. K&L Gates may, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of Debtor

or parties-in-interest in this case; provided, however, that such services do not and will not relate to, or have any direct connection with, this case.

36.  Thus, pursuant to section 327(a) of the Bankruptcy Code, K&L Gates does not hold or represent any interests adverse to Debtor, its creditors, or its estate. K&L Gates also is a disinterested person within the meaning of section 101(14) of the Bankruptcy Code.

37.  No promises have been received by K&L Gates nor any partner or associate thereof as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

38.  Pursuant to section 504 of the Bankruptcy Code, no agreement or understanding exists between K&L Gates and any other person to share any compensation or reimbursement of expenses to be paid to K&L Gates in these proceedings.

39.  The proposed engagement of K&L Gates is not prohibited by Bankruptcy Rule 5002.

40.  K&L Gates will abide by the terms of any orders entered in this case governing the compensation and reimbursement of professionals for services rendered and charges and disbursements incurred.

41.  By reason of the foregoing, I believe K&L Gates is eligible for employment and retention by Debtor pursuant to section 327(a) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  January 12, 2026

By: */s/ Daniel M. Eliades*
Daniel M. Eliades, Esq.

## Exhibit A

(to the Eliades Declaration)

### Engagement Letter



December 8, 2025

Daniel Eliades
Daniel.Eliades@klgates.com

T +1 973 848 4018

Newport Overlook Association, Inc.
150 C Bay View Drive
Jamestown, Rhode Island 02835
Attn: Board of Directors

**Re: Confirmation of Engagement – Chapter 11 Bankruptcy**

Dear Board Members:

Thank you for asking K&L Gates LLP ("K&L Gates", the "Firm", "we" or "us" as the context requires) to represent the Newport Overlook Association, Inc. (the "Client", "Association" or "you" as the context requires) as a debtor in a chapter 11 bankruptcy proceeding. Specifically, the Association proposes to engage the Firm as special counsel in its bankruptcy case, for specified special purposes as the Association and Firm may agree, pursuant to 11 U.S.C. § 327(e). We welcome this opportunity and look forward to working with you on this engagement.

I enclose our Terms of Engagement for Legal Services (the "Terms") which supplement this letter and include additional information regarding our legal services, our relations with our clients, our billing and payment arrangements, potential conflicts, and other matters. These Terms will apply to this engagement, except as the Association and the Firm may otherwise expressly agree and except as otherwise provided by the Bankruptcy Court (defined below), the United States Bankruptcy Code (the "Code") and/or the Federal Rules of Bankruptcy Procedure (the "Rules").

Please review this letter and the Terms carefully. If they are not consistent with your understanding of our engagement in any respect or if you have any questions concerning the nature and terms of our engagement, please contact me as soon as possible so that we can promptly address your concerns.

<u>**The Scope of Our Engagement**</u>

The Firm is engaged to act as counsel solely for the Association and not for any affiliated entity (including parents and subsidiaries), shareholder, partner, member, manager, director, officer or employee not specifically identified herein. The Association has retained the Firm to represent the Association for specified special purposes as a debtor in a chapter 11 bankruptcy proceeding (a "Bankruptcy Case") to be filed in the United States Bankruptcy Court (the "Bankruptcy Court"). If the Association files a Bankruptcy Case, the Firm's ongoing employment by Client will be subject to the approval of the Bankruptcy Court. In such event, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as counsel.

The Association agrees that we are authorized to take instruction in this matter from its Board of Directors and any officer of the Association. The Association also agrees that we are authorized to communicate and exchange information and documents with any management company, legal counsel, accountant, financial advisor, restructuring advisor, broker or notice agent engaged by the Association regarding the Association and/or to assist the Firm in carrying out this engagement.

K&L Gates will only provide legal services. We have not been retained, and expressly disclaim any obligation, to provide business or investment advice.

More specifically, the scope of K&L Gates' engagement will be limited as follows:

1.      In connection with our work for the Association, K&L Gates will be representing only the Association itself. We will not be representing any of the individuals who are officers or members of the Association.

2.      In the course of our work for the Association, we will establish an attorney-client relationship solely with the Association. Unless approved by the Association, the Firm will not establish an attorney-client relationship with any of the members of the Association and will not receive confidential information from them other than information specifically related to our representation of the Association.

3.      The Association understands that K&L Gates may currently represent, and may represent from time to time in the future, various persons and entities that are adverse to members of the Association, including adversity in litigation, enforcement actions, commercial transactions, and other matters. The Association agrees that K&L Gates' representation of the Association will not adversely affect K&L Gates' ability to represent clients who currently are, or who in the future may be, adverse to the members of the Association, and that K&L Gates' representation of the Association will not be asserted to constitute a conflict that would preclude or otherwise limit K&L Gates' ability to represent such clients.

## Our Charges

Our statements for professional services will be substantially based upon the amount of time spent by lawyers, paralegals, and other professionals who perform services on your behalf and their respective hourly rates as then in effect. Those hourly rates vary by office across the Firm, take into account the timekeepers' experience in particular areas, and are adjusted periodically. Our charges for fees, disbursements, and other charges and the basis for our invoices are addressed in more detail in the enclosed Terms.

In connection with this matter, the Firm requires payment of any outstanding amount due to the Firm prior to filing a Bankruptcy Case. The Firm also requires a $30,000 advance fee deposit retainer (the "Deposit") prior to filing a Bankruptcy Case. The Deposit will be applied against any outstanding amount due to the Firm prior to filing a Bankruptcy Case and the balance of the

2

Deposit will be applied to future fees and costs as may be awarded to the Firm by the Bankruptcy Court. If applicable, the unused balance of any advance fee deposit previously paid by the Association to the Firm will be added to the Deposit. The Deposit is a deposit and not a fixed fee arrangement.  Please refer to the enclosed Terms for more detail concerning advance payments.

## Our Billing and Payment Arrangements

We will generally render statements for professional services and related charges on a monthly basis consistent with applicable provisions of the Code, the Rules and/or order of the Bankruptcy Court. Payment is due upon the earlier of the time provided for in the Code, the Rules, or Bankruptcy Court order, as applicable, without regard to the consummation or outcome of the matter for which we have been engaged.

In the event our statements are not timely paid, we reserve the right, subject to Bankruptcy Court approval, to suspend our services until satisfactory payment arrangements are made or to terminate our services if such arrangements are not made and if such termination is otherwise appropriate.  The Association may, of course, terminate our services at any time, subject to Bankruptcy Court approval.

## Our Staffing of Your Engagement and Communications with You

I will be your principal contact with respect to the Firm's representation of the Association.  My current hourly rate for this matter is $765. We will notify you of any increase in hourly rates of Firm professionals.

Our representation of the Association will be staffed by other partners, associates and other professional staff as may be appropriate under the circumstances.  We will keep you apprised of significant developments in the course of our engagement, to consult with you about our work on an ongoing basis and to obtain your direction on critical issues.

You should contact me with any questions you may have about our work or any other aspect of our representation of the Association.  You can reach me at the office (973) 848-4018 or on my mobile telephone (201) 741-7409 at your convenience.

## Conflicts of Interest

We have searched the Firm's conflicts database and have disclosed to you any ethical conflicts of interest, as defined by the applicable rules of professional conduct, that existed at the time. Such conflicts, if any, have been resolved to your and to our satisfaction.

If the Association files a Bankruptcy Case, the Firm will prepare a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule").  The Firm will give Client a draft of the Disclosure Schedule once it is available.  Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the Bankruptcy Court to retain the Firm. To the extent any

3

December 8, 2025

actual conflict were to arise with any interested party listed on the Disclosure Schedule, the Firm will not represent either you or the other party in the matter, and Conflicts Counsel (defined below) will represent your interests.

## Disclosure of Relationship with Travel + Leisure Co.

Travel + Leisure Co. and/or certain of its subsidiaries or affiliates (collectively, "T+L") (i) are members of the Association, and (ii) are parties to agreements with the Association, including a management agreement and an inventory recovery agreement.

As you know, the Firm currently represents Travel + Leisure Co. and certain of its subsidiaries or affiliates (collectively, "T+L") in connection with various legal matters and may represent T+L in future unrelated matters (the "T+L Matters"). The T+L Matters include but are not limited to representation by the Firm of T+L in connection with an Inventory Recovery Agreement between the Association and T+L.[1] Specifically, T+L and the Association are parties to an Inventory Foreclosure Agreement dated December 2, 2010, as amended (the "IFA"). Pursuant to the IFA, the Association engaged T+L to provide assistance in foreclosure proceedings against Delinquent Owners (as defined in the IFA). The Firm represents the Association in the foreclosure proceedings subject to the IFA and represents Association and T+L in connection with facilitating the foreclosure proceedings pursuant to the IFA.

The Firm also currently represents the Association in connection with various legal matters that do not relate to T+L (the "Association Matters"). The Association and T+L previously consented to concurrent representation by the Firm in the T+L Matters and Association Matters and waived any conflict of interest that could be said to be presented by same.

Because our representation of the Association in a Bankruptcy Case and the T+L Matters do not conflict, we believe that we can competently and diligently represent each client consistent with our obligations under the relevant rules of professional conduct and without any material limitations. The Firm does not represent any interest adverse to the Association and we believe our current representation of T+L is not adverse to our representation of the Association, nor is our representation of either client materially limited by our responsibilities to the other. Additionally, the Association has retained general bankruptcy and conflicts counsel ("Conflicts Counsel") with respect to a Bankruptcy Case, which would represent the Association in any adversity that may arise between the Association and T+L. The Firm would not represent T+L in any matter adverse to the Association. Nevertheless, the Association should consider for itself, with the assistance of independent or in-house legal counsel if desired, whether it agrees with our conclusions and is prepared to consent to our representation of the Association and T+L as described above. We have asked T+L to consent in writing to the Firm's continued representation of T+L, and the Association's consent is not effective unless we receive reciprocal consent from T+L. This waiver would exclude the commencement of any litigation, arbitration, or other

---

[1] The T+L entity that is the party to the Inventory Foreclosure Agreement is Wyndham Vacation Resorts, Inc.

December 8, 2025

adversarial proceedings, whether actual or threatened, and the Firm will not represent either party in any such matter, which would be handled by Conflicts Counsel on behalf of the Association and independent counsel on behalf of T+L.

The Association hereby consents to: 1) the Firm's concurrent representation of the Association and T+L in their respective matters, 2) agrees that the Association will not object to our representation of, or seek to disqualify us from representing, T+L in the T+L Matters, except with respect to any litigation, arbitration, or other contested matters or adversary proceedings, whether actual or threatened, between the Association and T+L, which will be handled exclusively by Conflicts Counsel; and 3) waives any conflict that otherwise could be said to be presented by the foregoing.

## Our Agreement

In providing legal services to the Association, absent timely advice from you to the contrary, we will act in reliance upon the understanding that this letter and the enclosed Terms constitute our mutual understanding with respect to the terms of our retention. If the Association proceeds with the use of our services, please sign and return this letter.

On behalf of K&L Gates, I thank you for the opportunity to represent the Association. We look forward to serving you.

Very truly yours,

*Daniel M. Eliades*

Daniel Eliades

Enclosure: Terms of Engagement for Legal Services

Newport Overlook Association, Inc. confirms its engagement of K&L Gates LLP as set forth herein and in the enclosed Terms of Engagement.

Newport Overlook Association, Inc.

DocuSigned by:

*Amy Houle Caruso*

606CAA837D59409

Name:  Amy Houle Caruso

Title:   President, Newport Overlook Association, Inc

Date: December ___, 2025  12/15/2025

5

December 8, 2025

# K&L GATES LLP

## TERMS OF ENGAGEMENT FOR LEGAL SERVICES

Thank you for selecting K&L Gates LLP ("K&L Gates") to represent you and to provide legal services as described in our engagement letter.  These Terms of Engagement for Legal Services (the "Terms"), together with our engagement letter, set forth the basis upon which K&L Gates will provide legal services to you.  Absent a contrary agreement between us, we will understand that our engagement letter and these Terms supersede any prior oral understandings between us and together form the contract ("Engagement Contract") for our initial engagement and any subsequent assignments upon which you and we may mutually agree.

We believe it is important to establish clearly the basic terms of our engagement at the outset.  Accordingly, if you have any questions concerning these Terms, please contact the lawyer responsible for your engagement so that your questions or concerns may be addressed and resolved promptly.

### INTRODUCTION

K&L Gates comprises multiple affiliated entities: a limited liability partnership named K&L Gates LLP organized under the laws of Delaware ("K&L Gates-US," the "Firm," or "we" or "us" as the context requires) and maintaining offices in certain states throughout the United States and in a number of international multiple affiliated entities.[1]

### OTHER K&L GATES ENTITIES

You agree that, as your agent, we may engage other K&L Gates entities to assist us in carrying out our engagement, where appropriate and with notice to you.

Numerous countries in which our offices are located have enacted Anti-Money Laundering ("AML") laws.  If K&L Gates lawyers in any of these offices are engaged to assist you in matters within the scope of our engagement, it will be necessary to comply with the applicable AML laws.  In connection therewith, we or lawyers from the appropriate office may be required to obtain additional, specific evidence of client identity from you and/or to report certain transactions to the authorities.  If these AML requirements are applicable, you will be informed of the details needed for compliance.

### OUR LAWYER-CLIENT RELATIONSHIP

The Firm has been engaged to represent only the client(s) named in our engagement letter ("you" or the "Client"), even if someone other than you, including an *insurer*, is responsible for paying, or has agreed to pay, our statements.    Accordingly, absent a specific, separate engagement to represent such other persons or entities, (1) if our Client is an individual, the Firm has not agreed to represent, and is not representing, any other person or any affiliated entity; (2) if our Client is a corporation, partnership, joint venture or other entity, the Firm has not agreed to represent, and is not representing, any of your constituents, including directors, officers, employees, managing agents, partners, members, shareholders, affiliates (including parents and subsidiaries) or other persons associated with you; and, (3) if our Client is a trade association or other member organization, the Firm has not agreed to represent, and is not representing, any director, officer, member of or other entity represented by you or any of your other constituents.

In addition, the Firm's engagement to represent you is limited to the matter(s) described in our engagement letter and to any additional matters for which the Firm expressly agrees to provide legal representation.

You acknowledge that the Firm has not provided you with legal advice concerning the terms and conditions of our Engagement Contract.

### OUR CHARGES FOR LEGAL SERVICES

**A.      Legal Fees**

Our statements for professional services will be substantially based upon the time spent by

---

[1] K&L Gates comprises multiple affiliated entities:  a limited liability partnership named K&L Gates LLP organized under the laws of Delaware ("K&L Gates-US,", the "Firm", or "we" or "us" as the context requires) and maintaining offices in certain states throughout the United States and in Beijing ("K&L Gates LLP Beijing Representative Office"), Berlin, Doha, Dubai, Frankfurt, Munich, Seoul ("K&L Gates LLP Seoul Foreign Legal Consultant Office"), and Shanghai ("K&L Gates LLP Shanghai Representative Office"); an Australian multi-disciplinary partnership maintaining offices in Brisbane, Melbourne, Perth and Sydney ("K&L Gates-AUS"); a limited liability partnership (also named K&L Gates LLP); incorporated in England and Wales and maintaining offices in London and Paris ("K&L Gates-UK"); a Delaware general partnership ("K&L Gates Belgium") maintaining an office in Brussels; a limited liability partnership established under the laws of Ireland (K&L Gates (Ireland) LLP) maintaining an office in Dublin; a private limited company registered with the Luxembourg Register of Commerce and Companies ("K&L Gates Volckrick S.à.r.l") with an office in Luxembourg; a Hong Kong general partnership ("K&L Gates, Solicitors") maintaining an office in Hong Kong; a professional association established and organized under the laws of Italy named Studio Legale Associato with an office in Milan; a general partnership organized under the laws of Brazil named K&L Gates LLP – Consultores em Direito Estrangeiro/Direito Norte-Americano, with an office in São Paulo; a Taiwan general partnership ("K&L Gates") maintaining an office in Taipei; a joint enterprise formed in accordance with Japanese regulations ("K&L Gates Gaikokuho Joint Enterprise") maintaining an office in Tokyo;  and a limited liability company organized under the laws of Singapore ("K&L Gates Straits Law LLC").

professionals, including lawyers, paralegals and other staff members operating under the supervision of lawyers, who perform services on your behalf. The hourly rates for those individuals are based upon their experience and vary by office across the Firm. Time spent on your matters will include meetings with you and others; traveling; considering, preparing and working on documents, pleadings and other papers; written and electronic correspondence; and, making and receiving telephone calls. Whether or not a matter proceeds to completion, our statements will include all work done and all expenses incurred, unless otherwise agreed.

Our hourly rates are periodically reviewed and adjusted. In preparing our statements for professional services, we will use our hourly rates in effect when our services were rendered.

Information regarding standard hourly rates and other charges established by the Firm is proprietary to the Firm. You agree not to disclose such information to third parties without the Firm's prior written consent. In the event that you are served with a demand or legal process that you believe requires you to disclose such information, you agree to notify the Firm immediately of such demand or process, and to reasonably cooperate with the Firm in protecting the Firm's proprietary information from disclosure without the Firm's consent.

Where requested, we may provide you an estimate of the overall costs that may be incurred in connection with a particular engagement. Any such estimate is necessarily based on a number of uncertain factors and future developments and may be influenced by your decisions and by the actions of third parties. Accordingly, any estimate we provide shall not constitute a promise or agreement that we will render the necessary services within a specific time or for a specific amount. The Firm's statements for professional services will be based on the Firm's billing policies, as set forth herein, and the charges reflected in such statements may vary from any estimates previously given.

**B.     Disbursements**

You will be billed for disbursements and other charges relating to our professional services. With respect to disbursements incurred on your behalf to vendors and other third parties for incidental expenses (such as filing fees and travel expenses), you will be billed at our invoiced cost. With respect to internally-generated and other charges (such as photocopying), you will be billed in accordance with our Schedule of Standard Charges in effect when the charge is incurred. Our current Schedule is attached to these Terms. Where the nature of our engagement requires the retention of third parties (e.g., expert witnesses, accountants, actuaries or other consultants, mediators

or arbitrators), we will obtain your approval for such retention, and we will forward their statements for services and expenses directly to you for payment.

**C.     Other K&L Gates Entities Charges**

Where, with notice to you, we have engaged another K&L Gates entity to assist us in our representation of you, we will include their charges in our statement for professional services unless you ask us to arrange for the other K&L Gates entity to invoice you separately.

**OUR BILLING AND PAYMENT ARRANGEMENTS**

**A.     Billing**

It is our general practice to render statements for professional services and related charges on a monthly basis. We will send a final statement after completion of our work.

You have agreed to send us an advance payment and we will deposit and hold that advance in a separate trust account. Our statements for professional services and related charges, as described in these Terms, will be presented to you and will be payable upon presentation. When our engagement is concluded or our services are terminated, you authorize us to withdraw funds from that account to pay any outstanding balance due at that time. We shall refund to you any amount remaining after the application of the advance to any outstanding balance. Should the scope of our engagement change significantly, we may request an additional advance before performing additional services.

**B.     Payment**

We will expect payment to be made within thirty days after your receipt of our statement, without regard to the consummation of any proposed transaction or the outcome of any matter. Payment should be made by you in the full amount of our statement and you will be responsible also for any withholding tax or other deduction that may be chargeable to you by the relevant taxing authorities or by a governmental entity. In the event our statements are not paid in a timely manner, we reserve the right to defer further work on your account and, where such arrearage is not resolved after notice of delinquency is given to you, to terminate our representation of you. Under such circumstances, you agree to consent to, and not oppose, such termination and to sign a substitution of counsel and/or such other document as may be reasonably necessary to effect the Firm's termination of our lawyer-client relationship, including the Firm's withdrawal of its prior appearance in any court or other litigated proceeding. The termination of our lawyer-client relationship shall not affect your

ongoing responsibility for any fees or other charges incurred as of the date of our notice of termination.

**C.      Liens**

You hereby grant K&L Gates a lien, to the extent permissible under applicable law, on any and all claims that are the subject of our representation under the Engagement Letter and Terms of Engagement. K&L Gates's lien will be for any sums owing to the Firm for any unpaid costs, or attorney's fees and expenses, at the conclusion of our services. The lien will attach to any recovery you may obtain, whether by arbitration award, judgment, settlement or otherwise. An effect of such a lien is that K&L Gates may be able to compel payment of fees and costs from any such funds recovered on your behalf even if our representation of you has terminated before the end of the matter. Because a lien may affect your property rights, you may seek the advice of an independent lawyer of your own choosing before agreeing to such a lien. By accepting and agreeing to be bound by the Engagement Letter and Terms of Engagement, you represent and agree that you have had a reasonable opportunity to consult such an independent lawyer and—whether or not you have chosen to consult such an independent lawyer— you agree that K&L Gates will have a lien as specified above.

**D.      Third Party Payment Responsibility**

If a third party (including an insurer) undertakes to pay any portion of the Firm's bills, 1) you will remain responsible for payment of any amounts billed by the Firm and not paid by that third party, 2) you hereby consent to the application of those funds to the outstanding balance of your account with the Firm and waive any right you might otherwise have to direct us to pay or apply those funds in any other fashion, and 3) to the extent any such third party makes payment to us on your behalf accompanied by directions as to what portion of outstanding fees and expenses are to be covered by such payment, you hereby consent to us adhering to those directions and waive any right you might otherwise have to direct us to pay or apply those funds in any other fashion. If you are awarded legal fees or costs by a court or other party, you will remain responsible for payment of the Firm's billed fees and other charges, even if the award to you is less than the amounts we have billed you. Where we have agreed to represent multiple clients in a matter, each client will be jointly and severally responsible for payment of the Firm's statements.

**E.      Questions**

If you have any questions about any statement that we submit to you, you should contact the lawyer responsible for your engagement as soon as you receive it so that we may understand and address your concerns promptly.

**TERMINATION**

**A.      Your Right to Terminate**

You may terminate our engagement on any or all matters at any time, with or without cause. Your termination of our services will not affect your responsibility to pay for billed and unbilled legal services rendered or other charges incurred as of the date of termination and, where appropriate, for such expenses as we may incur in effecting an orderly transition to successor lawyers of your choice.

**B.      Our Right to Terminate**

Subject to any applicable ethical rule or legal requirement, the Firm reserves the right to terminate its representation of you prior to the conclusion of our services, subject to such permission from any court or tribunal as may be required under the circumstances. In such event, we will provide you with reasonable notice of our decision to terminate and afford you a reasonable opportunity to arrange for successor lawyers, and we will assist you and your successor lawyers in effecting a transition of the engagement. Reasons for the Firm's termination may include your breach of our Engagement Contract including, without limitation, failure to pay outstanding statements in a timely manner as set forth above, the risk that continued representation may result in our violation of applicable rules of professional conduct or legal standards or of our obligations to any tribunal or third parties, your failure to give us clear or proper direction as to how we are to proceed or to cooperate in our representation of your interests, or other good cause.

**C.      Termination Upon Conclusion**

Unless it is previously terminated, the Firm's representation of you, and our lawyer-client relationship with you, will terminate automatically as of the date of the last task performed by the Firm, regardless of whether (1) the Firm sends you a closing letter, (2) the Firm sends you invoices for unpaid expenses or fees, (3) a matter for you is open in the Firm's accounting records, or (4) the Firm refers to any matter for you on its website.

**D.      Post-Engagement Matters**

After the conclusion or termination of our representation of you as described in our engagement letter and these Terms, changes in relevant laws, regulations or decisional authorities may affect your rights and obligations. Unless you engage the Firm to provide future services and to advise you with respect to any issues that may arise in the future as a result of such changes, we will have no continuing obligation to advise you with respect to future legal developments.

## OUR COMMUNICATIONS WITH CLIENTS

The Firm's lawyers strive to keep our clients reasonably informed about the status of our engagements and promptly to comply with reasonable requests for information. To enable us to provide effective representation, you agree to be truthful and to cooperate with us in the course of the engagement and to keep us reasonably informed of material developments.

If there are particular limitations on how you would like us to communicate with you, please advise us in advance about your preferences. Unless you advise us to the contrary, however, we will assume that communication by e-mail is acceptable to you. Absent special arrangements, we do not employ encryption technologies in our electronic communications.

## CONFIDENTIALITY

### A.     Confidentiality and Disclosure

We owe a duty of confidentiality to all our clients. Accordingly, you acknowledge that we will not be required to disclose to you, or use on your behalf, any documents or information in our possession with respect to which we owe a duty of confidentiality to another client or former client.

Information regarding standard hourly rates and other charges established by the Firm is proprietary to the Firm. Information regarding the Firm's security procedures, policies, and systems is proprietary and confidential to the Firm. Disclosure of this information to outside parties poses a significant security risk to the Firm and its clients. Accordingly, you agree not to disclose such information to third parties without the Firm's prior written consent. In the event that you are served with a demand or legal process that you believe requires you to disclose such information, you agree to notify the Firm immediately of such demand or process, and to reasonably cooperate with the Firm in protecting the Firm's proprietary and confidential information from disclosure without the Firm's consent.

### B.     Disclosure to Certain Third Parties

You agree that we may, when required by our insurers, auditors or other advisers, provide details to them of any matter or matters on which we have represented you.

### C.     Disclosure to Other K&L Gates Entities

You agree that we may disclose confidential information relating to you, or any matters on which we are representing you, to other K&L Gates entities.

### D.     Disclosure of Representation

You agree that, in Firm brochures, attorney biographies, and other materials or information about our practice, we may indicate the general nature of our representation of you, your identity as a Firm client, and examples of engagements handled on your behalf. Consistent with our ethical obligations, we will not disclose any confidential information. If you do not wish to have your name mentioned in our materials, please so inform us in writing.

### E.     Internet/Cloud-Based Services and Data Protection

Any information, including personal data, that K&L Gates collects in our global legal practice may be controlled, stored and processed in, and transferred among, any of our offices and with such contractors, vendors, consultants, professional advisors, and other service providers as we engage to assist us in our practice or to meet our clients' legal needs (collectively, "contractors"), and may be transferred to and through any country, including countries that may not have privacy (data protection) legislation and regulations comparable, for example, to countries in the European Economic area. The location of our offices and of such contractors may change from time to time, and we may acquire offices and engage contractors in other countries at any time.

In addition, we may use internet/cloud-based infrastructure, services and applications for storing information and files, sharing information with clients and contractors, and for ease of access. These internet/cloud-based services and applications may include, among others, email, mobile phone applications, voice services, electronic data/document websites, artificial intelligence, generative artificial intelligence, appointment/event tracking, contact information storage, time tracking, file sharing with you and other authorized persons or entities, and file synchronization services to keep such information up to date. We understand that, in engaging the Firm, you expressly consent to all such control, storage, processing and transfers.

Whether we control, store, or process this information in our offices or with internet/cloud-based service providers or other contractors, we have an obligation under the applicable rules of professional conduct to protect your confidential information and not reveal such information without your informed consent. We are therefore advising you of the likelihood that during the course of this engagement we may use internet/cloud-based services and applications in your representation. Consistent with applicable rules and ethics opinions, we will take reasonable steps to prevent the disclosure of confidential information, including reviewing the various policies, procedures, and security safeguards that any internet/cloud-based

service providers have in place. Although the use of these services and applications involves some degree of risk that third parties may access confidential information, we believe and, by signing this letter, you agree that the benefits of using these services and applications outweigh the risk of any accidental disclosure.

When we handle personal data in connection with the services we provide to you, including any data we outsource to internet/cloud-based service providers or other contractors or share within our offices around the world, we will comply with applicable data privacy regulations (e.g., the EU General Data Protection Regulation 2016/679, the California Consumer Privacy Act, the Chinese Personal Information Protection Law).

## F.   Artificial Intelligence

In connection with our representation of you, we may use artificial intelligence services, including generative AI ("GenAI") to enhance and streamline certain aspects of our services. For example, we may use this technology to aid in document analysis, summarize information, and assist in legal research. Like any technology, GenAI carries some degree of risk, which may include the risk of errors in GenAI-generated content, data security vulnerabilities, and system malfunctions. We have implemented reasonable measures to safeguard against these risks, and our lawyers maintain oversight of GenAI-generated outputs. Accordingly, we believe and, by accepting our services, you agree, that the benefits of using this technology outweigh the related risks, and you consent to the use of this technology and to our uploading confidential documents or other information relating to our representation for use with GenAI services.

## CONFLICTS OF INTEREST

The Firm's lawyers, acting in a variety of practice areas and in multiple jurisdictions, provide and will provide legal services to thousands of current clients and future clients. Those clients may be competitors, customers, suppliers or have other business dealings and relationships inter se. As a result, those clients may have matters in which their interests are actually or potentially adverse to one another.

Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients. Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the

Firm or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client in other current or future matters substantially unrelated to this engagement.

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement. Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interest that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you.

If it becomes necessary for Client to commence a case under Title 11 of the United States Code (any such case, a "Restructuring Case"), the Firm's ongoing employment by Client will be subject to the approval of the court with jurisdiction over the petition. If necessary, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). The Firm will give Client a draft of the Disclosure Schedule once it is available. Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

1604084294.1

To the extent any actual conflict of interest arises during the course of a Restructuring Case, Client will be represented by conflicts counsel (if any has been retained) or such other legal counsel as Client so chooses.

Finally, you agree that, for the purposes of determining whether any conflict may exist, only the client(s) identified in our engagement letter, and not any affiliated entity or person, shall be considered our client.

## SANCTIONS

The firm and its lawyers are subject to legal requirements relating to international sanctions enforced in various jurisdictions. These various laws and regulations may at any time impose restrictions or prohibitions on our ability to continue work on your matter due to the parties or activity involved. In such event, we may have legal obligations, or otherwise determine it is appropriate, to take certain steps including potentially reporting matters to relevant authorities and pausing or stopping work for you immediately. Where appropriate we also may decide to apply for a government license under which work may be permitted to continue, but we are under no obligation to do so. Should additional work become necessary as a result of international sanctions, we will advise you about the estimated costs and timescales that may be involved.

## OPPOSING LAWYERS

In addition to our representation of business and not-for-profit entities as well as individuals, we also regularly serve as legal counsel to lawyers and law firms. From time to time, we engage other lawyers and law firms to represent us. As a result, opposing lawyers in a matter may be a lawyer or law firm that we represent now or may represent in the future. Likewise, opposing lawyers in a matter may represent us now or in the future. Further, we have professional and personal relationships with many other lawyers, often because of our participation in professional organizations. Collectively, these situations are common in the legal field. We believe that these relationships with other lawyers will not adversely affect our ability to represent you.

## DOCUMENT RETENTION

Your original hard copy documents and property, described further below, will be returned to you upon request at the conclusion of our representation of you and upon our receipt of payment for outstanding fees and other charges, subject to applicable Rules of Professional Conduct. At that time, you also will have the opportunity to receive the remainder of your client file (other than any original documents previously

returned to you). Some K&L Gates offices maintain files in a digital image format. If you request your file from any of those offices, we will provide it in an electronic format on a CD, DVD or other medium. Should you decide not to accept your remaining file at that time, you authorize us to destroy your files at our discretion. If you do not request the return of your file at the time our representation of you is concluded, we may retain or destroy the file without further notice to you.

Original documents and property, if not returned to you for any reason, will be designated for permanent retention and will not be destroyed without your prior approval. Such items include, but are not limited to, money orders, travelers checks, stocks and bonds, final executed releases, settlement agreements, contracts and sale or purchase agreements, judgments, deeds, titles, easements, wills and trusts, powers of attorney and all other dispositive estate planning documents.

You agree that our drafts of documents, notes, internal working papers, internal e-mail and electronic databases shall be and remain the property of K&L Gates LLP and shall not be considered part of your client file.

The Firm retains the right to make copies of your file, at our expense, for our own information and retention purposes.

## FIRM LAWYERS' PRIVILEGE

We believe it is in your interest as well as the Firm's interest that, in the event ethical or other legal issues arise during our representation of you, including conflict of interest issues or potential disputes between us, the Firm lawyers working on your behalf are able to receive informed, confidential advice regarding their obligations. Accordingly, if we determine in our discretion that it is necessary or advisable for Firm lawyers to consult with our internal or outside counsel, you agree that they may do so and that you recognize the Firm has a lawyer-client privilege protecting the communications between the Firm lawyers working on your behalf and the Firm's internal or outside counsel.

## NEW YORK FEE DISPUTE PROCESS

If any of our New York licensed lawyers work on this matter and if a material portion of the legal services we provide to you takes place in New York, you may have an option to invoke arbitration should a fee dispute arise between you and us during or at the conclusion of this engagement. Specifically, in any civil matter where the fee dispute involves a sum of up to $50,000, you may have a right to compel resolution by binding arbitration. In addition, whether or not binding arbitration is available, both you and we are encouraged to seek resolution of lawyer-client disputes, including fee disputes, through mediation,

1604084294.1

and the New York Courts and Bar have established a program for mediation of such disputes by an impartial mediator. In the event that any fee dispute should arise in this engagement which is not promptly and satisfactorily resolved between us, we shall furnish you with further details concerning the procedures and effects of arbitration and mediation, so that you can make an informed decision as to how to proceed in the circumstances.

## CLIENT RESPONSIBILITIES

It is possible that you may have insurance policies relating to the matter that is the subject of our engagement. You should carefully check the insurance policies you have purchased and, if coverage may be available, you should provide notice to all insurers that may provide such coverage as soon as possible. Although we will be pleased to assist you in assessing the potential for coverage under any policies you may have, our engagement will not include advising you with respect to the existence or availability of insurance coverage for matters within the scope of our engagement unless you supply us with copies of your insurance policies and expressly request our advice on the potential coverage available under such policies.

It is possible that you may be obligated under the Corporate Transparency Act ("CTA") to file beneficial ownership reports with the Financial Crimes Enforcement Network ("FinCEN"), a bureau within the United States Treasury Department. Our engagement will not include advising you with respect to your obligations under the CTA or the filing of any reports with FinCEN, except to the extent that we have specifically agreed to include such work in the scope of our engagement in an engagement letter. The **CTA** requires certain entities created by the filing of a document with a secretary of state (or a non-US entity registered to do business by filing a document with a secretary of state) to file beneficial ownership reports with the **FinCEN**. This filing must include information on the Reporting Company itself, its Beneficial Owners, and up to two Company Applicants. Penalties may be incurred if these obligations are not met.

## SEVERANCE OF TERMS

If all or any part of our Engagement Contract is or becomes illegal, invalid or unenforceable in any respect, then the remainder will remain valid and enforceable.

## THIRD PARTY RIGHTS

No provision of our Engagement Contract is intended to be enforceable by any third party. Accordingly, no third party shall have any right to enforce or rely on any provision of our Engagement Contract.

## ASSIGNMENT

### A.     Permitted Assignment

We may assign the benefit of our Engagement Contract to any partnership or corporate entity that carries on the business of K&L Gates-US in succession to us and you will accept the performance by such assignee of the Engagement Contract in substitution for our performance. References in these Terms (other than in this paragraph) and in any relevant engagement letter to the Firm or to K&L Gates-US shall include any such assignee.

### B.     Other Assignment

Subject to the foregoing paragraph, neither you nor we shall have the right to assign or transfer the benefit or burden of our Engagement Contract without the written consent of the other party.

## DEFINITIONS

In these Terms a reference to a **"matter"** is to a transaction, case or other matter as to which at any time you have engaged us to represent you; and, any reference to **"our services"** is to the legal services to be provided by us to you as described in our engagement letter and any other legal services provided by us to you at any time in relation to a matter.

## INCONSISTENCIES

In the event of any inconsistency between our engagement letter and these Terms, the engagement letter shall prevail.

## RESOLVING PROBLEMS AND DISPUTES

If you have any complaints or concerns about our work for you, please raise these in the first instance with the lawyer responsible for your engagement or with the Firm's Chairman or Global Managing Partner. We will investigate your complaint promptly and carefully and do what we reasonably can to resolve the difficulties to your satisfaction.

## APPLICATION OF TERMS

These Terms supersede any earlier terms of business we may have agreed with you and, in the absence of express agreement to the contrary, will apply to the services referred to in any engagement letter accompanying these Terms and all subsequent legal services we provide to you.

Last Updated: February 18, 2025

# K&L GATES LLP

## SCHEDULE OF STANDARD CHARGES

### 2025

| DESCRIPTION OF CHARGE: | STANDARD CHARGE | UNIT BASIS |
|---|---|---|
| Photocopying/Image Printing | $0.20 | Each copy |
| Color Copying/Printing | $1.00 | Each copy |
| Media Duplication | $25.00 | Per CD/DVD |

Legal Research:  The Firm pays for Lexis and Westlaw under monthly fixed fee contracts.  The actual, monthly fixed fee is allocated to all users of the database each month, and client charges for such usage are directly proportional to the actual research conducted on their behalf.

Secretarial Overtime:  As required by client specific circumstances, secretarial overtime will be charged at the Firm's average hourly rate for secretarial overtime.

The following are examples of items that will be charged at their out-of-pocket cost to K&L Gates:

Courier (Federal Express, UPS, etc.)

Business Meals

Off-site Storage Retrieval

1604084294.1

**Schedule 1**

**Entity List**

**Rhode Island Bankruptcy Judges**
Hon.  John A. Dorsey
Hon. Dian Finkle
Hon. Christopher J. Panos
Hon. Arthur N. Votolato

**Office of the U.S. Trustee**
William K. Harrington
Richard T. King
Sandra Nicholls
Steven Potkonjak
Jason R. Longton

**Governmental / Taxing Authorities**
Internal Revenue Service
Office of the US Trustee
RI Division of Taxation
Secretary of State
State of RI
Town of Jamestown
US Attorney
US Dept of Treasury – IRS

**Board of Directors**
Amy Houle Caruso
Jennifer Aviles
Kalina Kennedy
Linda Renzi
Brenna Handfield
John Lewis
Rita Harfouch
Alan Wardyga

**Banks***
Comerica Bank
Merrill Lynch

**Insurance**
AIG Specialty Insurance Company
HDI Global Specialty SE
Lloyds of London
Starr Indemnity & Liability Company

Starr Surplus Lines Insurance Company
Stephens Insurance

**Vendors, Creditors, Parties to Contracts,
and other Interested Parties**
**Vendors**
All Island
Amadeus Hospitality Americas Inc
Armstrong Consulting Inc
AT&T
Atlantic Lawn & Garden
Boydco
Brittain Electric
Cape Cod Commercial Linen Services, Inc.
Cape Cod Linen LLC
Cintas Corp
Compucom
Cox Business
Cox Communications
Direct Energy
Eastern Resorts Company, LLC
Ecolab Inc
Electronic Tech Security
Encore Fire Protection
Fairfield Resorts, Inc
Gem Plumbing & Heating Svcs
HDI Global Specialty SE
HHS
HHS Exceptional Hospitality, LLC
Ico Uniforms
Inn Owners Association: Newport Overlook
Association
Innovative Construction
Innovative Pool
Invsmart
Jamestown Hardware
Jamestown Water
JFA Security
JFA Security & Consulting Services, Inc.
Nalco
PTVO Owners Association, Inc.
Quench USA, Inc

*K&L Gates currently represents Bank of America ("BOA") and formerly represented Comerica Bank ("Comerica"
and with BOA, the "Banks") and certain of their affiliates in matters unrelated to the Debtor and this Chapter 11 Case.
Debtor's relationship with the Banks is as a depositor and bank services client.  Neither of the Banks is a lender to the
Debtor in this Chapter 11 Case.

Resort Supply Inc
Rhode Island Energy
Safety Net
Sensor Industries Corp
Sobel Linen
Spectrio
Stephens Insurance LLC
Suburban Propane
The Sherwin-Williams Co
Town of Jamestown
Verizon
Waste Management
Waste Management National Services, Inc.
Worldmark, the Club
Wyndham Vacation Resorts, Inc.

## Property Management Entities
Wyndham Vacation Management, Inc.

## Professionals
Chace Ruttenberg & Freedman
Omni Agent Solutions

## Owners / Association Members
*All parties listed on Schedule A to the List of*
*Equity Security Holders filed with the*
*Bankruptcy Petition at docket entry #1 were*
*included as parties searched for connections*
*to K&L Gates*

**Schedule 2**

**Client List**

| NAME(S) OF ENTITY SEARCHED | NAME OF ENTITY AND/OR AFFILIATE OF ENTITY THAT IS A K&L GATES CLIENT | STATUS OF REPRESENTATION |
|---|---|---|
| Amadeus Hospitality Americas Inc | Amadeus IT Group SA; Amadeus Asia, Ltd | Current Client |
| Comerica Bank* | Comerica Incorporated, Comerica Bank | Former Client |
| Fairfield Resorts, Inc.<br><br>Wyndham Vacation Management, Inc.<br><br>Worldmark, the Club<br><br>Eastern Resorts Company, LLC<br><br>Wyndham Vacation Resorts, Inc. | Travel + Leisure Co. and Wyndham Vacation Resorts, Inc. | Current Client |
| Merrill Lynch, c/o Berkowitz Byrne Gut* | Bank of America and its subsidiaries, including Merrill Lynch | Current Client |
| Narragansett Electric Company d/b/a Rhode Island Energy | PPL Services Corporation; PPL Corporation | Current Client |
| Stephens Insurance LLC | Stephens Inc. | Former Client |
| Verizon | Verizon Investment Management Corp. (VIMCO); Cellco Partnership d/b/a Verizon Wireless | Current Client |

*K&L Gates currently represents Bank of America ("BOA") and formerly represented Comerica Bank ("Comerica" and with BOA, the "Banks") and certain of their affiliates in matters unrelated to the Debtor and this Chapter 11 Case. Debtor's relationship with the Banks is as a depositor and bank services client. Neither of the Banks is a lender to the Debtor in this Chapter 11 Case.

## Exhibit B

(to the Application)

**Eliades 2016(b) Statement**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re:<br><br>NEWPORT OVERLOOK ASSOCIATION, INC.,[1],<br><br>Debtor. | Chapter 11<br><br>Case No. 1:25-BK-11000 |

**STATEMENT OF DANIEL M. ELIADES AND K&L GATES LLP**
**PURSUANT TO 11 U.S.C. § 329(a) AND RULE 2016(b)**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

I, Daniel M. Eliades, Esq., a partner with the law form of K&L Gates, LLP ("K&L Gates"), in accordance with 11 U.S.C. § 329(a) and F.R.B.P. 2016(b), states as follows:

1.      Attorneys at K&L Gates (Daniel Eliades and William Waldman) have represented the Association since prior to 2010, including regarding litigations under a certain Inventory Foreclosure Agreement, as more fully discussed in the Application[2].

2.      K&L Gates was retained by Debtor to provide pre-petition services pursuant to an engagement letter dated September 4, 2025.  K&L Gates was subsequently retained by Debtor to provide pre-petition and post-petition services related to the Chapter 11 Case pursuant to an engagement letter dated as of December 8, 2025 (the "Engagement Letter"), a copy of which is attached as **Exhibit A** to the Eliades Declaration.

---

[1] The last four digits of Debtor's tax identification number are 6560. Debtor's primary place of business is 150 Bay View Drive, Jamestown, RI 02835.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Debtor's Application for Entry of an Order Authorizing and Approving the Employment and Retention of K&L Gates LLP as Bankruptcy Co-Counsel to the Debtor Effective as of the Petition Date*.

3.　　　Prior to the commencement of the Chapter 11 Case, Debtor paid K&L Gates
$139,820.66, $139,817.93 of which was applied to pre-petition fees and expenses. Specifically,
Debtor made the following payments to K&L Gates:

| Payment Date | Amount |
|---|---|
| October 16, 2025 | (14,078.50) (Payment of Invoice) |
| October 14, 2025 | $50,000.00 (Retainer) |
| December 2, 2025 | ($38,520.50) (Deducted from Retainer) |
| December 12, 2025 | $45,742.16 (Additional Retainer) |
| December 12, 2025 | $30,000.00 (Additional Retainer) |
| December 15, 2025 | ($57,221.66) (Deducted from Retainers) |
| December 17, 2025 | ($29,997.27) (Deducted from Retainers) |
| TOTAL PAID | $139,820.66 |
| TOTAL RECEIVED | $139,817.93 |
| REMAINING RETAINER | $2.73 |

4.　　　As noted, K&L Gates continues to hold a retainer in the amount of $2.73, which
will constitute a retainer for post-petition services and expenses in the Chapter 11 Case.

5.　　　Debtor has been advised that, upon application and subject to Court approval,
Debtor and its estate shall be responsible for all fees and actual expenses incurred by K&L Gates.

6.　　　K&L Gates informed Debtor that it operates in both national and regional
marketplaces for legal services in which rates are driven by multiple factors relating to the
individual lawyer, his or her area of specialty, and that the Firm's expertise, performance, and
reputation, the nature of the work involved, as well as other factors. The hourly rates K&L Gates
charged Debtor prior to the Petition Date are the same as the rates K&L Gates has indicated it will

charge Debtor post-petition. K&L Gates has informed Debtor (and discloses herein) that the Firm's hourly rates are subject to periodic adjustments to reflect economic and other conditions.

8.    K&L Gates has not shared or agreed to share compensation with any other entity.

Executed on January 12, 2026

/s/ Daniel M. Eliades
DANIEL M. ELIADES
K&L GATES LLP
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Email: daniel.eliades@klgates.com

**<u>Exhibit C</u>**

(to the Application)

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:

NEWPORT OVERLOOK ASSOCIATION, INC.,[1],

Debtor.

Chapter 11

Case No. 1:25-BK-11000

## ORDER AUTHORIZING AND APPROVING THE
## RETENTION OF K&L GATES LLP AS BANKRUPTCY CO-COUNSEL
## EFFECTIVE AS OF DECEMBER 17, 2025

THIS MATTER having come before the Court for a hearing on [_____], 2026 upon *Debtor's Application for Entry of an Order Authorizing and Approving the Employment and Retention of K&L Gates LLP as Bankruptcy Co-Counsel to the Debtor Effective as of the Petition Date* (ECF No. [____], the "Application");[2] filed by the above captioned debtor and debtor in possession (the "Debtor") seeking entry of an order authorizing the employment of K&L Gates LLP ("K&L Gates" or the "Firm"), pursuant to sections 327(a), 328, 329, and 330 of the Bankruptcy Code and Bankruptcy Rule 2014 as co-counsel to Debtor as more fully set forth in the Application.

Upon consideration of the Application and the Declaration of Daniel M. Eliades in support of the Application; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Court having the power to enter a final order consistent with Article III of the United States Constitution; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant

---

[1] The last four digits of Debtor's tax identification number are 6560. Debtor's primary place of business is 150 Bay View Drive, Jamestown, RI 02835.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Application is in the best interests of the Debtor's estate, creditors and other parties-in-interest; and the Debtor having provided adequate and appropriate notice of the Application under the circumstances; and after due deliberation and good and sufficient cause appearing therefor; and it appearing to the Court that the Application should be approved,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is GRANTED as set forth herein.

2.      The Debtor is hereby authorized to retain and employ K&L Gates LLP as bankruptcy co-counsel pursuant to Section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, effective as of December 17, 2025.

3.      K&L Gates shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's case in compliance with the applicable provisions of the Bankruptcy Code, including Section 330 of the Bankruptcy Code, the Bankruptcy Rules, and any applicable procedures and orders of this Court.

4.      Debtor and K&L Gates are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation of this Order.


DATED: _____


_____
Hon. John A. Dorsey, Jr.
U.S. Bankruptcy Judge